No. 23-13138

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

AMERICAN ALLIANCE FOR EQUAL RIGHTS
*Plaintiff-Appellant,*

v.

FEARLESS FUND MANAGEMENT, LLC, et al.
*Defendants-Appellees,*

On Appeal from the United States District Court
for the Northern District of Georgia, No. 1:23-cv-3424-TWT

## EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL
## (RELIEF NEEDED BY SEPTEMBER 30, 2023)

William Fawcett, Sr.
Chambliss & Fawcett, LLP
2900 Paces Ferry Road, Ste. B-101
Atlanta, GA 30339

Thomas R. McCarthy
Cameron T. Norris
Gilbert C. Dickey
R. Gabriel Anderson
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
tom@consovoymccarthy.com
cam@consovoymccarthy.com
gilbert@consovoymccarthy.com
gabe@consovoymccarthy.com

*American Alliance for Equal Rights v. Fearless Fund Management*, LLC

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, Appellant certifies that the following have an interest in the outcome of this appeal:

1. American Alliance for Equal Rights, *Plaintiff-Appellant*

2. Anderson, R. Gabriel, *Attorney for Plaintiff-Appellant*

3. Branch, Aria, *Attorney for Amicus Curiae Black Economic Alliance Foundation*

4. Cacabelos, Kevin, *Attorney for Amici Curiae Lawyers Committee for Civil Rights, Leadership Conference on Civil and Human Rights, National Action Network, National Association for the Advancement of Colored People, National Urban League, National Coalition on Black Civic Participation, and LatinoJustice PRLDEF.*

5. Cluse, Brooke, *Attorney for Defendants-Appellees*

6. Cohen, David, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

7. Crain, Lee, *Attorney for Defendants-Appellees*

8. David, Alphonso, *Attorney for Defendants-Appellees*

9. Denerstein, Mylan, *Attorney for Defendants-Appellees*

10. Dickey, Gilbert, *Attorney for Plaintiff-Appellant*

11. Fawcett, J. William, *Attorney for Plaintiff-Appellant*

12. Farrell, Naima, *Attorney for Defendants-Appellees*

13. Fearless Foundation, Inc., *Defendant-Appellee*

14. Fearless Fund II, GP, LLC, *Defendant-Appellee*

15. Fearless Fund II, LP, *Defendant-Appellee*

16. Fearless Fund Management, LLC, *Defendant-Appellee*

17. Gonzales, Amber, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et. al.*

18. Greenbaum, Jon, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et. al.*

19. Harrison, Keith, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et. al.*

20. Hawley, Jonathan, *Attorney for Amicus Curiae Black Economic Alliance Foundation*

21. Hylton, Ellie, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

22. Knox, Leila, *Attorney for Defendants-Appellees*

23. LatinoJustice PRLDEF, *Amicus Curiae*

24. Lawyers Committee for Civil Rights, *Amicus Curiae*

25. Leadership Conference on Civil and Human Rights, *Amicus Curiae*

26. Lewis, Joyce, *Attorney for Amicus Curiae Black Economic Alliance Foundation*

27. Lifland, Charles, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

28. Malson, Laurel, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et. al.*

29. Marquart, Katherine, *Attorney for Defendants-Appellees*

30. McCarthy, Thomas, *Attorney for Plaintiff-Appellant*

31. Mixon, Meaghan, *Attorney for Amicus Curiae Black Economic Alliance Foundation*

32. Morales, Tristan, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

33. National Action Network, *Amicus Curiae*

34. National Association for the Advancement of Colored People, *Amicus Curiae*

35. National Coalition on Black Civic Participation, *Amicus Curiae*

36. National Urban League, *Amicus Curiae*

37. Norris, Cameron, *Attorney for Plaintiffs-Appellant*

38. Pak, Byung, *Attorney for Defendants-Appellees*

39. Pauli, Amy, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et. al.*

40. Pettig, Bruce, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

41. Rhoades, Meshach, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et. al.*

42. Rodriguez, Dariely, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et. al*

43. Salim-Williams, Zakiyyah, *Attorney for Defendants-Appellees*

44. Santos, Marlee, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et. al.*

45. Schwartz, Jason, *Attorney for Defendants-Appellees*

46. Senger, Molly, *Attorney for Defendants-Appellees*

47. Thurman, Ashley, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

48. Waddell, T. Brandon, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

49. Youker, Kathryn, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et. al.*

The American Alliance for Equal Rights has no parent corporation and no corporation owns 10% or more of its stock. No publicly traded company or corporation has an interest in the outcome of this case or appeal. Per Circuit Rule 26.1-2(c), Appellants certify that the CIP contained in this motion is complete.

Dated: September 26, 2023     /s/ *Cameron T. Norris*
Counsel for American
Alliance for Equal Rights

**INTRODUCTION**

Section 1981 bans all racial discrimination in contracting—public and private, no matter which race is harmed. *See* 42 U.S.C. §1981. Defendants run the Fearless Strivers Grant Contest. Contests are contracts—submissions for prizes—and here Fearless admits that its contest's rules "ARE A CONTRACT." Yet the contest is open only to black women. Whites, Hispanics, Asians, and every other race are barred from entering. A more blatant violation of §1981 is hard to imagine. Plaintiff, the American Alliance for Equal Rights, sued Fearless on behalf of three white and Asian members, asking the court for a preliminary injunction that lets them compete on equal terms before the application window rapidly closes.

Yet the district court denied a preliminary injunction. Its oral denial rested on one ground: that Fearless' contest is speech protected by the First Amendment. That reasoning flies in the face of decades of precedent, resurrecting arguments that were first tried by segregationists. *E.g.*, *Runyon v. McCrary*, 427 U.S. 160, 176 (1976). Contracts are not speech, and any incidental communicative effect does not bar Congress from banning the underlying conduct. This Court will likely reverse.

Time is of the essence. Fearless will stop accepting applications on September 30—in four days. Once Fearless selects a winner, the Alliance's members will lose their chance to compete for the prize in the normal course. To preserve the status quo, this Court should enjoin Fearless from closing the application window or selecting a winner until this appeal is decided. And to give itself time to decide this motion, this Court should grant an administrative injunction ordering that same relief. The Alliance asks the Court to at least **enter an administrative injunction by September 30, 2023**.

1

# BACKGROUND

Fearless operates the Fearless Strivers Grant Contest. The contest awards small businesses $20,000 plus training and other benefits. Docket Entry (D.E.) 2-2 at 2; D.E.2-3 at 12. To apply for the contest—and have a shot at the prizes—applicants must submit an entry form that includes "required business information, business-related questions and six (6) essay questions." D.E.2-3 at 4.

Only black women can enter or win. The first eligibility requirement states that the contest is "open only to black females." *Id.* at 3. The program's application page confirms that an eligible "[b]usiness must be at least 51% black woman owned." D.E.2-4 at 2. Throughout this case, Fearless has never denied that all other races are ineligible.

Contests are classic contracts. *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1104 (10th Cir. 2001) ("[N]early all jurisdictions have adopted the rule 'that contract law governs the sponsor-contestant relationship.'"). The sponsor offers a valuable prize to the winner, and the contestant accepts by performing the steps needed to enter. *See* Restatement (Second) of Contracts §45 & cmt. a & illustr. 5 (1981); *accord Robertson v. United States*, 343 U.S. 711, 713 (1952) ("The acceptance by the contestants of the offer tendered by the sponsor of the contest creates an enforceable contract."); *Jones v. Capitol Broad. Co.*, 495 S.E.2d 172, 174 (N.C. App. 1998) ("[C]onsideration is provided by entering the contest and complying with all of the terms of the offer."). The "nature of the contract in such a contest, of course, is that if the contestant's [application] is selected as the winner, he or she is entitled to the prize." *Lucas v. Godfrey*, 467 N.W.2d 180, 184 (Wis. Ct. App. 1991).

Fearless agrees. When the Alliance filed this suit, Fearless required entrants to agree to its official rules, "WHICH ARE A CONTRACT." D.E.2-3 at 3. Those rules spell out

2

the basics of the contract: Fearless agrees to give the winner $20,000 and other valuable benefits, and the contestant must submit an entry. *Id.* at 12-13. Those entries are valuable to Fearless. It (and the contest's sponsor, Mastercard) uses them to generate goodwill by showing how it's helping black-owned businesses. *Id.* at 6-7; D.E.2-3 at 2-4. But even beyond a traditional contest, Fearless requires entrants to give up more. They must agree to give Fearless the right to use their name, image, likeness, and entry for its own benefit. D.E.2-3 at 9. They must release and indemnify Fearless for various liabilities. *Id.* at 13. And they must agree to arbitrate any disputes in Atlanta—waiving their rights to a court, jury, and class action. *Id.* at 16.[1]

The Alliance is a nationwide membership organization dedicated to challenging racial classifications. D.E.2-9 at 2. It has at least three members who are being harmed by Fearless' racially discriminatory program. *Id.* Those members—identified below with pseudonyms (Owners A, B, and C)—satisfy all the contest's eligibility criteria, except the racially discriminatory one. *See* D.E.2-10 at 2-3 (Owner A Declaration); D.E.11-1 at 2-3 (Owner B Declaration); D.E.2-11 at 2-3 (Owner C Declaration). They are ready and able to apply once a court orders Fearless to stop discriminating. D.E.2-10 at 2; D.E.11-1 at 2; D.E.2-11 at 2.

---

[1] After the Alliance sued, Fearless unilaterally changed the official rules—omitting the word "contract" and making other cosmetic changes. *See* D.E.59-3 at 11-24. Setting aside that courts do not credit this kind of voluntary cessation, the contest remains a contract even under the new rules. It's still a contest, offering prizes to winners in exchange for submissions. *E.g., id.* at I, II, III, IV, VII. It still requires entrants to give Fearless the right to use submissions. *See id.* at III. And it still requires entrants to release Fearless from various liabilities. *See id.* at VII.

3

Fearless runs the contest four times a year. D.E.2-2 at 2; D.E.2-3 at 4. For each cycle, Fearless opens the application window and then closes it roughly 30 days later. D.E.2-3 at 4. This case concerns the last contest for 2023, for which the application window was originally scheduled to open on August 1st and close on August 31st. *Id.* The Alliance filed this lawsuit one day after that contest began. D.E.1 at 13. To avoid a TRO, Fearless agreed to push back the close of the application window to midnight on September 30, 2023. D.E.25 at 1. To avoid irreparable harm, the Alliance thus requests at least an administrative injunction before then, ordering Fearless not to close the application window or select a winner until further order of the Court.

The district court denied an injunction pending appeal, as well as the motion for a preliminary injunction, at the hearing on September 26. The court immediately denied that relief, appreciating that the Alliance needed to immediately seek interim relief from this Court. The district court noted that it would issue a lengthier order at a future date. *See* D.E.109. But for now, the court gave only one reason for denying the preliminary injunction: It agreed with Fearless' argument that, even if its program is a racially discriminatory contract, that discrimination is speech protected by the First Amendment. Seven minutes later, the Alliance appealed. *See* D.E.110.

## ARGUMENT

**I.   The Alliance is entitled to an injunction pending appeal.**

Injunctions pending appeal turn on four factors: (1) "the likelihood the moving party will prevail on the merits"; (2) "the prospect of irreparable injury to the moving party if relief is withheld"; (3) "the possibility of harm to other parties if relief is granted"; and (4) "the public interest." 11TH CIR. R. 27-1; *accord Touchston v. McDermott*, 234 F.3d 1130, 1132

4

(11th Cir. 2000). The Alliance satisfies all four factors. To give this Court the time it needs to conduct that analysis, it should enter an administrative injunction by September 30 (when Fearless will close the application window).

**A.     The Alliance is likely to succeed on the merits.**

Section 1981 gives "[a]ll persons" the "same right … to make and enforce contracts," regardless of race. 42 U.S.C. §1981(a). Per its text, the statute protects all people from racial discrimination in contracting, no matter which race they belong to. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287-88 (1976); *Domino's Pizza*, 546 U.S. at 474. The statute was enacted in 1866 to enforce the Thirteenth Amendment, so it bars racial discrimination by "nongovernmental" actors too. 42 U.S.C. §1981(c); *see Runyon v. McCrary*, 427 U.S. 160, 166 (1976) ("§1981 is a limitation upon private discrimination"). And "a contractual relationship need not already exist"; §1981 "protects the would-be contractor along with those who have already made contracts." *Domino's Pizza*, 546 U.S. at 475. It "offers relief when racial discrimination blocks the creation of a contractual relationship." *Id.*

Fearless' contest discriminates based on race. It prohibits Asians, Hispanics, and all other non-black applicants from participating. Indeed, Fearless boasts that the contest is "open only to black females," D.E.2-3 at 3, and instructs that only "black females" need apply, D.E.2-2 at 2. Its advertising similarly stresses that all award recipients must be "black women," D.E.2-6 at 2 (Facebook Ad); and that all eligible businesses "must be at least 51% black woman owned," D.E.2-4 at 2 (Fearless Ad).

Fearless' contest is a contract. As explained, contests are contracts. Fearless' official rules explicitly state, in all caps, that they form a contract. D.E.2-3 at 3. And even under

5

the new rules, entrants agree not only to submit entries, but also to assign certain rights to Fearless and to release Fearless from various liabilities. D.E.59-3 at 18-22.

Yet despite running a contest for years and appreciating that it forms a contract, Fearless excludes every race but one from competing. The Alliance's members—white and Asian women who own businesses—cannot apply based on the color of their skin. Though they have no right to win the $20,000, they do have the right to "compete on an equal footing." *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003). When an employer "announce[s] his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims [are not] limited to the few who ignor[e] the sign and subjec[t] themselves to personal rebuffs." *Teamsters v. United States*, 431 U.S. 324, 365 (1977). Fearless is blatantly violating §1981.

The district court held that Fearless' racial discrimination is protected by the First Amendment. Because charitable donations can deliver a message—it explained—Fearless can discriminate when selecting winners of its contest. It agreed with Fearless that its discrimination delivers the message that "Black women-owned businesses are vital to the economy." D.E.59 at 23.

The Supreme Court has already rejected the proposition that racial discrimination in contracting is protected by the First Amendment. *Runyon* found no conflict between §1981's prohibition of racial discrimination and the First Amendment. "[I]nvidious private discrimination ... has never been accorded affirmative constitutional protections." 427 U.S. at 176 (cleaned up). That's because contracting is "conduct" that the First Amendment doesn't reach. *R.A.V. v. St. Paul*, 505 U.S. 377, 389-90 (1992); *accord Wisconsin v. Mitchell*,

6

508 U.S. 476, 487 (1993) (Section "1981" is "a permissible content-neutral regulation of conduct.").

For this reason, all the cases that Fearless cited below are irrelevant: each involved application of a nondiscrimination law to actual speech. In *303 Creative*, the Supreme Court carefully explained that requiring a website for a same-sex wedding would compel "pure speech." *303 Creative LLC v. Elenis*, 143 S.Ct. 2298, 2318 (2023). Similarly, this Court applied the First Amendment when a nondiscrimination law would "force Amazon to donate to organizations it does not support." *Coral Ridge Ministries Media v. Amazon.com*, 6 F.4th 1247, 1254 (2021). And a district court found that a television show can discriminate when casting its lead. *Claybrooks v. ABC*, 898 F. Supp. 2d 986, 999-1000 (M.D. Tenn 2012). These cases are unusual because each involves the application of non-discrimination laws to the creation of speech. But, as *303 Creative* explained, they do not recognize a "right to refuse to serve members of a protected class." 143 S. Ct. at 1218. They do not disturb the bedrock principle that "[a]nti-discrimination laws do not, as a general matter, violate the First Amendment." *Wollschlaeger v. Gov'r, Fla.*, 848 F.3d 1293, 1317 (11th Cir. 2017) (*en banc*) (cleaned up).

Fearless claims the right that those cases all deny: a right to discriminate in contracting because §1981's mandate of race neutrality might have an incidental effect on the communicative effect of their conduct. In other words, they seek First Amendment protection for the discrimination itself. While they want to deliver their message that businesses owned by black women are important, Fearless remains free to express this message by donating money, encouraging others to support businesses owned by black women, and through

7

mentoring and networking. But the First Amendment gives them no right to discriminate by race in contracting, even if that discrimination might deliver some message. The district court's alternative view would obliterate nondiscrimination law. To borrow Fearless' example, a white-owned company could refuse to contract with blacks to "[e]spouse its First Amendment belief that '[white] [male]-owned business are vital to our economy.'" D.E.59 at 23. Section 1981 would be a dead letter.

    **B.    Absent an injunction pending appeal, the Alliance will suffer irreparable harm.**

Without an injunction pending appeal, the Alliance will be irreparably harmed. Fearless' contest injures the Alliance's members by subjecting them to "a discriminatory classification," which prevents them "from competing on equal footing." *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 211 (1995) (cleaned up); *see also Parents Involved in Cmty. Schs. v. Seattle School Dist No. 1*, 551 U.S 701, 719 (2007). This Court has repeatedly held that "racial discrimination … is sufficient to permit a court to presume irreparable injury." *Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1424 (11th Cir. 1984); *accord Rogers v. Windmill Pointe Vill. Club Ass'n*, 967 F.2d 525, 528 (11th Cir. 1992) ("[I]rreparable injury may be presumed from the fact of discrimination."). Other courts agree. *See, e.g.*, *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) ("[I]rreparable injury may be presumed" when "a defendant has violates a civil rights statute."); *Coal. for Equity and Excellence in Md. Higher Ed. v. Md. Higher Ed. Comm'n*, 295 F. Supp. 3d 540, 556 (D. Md. 2017) ("Irreparable injury comes from the maintenance of segregative policies."); *Vietnamese Fishermen's Ass'n v. Knights of the KKK*, 543 F. Supp. 198, 218 (S.D. Tex. 1982) ("Victims of discrimination suffer irreparable injury.").

"[R]acial discrimination" is "essentially irremediable," *Gresham*, 730 F.2d at 1424, because money can't compensate for the harm that is wrought when one "[is] judged by ancestry instead of by his or her own merit and essential qualities," *SFFA*, 143 S. Ct. at 2170. Nor can money restore the lost "benefits of living in an integrated society." *Gresham*, 730 F.2d at 1424. All agree that racial discrimination is irreparable in the constitutional context, *see, e.g.*, *Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 745 (2d Cir. 2000), and it'd be odd if it weren't also irreparable in the statutory context—especially since this statute was meant "to translate" the constitutional bans on racial discrimination into a statutory one. *Runyon*, 427 U.S. at 170. For example, "courts are to presume irreparable harm in Title VII cases," *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988), and "claims under section 1981 and claims under Title VII are evaluated under the same principles," *Ferrill*, 168 F.3d at 475.

Moreover, the application deadline for the program is four days away. The application window for the current contest will close on September 30. A winner will be selected, and the funds will be issued, shortly thereafter. Once the application period closes and winners have been selected, the Alliance's members will have "no do-over and no redress." *League of Women Voters v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016). They will have lost all opportunity to apply for or receive a grant in the ordinary course. And no award of money damages could compensate for the intangible training and other benefits that winners receive.

9

### C. The balance of harms favors the Alliance.

The Alliance's harms also outweigh Fearless'. Owners A, B, and C face the prospect of forever losing their right to compete on a level playing field based on their race—violating a right that the Supreme Court has described as "foundational," "fundamental," "transcendent," and "universal." *SFFA*, 143 S. Ct. at 2159. Fearless, on the other hand, would simply suffer a slight delay—further extension of the application window, after Fearless already agreed to extend it once itself. If Fearless wins this appeal, it is free to award the money then. The time differential between awarding the money then versus now is not a "substantia[l] injur[y]," *League of Women Voters*, 868 F.3d at 12; in fact, it's barely an injury at all, especially when the contest's deadline was "arbitrarily set in the first place." *GOS Operator, LLC v. Sebellius*, 2012 WL 175056, at *5 (S.D. Ala. Jan. 20). And the would-be winner has no legitimate right to be the beneficiary of Fearless' unlawful racial discrimination. The Alliance also does not oppose briefing and arguing this appeal on an expedited basis, further reducing any possible harm to Fearless from an injunction pending appeal.

### D. The public interest favors the Alliance.

The public interest likewise favors the Alliance. Just as "it is always in the public interest to protect [the] constitutional righ[t]" to equal protection, *Phelps-Roper v. Nixon,* 545 F.3d 685, 690 (8th Cir. 2008), it is always in the public interest to protect §1981's right to racial equality, *see Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001) ("civil rights actions vindicate [the] public interest"). Ruling for the Alliance furthers that interest. *Myland Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 45 (D.D.C. 2000). And the public has no legitimate interest in a program that's illegal under federal law.

10

## II. At a minimum, this Court should enter an administrative injunction before September 30 to give itself time to decide this motion.

At a minimum, this Court should issue an administrative injunction until it can decide this motion, forbidding Fearless from closing the application window or picking a winner until further order of the Court.

Federal courts "'have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.'" *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1317 (11th Cir. 2021). The All-Writs Act thus allows courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. §1651(a). The Act allows courts to "issue status quo orders"—like administrative injunctions—based on the "potential" need to exercise jurisdiction later. *V.N.A. of Greater Tift Cnty., Inc. v. Heckler*, 711 F.2d 1020, 1028 (11th Cir. 1983). This relief is appropriate "whenever it is calculated in the court's sound judgment to achieve the ends of justice." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004). Because administrative injunctions are temporary and protect the court's jurisdiction, they can be entered before the court has determined who is likely to prevail on the merits of the underlying appeal. *See id.* at 1100-02.

The Court should enter an administrative injunction here, since the application process is set to close on September 30 (after which Fearless will quickly select a winner). Four days is likely not enough time for the parties to brief, or for this Court to decide, this motion. Fearless will not be harmed by that additional, short delay. But the Alliance will, if the application window closes and its members lose their right to compete on a racially equal playing field. Fearless has indicated that, should the window close before the Alliance

11

gets relief, it will argue that the whole case is moot. The Alliance disagrees, but an administrative injunction will remove all doubt and prevent Fearless from running out the clock and potentially achieving its racially discriminatory goals.

## CONCLUSION

This Court should grant an administrative injunction preserving the status quo—and thus keeping Fearless from closing its application window or selecting a winner for the current round of the contest—by September 30, 2023. After issuing an administrative injunction, this Court should grant an injunction pending appeal. It should then set a schedule for expediting briefing and argument.

Respectfully submitted,

Dated: September 26, 2023

*/s/ Cameron T. Norris*
Thomas R. McCarthy
Cameron T. Norris
Gilbert C. Dickey
R. Gabriel Anderson
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
tom@consovoymccarthy.com
cam@consovoymccarthy.com
gilbert@consovoymccarthy.com
gabe@consovoymccarthy.com

12

## CERTIFICATE OF COMPLIANCE

This motion complies with Rule 27(d)(2)(A) because it contains 3,357 words, excluding the parts that can be excluded. This motion also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond font.

Dated: September 26, 2023 /s/ *Cameron T. Norris*

## CERTIFICATE OF SERVICE

I filed this motion with the Court via ECF. I also served via e-mail a copy of this motion on all counsel of record.

Dated: September 26, 2023 /s/ *Cameron T. Norris*