IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 23-13138

American Alliance for Equal Rights,

Plaintiff-Appellant

v.

Fearless Fund Management, LLC; Fearless Fund II, GP, LLC; Fearless Fund II,
LP; and Fearless Foundation, Inc.,

Defendants-Appellees

On Appeal from the United States District Court
for the Northern District of Georgia

**RESPONSE TO APPELLANT'S EMERGENCY MOTION FOR
INJUNCTION PENDING APPEAL**

GLOBAL BLACK ECONOMIC
FORUM
ALPHONSO DAVID
alphonso.david@gbef.com
34 35th Street, Suite 5A
Brooklyn, NY 11232
Telephone:  212.287.5864

GIBSON, DUNN & CRUTCHER LLP
MYLAN L. DENERSTEIN
mdenerstein@gibsondunn.com
200 Park Avenue
New York, New York  10166-0193
Telephone:  212.351.4000

GIBSON, DUNN & CRUTCHER LLP
JASON C. SCHWARTZ
jschwartz@gibsondunn.com
MOLLY T. SENGER
msenger@gibsondunn.com
ZAKIYYAH SALIM-WILLIAMS
zswilliams@gibsondunn.com
1050 Connecticut Ave., NW
Washington, DC 20036-5306
Telephone: 202.955.8500

GREGG J. COSTA
gcosta@gibsondunn.com
811 Main Street, Suite 3000
Houston, TX 77002-6117
Telephone: 346.718.6600

*Attorneys for Defendants-Appellees*
*Fearless Fund Management, LLC; Fearless Fund II, GP, LLC; Fearless Fund II, LP; and Fearless Foundation, Inc.*

*No. 23-13138*
*American Alliance for Equal Rights v. Fearless Fund Management, LLC, et al.*

**Certificate of Interested Persons and**
**Corporate Disclosure Statement**

In accordance with Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Appellees certify that the following have an interest in the outcome of this appeal:

1.    American Alliance for Equal Rights, *Plaintiff-Appellant*

2.    Anderson, R. Gabriel, *Attorney for Plaintiff-Appellant*

3.    Barnett, Alexandra Garrison, *Attorney for Defendants-Appellees*

4.    Branch, Aria, *Attorney for Amicus Curiae Black Economic Alliance Foundation*

5.    Cacabelos, Kevin, *Attorney for Amici Curiae Lawyers Committee for Civil Rights*, *Leadership Conference on Civil and Human Rights*, *National Action Network, National Association for the Advancement of Colored People, National Urban League, National Coalition on Black Civic Participation, and LatinoJustice PRLDEF*

6.    Cluse, Brooke, *Attorney for Defendants-Appellees*

7.    Cohen, David, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

8.    Crain, Lee, *Attorney for Defendants-Appellees*

9.    Crump, Benjamin, *Attorney for Defendants-Appellees*

10.   David, Alphonso, *Attorney for Defendants-Appellees*

11.   Denerstein, Mylan, *Attorney for Defendants-Appellees*

12.   Dickey, Gilbert, *Attorney for Plaintiff-Appellant*

No. 23-13138
*American Alliance for Equal Rights v. Fearless Fund Management, LLC, et al.*

13.    Fawcett, J. William, *Attorney for Plaintiff-Appellant*

14.    Farrell, Naima, *Attorney for Defendants-Appellees*

15.    Fearless Foundation, Inc., *Defendant-Appellee*

16.    Fearless Fund II, GP, LLC, *Defendant-Appellee*

17.    Fearless Fund II, LP, *Defendant-Appellee*

18.    Fearless Fund Management, LLC, *Defendant-Appellee*

19.    Gonzales, Amber, *Attorney for Amici Curiae Lawyers Committee for Civil Rights*, *Leadership Conference on Civil and Human Rights*, *National Action Network, National Association for the Advancement of Colored People, National Urban League, National Coalition on Black Civic Participation, and LatinoJustice PRLDEF*

20.    Greenbaum, Jon, *Attorney for Amici Curiae Lawyers Committee for Civil Rights* , *Leadership Conference on Civil and Human Rights*, *National Action Network, National Association for the Advancement of Colored People, National Urban League, National Coalition on Black Civic Participation, and LatinoJustice PRLDEF*

21.    Harrison, Keith, *Attorney for Amici Curiae Lawyers Committee for Civil Rights*, *Leadership Conference on Civil and Human Rights*, *National Action Network, National Association for the Advancement of Colored People, National Urban League, National Coalition on Black Civic Participation, and LatinoJustice PRLDEF*

22.    Hawley, Jonathan, *Attorney for Amicus Curiae Black Economic Alliance Foundation*

23.    Hylton, Ellie, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

*No. 23-13138*
*American Alliance for Equal Rights v. Fearless Fund Management, LLC, et al.*

24.   Knox, Leila, *Attorney for Defendants-Appellees*

25.   LatinoJustice PRLDEF, *Amicus Curiae*

26.   Lawyers Committee for Civil Rights, *Amicus Curiae*

27.   Leadership Conference on Civil and Human Rights, *Amicus Curiae*

28.   Lewis, Joyce, *Attorney for Amicus Curiae Black Economic Alliance Foundation*

29.   Lifland, Charles, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

30.   Malson, Laurel, *Attorney for Amici Curiae Lawyers Committee for Civil Rights*, *Leadership Conference on Civil and Human Rights*, *National Action Network, National Association for the Advancement of Colored People, National Urban League, National Coalition on Black Civic Participation, and LatinoJustice PRLDEF*

31.   Marquart, Katherine, *Attorney for Defendants-Appellees*

32.   McCarthy, Thomas, *Attorney for Plaintiff-Appellant*

33.   Mixon, Meaghan, *Attorney for Amicus Curiae Black Economic Alliance Foundation*

34.   Morales, Tristan, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

35.   National Action Network, *Amicus Curiae*

36.   National Association for the Advancement of Colored People, *Amicus Curiae*

37.   National Coalition on Black Civic Participation, *Amicus Curiae*

No. 23-13138
*American Alliance for Equal Rights v. Fearless Fund Management, LLC, et al.*

38.   National Urban League, *Amicus Curiae*

39.   Norris, Cameron, *Attorney for Plaintiffs-Appellant*

40.   Pak, Byung, *Attorney for Defendants-Appellees*

41.   Pauli, Amy, *Attorney for Amici Curiae Lawyers Committee for Civil Rights*, *Leadership Conference on Civil and Human Rights*, *National Action Network, National Association for the Advancement of Colored People, National Urban League, National Coalition on Black Civic Participation, and LatinoJustice PRLDEF*

42.   Pettig, Bruce, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

43.   Rhoades, Meshach, *Attorney for Amici Curiae Lawyers Committee for Civil Rights*, *Leadership Conference on Civil and Human Rights*, *National Action Network, National Association for the Advancement of Colored People, National Urban League, National Coalition on Black Civic Participation, and LatinoJustice PRLDEF*

44.   Rodriguez, Dariely, *Attorney for Amici Curiae Lawyers Committee for Civil Rights*, *Leadership Conference on Civil and Human Rights, National Action Network, National Association for the Advancement of Colored People, National Urban League, National Coalition on Black Civic Participation, and LatinoJustice PRLDEF*

45.   Salim-Williams, Zakiyyah, *Attorney for Defendants-Appellees*

46.   Santos, Marlee, *Attorney for Amici Curiae Lawyers Committee for Civil Rights, Leadership Conference on Civil and Human Rights, National Action Network, National Association for the Advancement of Colored People, National Urban League, National Coalition on Black Civic Participation, and LatinoJustice PRLDEF*

47.   Schwartz, Jason, *Attorney for Defendants-Appellees*

No. 23-13138
*American Alliance for Equal Rights v. Fearless Fund Management, LLC, et al.*

48.    Senger, Molly, *Attorney for Defendants-Appellees*

49.    Thurman, Ashley, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

50.    Waddell, T. Brandon, *Attorney for Amici Curiae National Venture Capital Association and Venture Forward*

51.    Youker, Kathryn, *Attorney for Amici Curiae Lawyers Committee for Civil Rights*, *Leadership Conference on Civil and Human Rights*, *National Action Network, National Association for the Advancement of Colored People, National Urban League, National Coalition on Black Civic Participation, and LatinoJustice PRLDEF*

The following publicly held corporations have a 10% or greater ownership interest in Fearless Fund II, LP: General Mills, Inc (GIS), Costco Wholesale Corporation (COST), Mastercard Inc (MA), and Bank of America Corp (BAC).

No publicly held corporation has a 10% or greater ownership interest in Fearless Fund Management, LLC, Fearless Fund II, GP, LLC, or Fearless Foundation.

Per Circuit Rule 26.1-2(c), Appellees certify that the CIP contained in this response is complete.

Dated: September 28, 2023

/s/ Jason C. Schwartz
*Counsel for Appellees Fearless Fund Management, LLC, Fearless Fund II, GP, LLC, Fearless Fund II, LP, and Fearless Foundation*

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................1

**BACKGROUND** ................................................................................1

**STANDARD OF REVIEW** ...............................................................4

**ARGUMENT** ....................................................................................4

I.     AAER Cannot Satisfy Any Of The Four Requirements For An Injunction Pending Appeal .......................................................................................4

   A.   AAER Is Not Likely To Prevail On The Merits .......................................5

      1. The First Amendment Bars AAER's Claim ...............................................5

      2. AAER Has Not Established That It Has Standing.....................................9

      3. The Foundation Has Established That Its Grant Program Is A Valid Affirmative Action Program Under *Johnson* ...............................12

   B.   AAER Will Not Suffer Irreparable Harm Absent An Injunction ............15

   C.   The Foundation And The Strivers Program Grant Recipients Will Suffer Substantial Harm If An Injunction Is Issued ...................................18

   D.   The Public Interest Would Not Be Served By An Injunction.................19

II.    AAER's Request For An Administrative Injunction Has Been Mooted By The Expedited Briefing Schedule On This Motion .............................................20

# TABLE OF AUTHORITIES

## Cases

*303 Creative LLC v. Elenis,*
  143 S. Ct. 2298 (2023) .................................................................7, 8, 9

*Am. Coll. of Emergency Physicians v. Blue Cross & Blue Shield of
  Ga.,*
  833 F. App'x 235 (11th Cir. 2020) ...................................................11

*Cate v. Oldham,*
  707 F.2d 1176 (11th Cir. 1983) .......................................................23

*Citibank, N.A. v. Citytrust,*
  756 F.2d 273 (2d Cir. 1985) .............................................................22

*Citizens United v. Federal Election Commission,*
  558 U.S. 310 (2010) ............................................................................6

*Claybrooks v. ABC,*
  898 F. Supp. 2d 986 (M.D. Tenn. 2012) .......................................8, 9

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.,*
  6 F.4th 1247 (11th Cir. 2021) ....................................................*passim*

*Do No Harm v. Pfizer, Inc.,*
  2022 WL 17740157 (S.D.N.Y. Dec. 16, 2022) ...............................11

*Doe v. Kamehameha Schs.,*
  470 F.3d 827 (9th Cir. 2006) .......................................................15, 16

*Draper v. Healey,*
  827 F.3d 1 (1st Cir. 2016) .................................................................11

*Elec. Priv. Info. Center v. Pres. Advisory Comm'n on Election
  Integrity,*
  878 F.3d 371 (D.C. Cir. 2017) ....................................................10, 11

*Elrod v. Burns,*
  427 U.S. 347 (1976) (plurality opinion) ...........................................22

*Falls v. DeSantis,*
  609 F. Supp. 3d 1273 (N.D. Fla. 2022) .......................................11, 12

*Ferrill v. Parker Grp., Inc.,*
  168 F.3d 468 (11th Cir. 1999) ..........................................................15

*First W. Cap. Mgmt. Co. v. Malamed,*
  847 F.3d 1136 (10th Cir. 2017) ...................................................12, 18

*FW/PBS, Inc. v. City of Dallas,*
  493 U.S. 215 (1990) ..........................................................................13

*Ga. Repub. Party v. SEC*,
  888 F.3d 1198 (11th Cir. 2018) ................................................10, 12

*Gresham v. Windrush Partners, Ltd.*,
  730 F.2d 1417 (11th Cir. 1984) ................................................19, 20

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. Of Bos.*,
  515 U.S. 557 (1995) and *303* ..........................................................7, 8

*Johnson v. Transp. Agency*,
  480 U.S. 616 (1987)..........................................................14, 15, 16

*KeyView Labs, Inc. v. Barger*,
  2020 WL 8224618 (M.D. Fla. Dec. 22, 2020), *report and
  recommendation adopted sub nom. Keyview Labs, Inc. v. Benjamin
  Barger, Icgold4me, L.L.C.*, 2021 WL 510295 (M.D. Fla. Feb. 11,
  2021) ............................................................................................13

*KH Outdoor, LLC v. City of Trussville*,
  458 F.3d 1261 (11th Cir. 2006) ................................................22, 23

*Klay v. United Health Group*,
  376 F.3d 1092 (11th Cir. 2004) ......................................................24

*Kyles v. J.K. Guardian Sec. Servs., Inc.*,
  222 F.3d 289 (7th Cir. 2000) ..........................................................23

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)........................................................................13

*Moses v. Comcast Cable Commc'ns Mgmt., LLC*,
  2022 WL 2046345 (S.D. Ind., June 7, 2022)....................................18

*R.A.V. v. St. Paul*,
  505 U.S. 377 (1992)..........................................................................6

*Rabbani v. Gen. Motors Corp.*,
  2000 WL 36752977 (N.D. Fla. July 26, 2000)..................................14

*Respect Maine PAC v. McKee*,
  562 U.S. 996 (2010)..........................................................................5

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
  490 U.S. 477 (1989)........................................................................15

*Rogers v. Windmill Pointe Vill. Club Ass'n*,
  967 F.2d 525 (11th Cir. 1992) ........................................................19

*Runyon v. McCrary*,
  427 U.S. 160 (1976)......................................................................6, 8

*State of Florida v. Dep't of Health and Human Servs.*,
  19 F.4th 1271 (11th Cir. 2021) ........................................................4

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    143 S. Ct. 2141 (2023) ................................................................................15

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................10, 11

*Touchston v. McDermott*,
    234 F.3d 1130 (11th Cir. 2020) (en banc). AAER's Emergency
    Motion for an Injunction Pending Appeal ............................................1, 4, 22, 23

*Trichell v. Midland Credit Mgmt., Inc.*,
    964 F.3d 990 (11th Cir. 2020) .....................................................................10

*United Steelworkers of Am., AFL-CIO-CLC v. Weber*,
    443 U.S. 193 (1979) ............................................................................16, 17

*V.N.A. of Greater Tift Cnty., Inc. v. Heckler*,
    711 F.2d 1020 (11th Cir. 1983) .....................................................................24

*Vietnamese Fishermen's Ass'n v. Knights of the KKK*,
    543 F. Supp. 198 (S.D. Tex. 1982) .............................................................18, 19

*Wreal, LLC v. Amazon.com, Inc.*,
    840 F.3d 1244 (11th Cir. 2016) .....................................................................21

### Statutes

15 U.S.C. § 631(f)(1)(C)–(D) ................................................................................23

28 U.S.C. § 1746 ................................................................................................12

42 U.S.C. § 1981 ........................................................................................*passim*

## INTRODUCTION

The American Alliance for Equal Rights ("AAER") seeks to use Section 1981 in an unprecedented way: to prevent a private charitable organization from exercising its First Amendment right to express support for a particular community. The District Court, in direct application of this Circuit's recent decision in *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247 (11th Cir. 2021), correctly rejected AAER's attempt to alter the Fearless Foundation's messaging, and denied AAER's request for a preliminary injunction. AAER now asks this Court to silence the Fearless Foundation while AAER's appeal is pending based on the same arguments that were rejected by the District Court. Just as AAER failed to meet its burden to prove that a preliminary injunction was warranted, so, too, has AAER failed to "demonstrate[] a substantial threat of an irreparable injury that would warrant granting at this time the extraordinary remedy of an injunction pending appeal." *Touchston v. McDermott*, 234 F.3d 1130, 1133 (11th Cir. 2020) (en banc). AAER's Emergency Motion for an Injunction Pending Appeal should be denied.

## BACKGROUND

Appellee the Fearless Foundation is a nonprofit organization founded by Black women that seeks to increase access to capital for small businesses owned by

women of color.  Dkt. 59-2 ¶¶ 3, 11.[1]  Black women are the fastest growing entrepreneurial demographic in the United States, with 42% of new businesses from 2014 through 2019 being founded by Black women.  Dkt. 59-2, Ex. A at 11.  Despite this boom in entrepreneurship, Black women are significantly underrepresented in business ownership, running just 3% of mature businesses (*i.e.*, businesses surviving past 5 years).  Dkt. 59-4 ¶ 25.  Although Black women comprise roughly 6% of the U.S. population, they own just 2% of the country's businesses with more than one employee.  *Id.*  Black women experience significant roadblocks accessing business capital.  They see their applications for funding rejected at a rate three times higher than white business owners, Dkt. 59-4 ¶ 27, and they are disproportionately shut out of venture funding, raising just 0.13% of the total venture capital spend in 2022, *id.*

Since 2021, the Foundation has furthered its mission to assist Black women entrepreneurs through its Fearless Strivers Grant program, which provides $20,000 grants and mentorship to Black women-owned small businesses.  The Foundation's fourth and final application cycle of 2023 closes on September 30, 2023.  Dkt. 59 at 7.  AAER filed this lawsuit on August 2, 2023, challenging the Foundation's grant program as a racially discriminatory contract under Section 1981 and seeking to preliminarily enjoin the Foundation from closing its final application period and

---

[1] All cites to the docket ("Dkt.") refer to the docket in *American Alliance for Equal Rights v. Fearless Fund Management, LLC*, et al., No. 1:23-cv-03424-TWT (N.D. Ga.)."

selecting a grant recipient. In support of its motion for a preliminary injunction, AAER submitted declarations from three anonymous AAER members (Owners A, B, and C) and two declarations from Edward Blum, the President of AAER. Dkts 1-12; Dkt. 1-13; Dkt. 11-1; Dkt. 1-11; Dkt. 91-4. After full briefing and more than an hour of oral argument, the District Court denied AAER's request for a preliminary injunction. *See* Dkt. 114; Dkt. 115.

The District Court concluded that AAER did not show "sufficient likelihood of success on the merits to grant the extraordinary relief of a preliminary injunction." Dkt. 114 ("Tr.") at 53:3–5. As the Court explained, the Foundation "clearly intends to convey a particular message in promoting and operating its grant program" and its conduct is therefore "expressive and subject to the First Amendment." Dkt. 115 ("Op.") at 15–16. The Court held that applying Section 1981 in the manner proposed by AAER to alter the eligibility criteria for the Foundation's grant program "would impermissibly 'modify the content of [the Foundation's] expression—and thus modify [its] 'speech itself.'" Op. at 17. Because the Court found that the First Amendment likely barred AAER's claim, it held that AAER could not meet its "heavy burden" of demonstrating a likelihood of success on the merits. *See id.* The Court also found that AAER had not "carried its burden to clearly show" that its members would suffer "irreparable injury" in the absence of an injunction. *Id.* at 22.

AAER appealed the same day. Despite the fact that the Strivers Grant

3

program has existed for over two years, AAER now seeks emergency relief—an injunction pending appeal—to stop the Foundation from closing the current application cycle and awarding a charitable grant. *See* Mot. at 1.

## STANDARD OF REVIEW

In order for this Court "to grant the extraordinary remedy of an injunction pending appeal," Appellee "must show: (1) a substantial likelihood that [it] will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury . . . unless the injunction is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest." *Touchston*, 234 F.3d at 1132; *see also* 11th Cir. R. 27-1. Because an injunction pending appeal is "an extraordinary and drastic remedy," the Court "may not enter one 'unless the movant clearly establishe[s] the burden of persuasion as to each of the four prerequisites,'" with the first two factors being "'the most critical.'" *State of Florida v. Dep't of Health and Human Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021) (internal citations omitted).

## ARGUMENT

### I.    AAER Cannot Satisfy Any Of The Four Requirements For An Injunction Pending Appeal

AAER cannot satisfy any of the four prerequisites to obtain the extraordinary and drastic relief that it seeks. AAER has not shown a substantial likelihood that it will prevail on the merits for several reasons—including because "donating money qualifies as expressive conduct and is entitled to First Amendment protection." Tr.

4

at 53:20–23.  AAER also has not shown that its members will suffer *any* injury in the absence of an injunction, much less an irreparable one.  By contrast, both the Fearless Foundation and its grant recipients would suffer substantial harm if an injunction pending appeal were to issue, as the injunction would infringe on the Foundation's First Amendment rights and delay the award of a grant.  Finally, an injunction pending appeal would contravene the public interest by infringing on a private organization's First Amendment right to donate as it sees fit, and by undermining a charitable grant program aimed at remedying the effects of historical discrimination in the venture capital industry.

### A.    AAER Is Not Likely To Prevail On The Merits

#### 1.    The First Amendment Bars AAER's Claim

The District Court correctly found that AAER failed to show "sufficient likelihood of success on the merits to grant the extraordinary relief of a preliminary injunction."  Tr. at 53:1–5.  "'[D]onating money'" in furtherance of a message "qualifies as expressive conduct'" protected by the First Amendment.  *Id.* at 14–15 (quoting *Coral Ridge*, 6 F.4th at 1254). For that reason, applying Section 1981 to force the Foundation to alter its grant program eligibility criteria "would impermissibly 'modify the content of [the Foundation's] expression—and thus modify [its] 'speech itself.'"  *Id*. at 17 (quoting *Coral Ridge*, 6 F.4th at 1247).

AAER attempts to sidestep the District Court's First Amendment ruling by

asserting that the Official Rules governing the Foundation's grant program give rise to a contract, and that the grant program thus reflects conduct not speech. Mot. at 6 (citing *Runyon v. McCrary*, 427 U.S. 160, 176 (1976); *R.A.V. v. St. Paul*, 505 U.S. 377, 389–90 (1992)). But the grant program's Official Rules do not constitute a contract between the would-be applicant and the Foundation. *See, e.g.*, Dkt. 59 at 18–20. And even if they did, *Coral Ridge* demonstrates that the Foundation's First Amendment rights still would be infringed by the injunction that AAER seeks.

*Coral Ridge* upheld the dismissal of a religious discrimination claim against Amazon brought by a Christian ministry. *See* 6 F.4th at 1254. The ministry claimed that by setting eligibility criteria for a charitable program (AmazonSmile) that excluded the plaintiff and other organizations identified as anti-LGBTQ, Amazon had violated Title II of the Civil Rights Act by discriminating on the basis of religion. Rejecting this argument, this Court held that the plaintiff's "interpretation of Title II would violate the First Amendment by essentially forcing Amazon to donate to organizations it does not support." *Id.* *Coral Ridge* involved "commercial transactions between Amazon and its customers," as Amazon's customers who bought "products through AmazonSmile . . . [were] allowed to designate a charity to receive a portion of the proceeds from their purchase." Op. at 18. But despite that contractual overlay, this Court recognized that Amazon could not be compelled to direct its charity in a manner inconsistent with its chosen message. Op. at 17. The

same result is warranted in this case.

The Supreme Court in *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. Of Bos.*, 515 U.S. 557, 573 (1995) and *303 Creative* made clear that the First Amendment can override antidiscrimination or public accommodation laws where the application of those laws would alter "the content" of what a speaker "says." *Hurley*, 515 U.S. at 579; *see also 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2312 (2023) (explaining that "the government may not compel a person to speak its own preferred message[]" or to "include a other ideas with his own speech that he would prefer not to include"). Here, AAER cannot use Section 1981 to compel the Foundation to speak in a manner that is consistent with AAER's views but not consistent with those of the Foundation. And the cases that AAER cites for this purported ability (see Mot. at 5, citing *Runyon v. McCrary*, 427 U.S. 160, 166 (1976)) do not so hold. *Runyon* stands for the proposition that the First Amendment does not protect the practice of race-based admissions to private schools. *Runyon*, 427 U.S. at 176. The law remains post-*Runyon* that Plaintiff cannot use Section 1981 to compel a charitable organization "to create speech [it] does not believe," *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2308 (2023), which would be the effect of granting AAER's Emergency Motion in this case.

Other cases recognize the same First Amendment principle in rejecting Section 1981 claims. In one, minority applicants to the *Bachelor* television franchise

sued ABC, alleging that it had denied them equal opportunity to contract to be on the show in violation of Section 1981. *See Claybrooks v. ABC*, 898 F. Supp. 2d 986, 990 (M.D. Tenn. 2012). The court dismissed the case, finding that "casting and the resulting work of entertainment are inseparable and must *both* be protected to ensure that the producers' freedom of speech is not abridged." *Id.* at 999. Just as in *Claybrooks*, forcing the Foundation "to employ race-neutral criteria" in the grant application process would fundamentally alter its "messaging," which the First Amendment prohibits. *See id.* at 993. The Foundation's grant application process, through which it selects and communicates the recipients of its donations, support, and mentorship, is "part and parcel" of its expressive conduct and "merit[s] First Amendment protection." *Claybrooks*, 898 F. Supp. 2d at 993. Because Section 1981 does not allow AAER to enjoin "the Foundation's chosen speech and expression," AAER has not shown that it has a substantial likelihood of prevailing on its Section 1981 claim. Op. at 18.

The Foundation's mission is part of a venerable American tradition. Charitable groups founded by particular ethnic or religious groups have long engaged in "self-help" by providing financial support—often in the form of contracts like loans—to other businesses and individuals in their ethnic or religious communities. Despite this longstanding practice, no court has ever held that such charitable efforts violate Section 1981. The novelty of AAER's attempt to stifle the

8

Foundation's expression of support for Black women businessowners undermines the notion that it could show a substantial likelihood of success on the merits.

### 2.    AAER Has Not Established That It Has Standing

Not only is Appellee's claim barred by the First Amendment, but Appellee is unlikely to succeed because it lacks organizational standing. *See* Dkt. 59 at 8-14.

"The party invoking the jurisdiction of a federal court" bears the burden of establishing standing "to the extent required *at each stage of the litigation*." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (emphasis added). At the preliminary injunction stage, the plaintiff must "show a substantial likelihood of standing under the heightened standard for evaluating a motion for summary judgment." *Elec. Priv. Info. Center v. Pres. Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017) (citations omitted).   Although the District Court found that AAER "likely has standing to pursue its claim," Op. at 11, it overlooked critical evidentiary defects that prevent AAER from establishing standing.

To establish associational standing to bring suit on behalf of its individual members, AAER must "*name* the individuals who were harmed." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009) (emphasis added); *see also Ga. Repub. Party v. SEC*, 888 F.3d 1198, 1203 (11th Cir. 2018).   The only exception to this requirement is if "*all* of the members of the organization are affected by the challenged activity." *Summers*, 555 U.S. at 499.   Because AAER concedes that not

all of its members are affected by the Foundation's grant program, AAER was required to name its harmed members to establish standing.  *See* Dkt. 1-11 ¶ 4 (asserting that only "*some* of AAER's members [are excluded] solely because of their race") (emphasis added); *see also, e.g.*, *Do No Harm v. Pfizer, Inc.*, 2022 WL 17740157, at *7 (S.D.N.Y. Dec. 16, 2022) (noting that the "weight of authority in federal courts" holds that "at least one member must be named for associational standing").  "Courts of Appeal that have addressed the naming requirement since *Summers* have repeatedly held that 'an affidavit provided by an association to establish standing is insufficient unless it names an injured individual.'"  *Do No Harm*, 2022 WL 17740157, at *8.

AAER "cannot 'rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts'" to substantiate standing.[2]  *Falls v. DeSantis*, 609 F. Supp. 3d 1273, 1282 (N.D. Fla. 2022) (citations omitted).  In *Georgia Republican Party*, this Court confirmed that an organization post-*Summers* must "*name* at least one member who can establish an actual or imminent injury," and found no standing

---

[2] The District Court cited the unpublished decision *Am. Coll. of Emergency Physicians v. Blue Cross & Blue Shield of Ga.*, 833 F. App'x 235, 240 n.8 (11th Cir. 2020) ("*ACEP*"), which stated that "requiring specific names *at the motion to dismiss stage* is inappropriate" (emphasis added).  But the preliminary injunction stage requires more.  *See Elec. Priv. Info. Center*, 878 F.3d at 377 (citations omitted) (when a preliminary injunction is sought, the plaintiff must "show a substantial likelihood of standing under the heightened standard for evaluating a motion for summary judgment"); *Falls*, 609 F. Supp. 3d at 1282 (same).

because the plaintiff's "lone 'affidavit [did] not aver that at least one of the Georgia Party's members [was] certain to be injured." 888 F.3d at 1204. According to the District Court, this case is different than *Georgia Republican Party* because AAER "avers that three members of its organization are injured by the Contest, making *Georgia Republican Party* inapposite." Op. at 7. But the affidavits from AAER's three members suffer from two fatal flaws: ***First***, they are effectively unsworn (as the "signature" is anonymous), and ***second***, they do *not* contain specific factual allegations of "injuries." *See* Dkt. 1-12; Dkt. 11-13; Dkt. 11-1; 28 U.S.C. § 1746 (requiring declarations to be "sworn . . . under penalty of perjury," with the declarant's "signature").

Requiring that an organization "name" its affected members to show that at least one member has suffered or will suffer an injury is consistent with long-standing precedent, which refuses to give weight to affidavits that do not name names. The Supreme Court has rejected an attempt to establish standing based on a sworn statement that "two licenses were revoked" where the affidavit "fail[ed] to identify the individuals whose licenses were revoked and, therefore, f[e]ll[] short of establishing that any petitioner before this Court has" been injured. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 235 (1990). So, too, do the anonymous declarations from AAER's members fall short of establishing that any member has been injured by virtue of the Foundation's grant program. The declarations from Owners A, B,

and C have no evidentiary value. *See, e.g.*, *KeyView Labs, Inc. v. Barger*, 2020 WL 8224618, at *6 (M.D. Fla. Dec. 22, 2020), *report and recommendation adopted sub nom. Keyview Labs, Inc. v. Benjamin Barger, Icgold4me, L.L.C.*, 2021 WL 510295 (M.D. Fla. Feb. 11, 2021) (plaintiff "cannot rely on Jane Doe's declaration to meet its high burden to obtain a preliminary injunction").

Moreover, even if the affidavits had been signed, they do not provide sufficient information about Owners A, B, and C or their businesses to show that they have experienced or will experience any injury—much less an injury that is fairly traceable to the program and would be redressed by the relief they seek. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Owners A, B, and C do not even allege that they intend to apply for a grant or that they will do so if the criteria of the grant program are changed; instead, they say only that they are "ready and able" to do so. *See* Dkt. 1-12 ¶ 3; Dkt. 11-1 ¶ 3; Dkt. 1-13 ¶ 3. Owners A, B, and C do not allege that their businesses need funding or Appellees' mentorship, or that they will somehow be financially harmed if they are unable to compete to obtain a chance at a $20,000 grant. *See* Dkt. 1-12; Dkt. 11-1; Dkt. 1-13. And, to the extent that AAER bases its standing claim on emotional or stigmatic injury, no such injury is described anywhere in the declarations of Owners A, B, and C. For all these reasons, AAER has not met its burden of establishing standing.

3.  <u>The Foundation Has Established That Its Grant Program Is A Valid Affirmative Action Program Under *Johnson*</u>

AAER is also unlikely to succeed on the merits because—even assuming the Official Rules of the grant program rendered it a contract within the meaning of Section 1981—the Foundation's grant program is a valid affirmative action plan under *Johnson v. Transp. Agency*, 480 U.S. 616 (1987).

The Strivers Grant program is justified by a "manifest imbalance" in access to capital for Black women-owned businesses. *See* Dkt. 59 at 21. The program also does not "unnecessarily trammel" the rights of non-Black businessowners, who have many other sources of capital for their businesses. *See id.* at 22.

In finding that the grant program did not qualify as an affirmative action program under *Johnson*, the District Court noted that the Foundation had "cit[ed] no authority" applying *Johnson* outside the employment context. Op. at 19–20. But the Foundation cited two cases applying the *Johnson* affirmative defense outside the employment context. *See* Dkt. 59 at 20–22 (citing *Rabbani v. Gen. Motors Corp.*, 2000 WL 36752977, at *5 (N.D. Fla. July 26, 2000) (plaintiff "was not, and could not have been, an employee via the" affirmative action plan to train future car dealership owners); *Doe v. Kamehameha Schs.*, 470 F.3d 827, 843–46 (9th Cir. 2006) (finding affirmative action plan to reduce racial discrimination in non-profit school enrollments valid under *Johnson*)); *see also Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 474 & n.12 (11th Cir. 1999) (recognizing that the affirmative action defense is available to claims under Section 1981).

13

The District Court also stated that the grant program "seem[ed] unlikely to satisfy the narrow tailoring requirement of strict scrutiny analysis (assuming strict scrutiny applies after *SFFA*)." Op. at 20. However, *SFFA* did not overrule *Johnson* or suggest that affirmative action plans under *Johnson* are subject to strict scrutiny. *SFFA* was decided under the Equal Protection Clause and Title VI, since Harvard is "an institution that accepts federal funds." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2156 n.2 (2023). The Foundation does not accept federal funds and there is no basis in *SFFA* to infer an "implied overruling" of *Johnson*. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). Moreover, Plaintiff's argument would mean charities like the Foundation could not implement affirmative action programs to remedy discrimination unless they were personally responsible for it, which is not the law. *See, e.g.*, *Kamehameha*, 470 F.3d at 842–45.

Because the grant program is a valid affirmative action program, Plaintiff will not be able to succeed on the merits of its Section 1981 claim. *See, e.g.*, *United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 208–09 (1979). Indeed, it would be "ironic" if Section 1981—a seminal Reconstruction era statute "triggered by a Nation's concern over centuries of racial injustice and intended to improve the lot of those who had been excluded from the American dream for so long"—was found to prohibit "all voluntary, private, race-conscious efforts to

abolish traditional patterns of racial segregation and hierarchy." *Weber*, 443 U.S. at 204; *see* 42 U.S.C. ¶ (referring to rights "enjoyed by white citizens"). This Court should reject AAER's attempt to turn Section 1981 on its head.

### B. AAER Will Not Suffer Irreparable Harm Absent An Injunction

As the District Court correctly concluded, Op. 20–22, even if AAER could establish a likelihood of success on the merits, AAER has not "carried its burden to clearly show irreparable injury flowing from the Foundation's alleged harm." *Id.* at 22. AAER's three arguments to the contrary all fail.

*First*, AAER cites no caselaw to support its contention that this Court should *presume* its members would suffer irreparable harm absent an injunction simply because Appellee has brought a claim of "racial discrimination" under Section 1981. *See* Mot. at 8. And the most factually analogous case cited by the parties *rejected* the idea that "irreparable harm [is] inherent or presumed in a private company's use of racial classifications." *Moses v. Comcast Cable Commc'ns Mgmt., LLC*, 2022 WL 2046345, at *3–4 (S.D. Ind., June 7, 2022); *see also* Op. at 21 (analyzing *Moses*). *Moses* refused to enjoin under Section 1981 a program that offered resources to minority-owned small businesses in the wake of the COVID-19 pandemic because the plaintiffs failed to show "irreparable harm." 2022 WL 2046345, at *1. As the court explained, when claims "are based on a statute rather than the Constitution, courts ordinarily 'may presume irreparable harm only when a

party is seeking an injunction under a statute that *mandates* injunctive relief as a remedy.'" *Id.* at *3 (quoting *First W. Cap. Mgmt. Co. v. Malamed*, 847 F.3d 1136, 1140 (10th Cir. 2017)).  Because Section 1981 "does not mandate injunctive relief," *Moses* rejected the contention that the program's "express race-based classifications show[ed] irreparable harm on their own—presumptively—with no further proof." *Id.*  Nor does *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417 (11th Cir. 1984), stand for the proposition that racial discrimination is "essentially irremediable," and thus, presumptively an "irreparable injury."  *See* Mot. at 8–9.  As the District Court recognized, *Gresham* involved allegations of housing discrimination and did not implicate Section 1981; instead, it held that "proof of the existence of *discriminatory housing practices* is sufficient to permit a Court to presume irreparable injury."  730 F.2d at 1424; Op. at 21–22; Tr. at 15:20–16:12.  In the housing context, it is appropriate to "presume irreparable injury because if the applicant for a Section 8 apartment doesn't get it because of racial discrimination, you can't go back later and evict the white apartment dweller in order to remedy the act of discrimination."  Tr. at 16:1–8.  By contrast, any harm to AAER's members by virtue of not being able to apply to the program could be remedied by providing them with $20,000—the amount for which they seek to compete.  Moreover, unlike in *Gresham*, where "the governing statute authorized injunctive relief," Op. at 21–22 (citing *Gresham*, 730 F.2d at 1423), Section 1981 does not mention injunctive relief, let alone authorize

the issuance of injunctive relief absent a showing of harm.

***Second***, AAER failed to put forth any evidence to support a finding of irreparable harm. AAER appears to argue that its members will be irreparably harmed absent an injunction pending appeal because they "will have lost all opportunity to apply for or receive a grant in the ordinary course" or to access "the intangible training and other benefits that winners receive" after "the current contest" closes on September 30. Mot. at 9. But, as explained above, Owners A, B, and C do not even allege that they intend to apply for the grant or that they will do so if the criteria for the grant program are changed; instead, they say only that they are "ready and able" to apply. *See* Dkt. 1-12 ¶ 3; Dkt. 11-1 ¶ 3; Dkt. 1-13 ¶ 3. Owners A, B, and C likewise do not assert that they are actively seeking funding for their businesses or Appellees' mentorship, or that without the funding provided by this program, their businesses will lack sufficient access to capital. Indeed, Owners A, B, and C do not even allege their businesses need funding or Appellees' mentorship. *See* Dkt. 1-12; Dkt. 11-1; Dkt. 1-13. In other words, AAER has put forward no evidence that "its members will be irreparably harmed unless they receive the money from the Foundation's grant." Op. at 22. And, nowhere in their declarations do Owners A, B, or C allege that they have suffered any emotional or stigmatic harm due to the Foundation's race-based eligibility criteria for the grant program; in fact, they do not even claim to have personally viewed the Foundation's

17

promotional materials regarding the program. *See* Dkt. 1-12; Dkt. 11-1; Dkt. 1-13.

**Third**, AAER's delay in seeking injunctive relief forecloses a finding of irreparable harm. *See, e.g.*, *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). It is undisputed that the Strivers Grant program has been in operation since 2021, and that this year's iteration of the program was advertised at least as early as February 2023. *See* Dkt. 59-3 ¶¶ 9–10, 13. Plaintiff also cannot justify its delay in bringing suit on any change in the law purportedly brought about by *SFAA*, given Plaintiff's contention that the grant program has been "plainly illegal . . . for many decades." Dkt. 2-1 at 8. AAER asked the District Court to excuse its delay because it supposedly sued quickly "[o]nce it learned of this program." *See* Dkt. 91 at 22. But nowhere in the anonymous declarations of Owners A, B, or C or in the declarations of Mr. Blum is there any allegation as to when AAER first learned of the program. *See* Dkt. 1-12; Dkt. 11-1; Dkt. 1-13; Dkt. 1-11; Dkt. 91-4. And regardless, the relevant inquiry is not when AAER first learned of the program, but when it could have done so. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276–77 (2d Cir. 1985). Having waited at least six months to challenge the program after it was advertised, AAER cannot complain of an "emergency" that is its own making.

### C. The Foundation And The Strivers Program Grant Recipients Will Suffer Substantial Harm If An Injunction Issues

AAER also fails to show that its requested injunction will impose "no substantial harm to other interested persons." *Touchston*, 234 F.3d at 1132. Because

18

AAER's requested injunction would cause significant harm to both the Foundation and the would-be grant recipients, AAER's Emergency Motion should be denied.

"[I]t is well established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271–72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). AAER's requested injunction would prevent the Foundation from engaging in the expressive conduct that is at the heart of its mission. This silencing would "'unquestionably constitute[] irreparable injury.'" *Id.* at 1272 (quoting *Elrod*, 427 U.S. at 373). Depriving grantees of essential resources for their businesses would also cause them substantial harm.

### D.    The Public Interest Would Not Be Served By An Injunction

AAER also fails to meet the final requirement for an injunction because its requested relief would harm the public. *See Touchston*, 234 F.3d at 1132.

The public has a strong interest in encouraging the First Amendment right to donate and in ensuring that expressive activity is protected. *See Coral Ridge*, 6 F.4th at 1254; *KH Outdoor*, 458 F.3d at 1272. The public also has a strong interest in addressing manifest racial imbalances and encouraging charitable giving aimed at ameliorating the effects of racial discrimination. Section 1981 "reflects the exercise of congressional authority under the Thirteenth Amendment to relieve African

Americans of the 'badges and incidents' of slavery." *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 301 (7th Cir. 2000).  The Foundation's grant program furthers this public interest, and is consistent with the purpose and text of Section 1981.  It is not in the public's interest to thwart the Foundation's work.

## II.    AAER's Request For An Administrative Injunction Has Been Mooted By The Expedited Briefing Schedule On This Motion

AAER also invokes the All Writs Act and requests that the Court "issue an administrative injunction *until it can decide this motion*, forbidding Fearless from closing the application window or picking a winner until further order of the Court." Mot. at 11 (emphasis added).  The purpose of an injunction under the All Writs Act is to preserve the Court's jurisdiction to consider the underlying dispute.  *See Klay v. United Health Group*, 376 F.3d 1092, 1102 (11th Cir. 2004); *V.N.A. of Greater Tift Cnty., Inc. v. Heckler*, 711 F.2d 1020, 1030–31 (11th Cir. 1983).  AAER asks for an administrative injunction to give this Court more time to rule on AAER's Emergency Motion before the current grant application cycle closes on September 30, 2023.  That request is effectively mooted by this Court's order, directing the Foundation to respond to AAER's Emergency Motion by 12:00 p.m. on September 28, 2023—two days before the current application cycle closes.  Because this expedited briefing schedule allows the Court to exercise its jurisdiction and rule on the motion for an injunction, no administrative injunction is necessary.  *See Heckler*,

711 F.2d at 1031.

***

AAER has not met the high bar required for the extraordinary relief it seeks. As the District Court correctly found, AAER's attempt to turn a seminal civil rights statute on its head is not likely to succeed on the merits, and AAER has not demonstrated that its members will suffer irreparable harm if relief is withheld. Moreover, granting AAER's request would infringe upon the Foundation's core First Amendment rights and run counter to the public interest.  AAER's motion should be denied.


Dated:  September 28, 2023                 Respectfully submitted,

                                                          GIBSON, DUNN & CRUTCHER LLP


                                                          By: ___/s/ Jason C. Schwartz_____
                                                                 Jason C. Schwartz
                                                                 Mylan L. Denerstein
                                                                 Zakiyyah Salim-Williams
                                                                 Gregg J. Costa
                                                                 Molly T. Senger

                                                          *Attorneys for Defendants Appellees*
                                                          *Fearless Fund Management, LLC;*
                                                          *Fearless Fund II, GP, LLC; Fearless*
                                                          *Fund II, LP; and Fearless Foundation,*
                                                          *Inc.*

**CERTIFICATE OF COMPLIANCE**

This Response complies with Rule 27(d)(2)(A) because it contains 5,169 words, excluding those portions that can be excluded. This motion also complies with Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Jason C. Schwartz*

**CERTIFICATE OF SERVICE**

I filed this motion with the Court via ECF.  I also served a copy of this Response on all counsel of record via e-mail.

*/s/ Jason C. Schwartz*