# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-13138

_____

AMERICAN ALLIANCE FOR EQUAL RIGHTS,

                                      Plaintiff-Appellant,

*versus*

FEARLESS FUND MANAGEMENT, LLC,
FEARLESS FUND II, GP, LLC,
FEARLESS FUND II, LP,
FEARLESS FOUNDATION, INC.,

                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-03424-TWT

2                              Order of the Court                         23-13138

_____

Before WILSON, LUCK, and BRASHER, Circuit Judges.

BY THE COURT:

The plaintiff's motion for an injunction pending appeal is **GRANTED**. An appellant may secure an injunction pending appeal if it establishes a substantial likelihood of success on the merits, irreparable injury in the absence of an injunction, and that the balance of the equities and public interest weigh in favor of an injunction. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021). For the reasons stated in the plaintiff's motion for an injunction, we conclude that the plaintiff has established that the defendants' racially exclusionary program—the "Fearless Strivers Grant Contest"—is substantially likely to violate 42 U.S.C. § 1981.

The district court held that the plaintiff "clearly" has standing and has "clearly shown the existence of a contractual regime that brings this case within the realm of § 1981." But the district court reasoned that Section 1981 was likely unconstitutional under the First Amendment as applied to the defendants. We disagree. The defendants do not provide "expressive services" or otherwise engage in "pure speech." *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2318 (2023). Although the First Amendment protects the defendants' right to promote beliefs about race, it does not give the defendants the right to exclude persons from a contractual regime based on their race. *Runyon v. McCrary*, 427 U.S. 160, 176 (1976).

Unlike the district court, our dissenting colleague concludes that the plaintiff's Section 1981 claim is unlikely to succeed because the organization is supposedly "bringing a § 1981 claim on behalf of white members." Our dissenting colleague reasons that "[t]he inclusion of Asian business owners, while a racial minority, does not cure the inclusion of white business owners." We disagree. The Supreme Court has held that Section 1981 "was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976). We find no support in our caselaw to limit the standing of a membership organization to file a Section 1981 claim because it has members of many different races.

In light of the plaintiffs' likelihood of success on the merits, the plaintiffs have established an irreparable injury and that the balance of equities and public interest favor an injunction. *See Gresham v. Windrush Partners*, 730 F.2d 1417, 1424 (11th Cir. 1984).

Accordingly, the defendants Fearless Fund Management, LLC, Fearless Fund II, GP, LLC, Fearless Fund II, LP, and the Fearless Foundation, Inc., are **ENJOINED** from closing the application window or picking a winner for the "Fearless Strivers Grant Contest" until further order of this Court.

The Clerk is directed to treat any motion for reconsideration of this order as a non-emergency matter.

23-13138               WILSON, J, Dissenting                    1

WILSON, Circuit Judge, dissenting from the order granting an injunction pending appeal.

I would deny AAER's motion for an injunction pending appeal.

An injunction pending appeal is an "*extraordinary* and *drastic* remedy." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (emphasis added). We may not enter one "unless the movant clearly established the burden of persuasion as to each of the four prerequisites." *Id.* To obtain relief, the movant must establish the following: "(1) a substantial likelihood that it will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the movant unless the injunction is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest." *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021) (alteration adopted) (quotation marks omitted). Our subsequent review requires the exercise of judicial humility, where "[w]e follow the traditional path of limited review." *See Harbourside Place, LLC v. Town of Jupiter*, 958 F.3d 1308, 1314 (11th Cir. 2020).

We review the district court's grant or denial of a preliminary injunction for abuse of discretion. *Horton v. City of St. Augustine*, 272 F.3d 1318, 1326 (11th Cir. 2001); *see also Brown v. Chote*, 411 U.S. 452, 457 (1973) ("In reviewing such interlocutory relief, this Court may only consider whether issuance of the injunction constituted an abuse of discretion. . . . In doing so, we intimate ***no view as to the ultimate merits***." (emphasis added)). Here, the district

2                    WILSON, J, Dissenting                    23-13138

court conducted a hearing on AAER's request for a preliminary injunction and determined that AAER failed to meet the requirements. As the Supreme Court has noted, we should be very careful to grant requests for an injunction pending appeal because they do "not simply suspend judicial alteration of the status quo but grant[] judicial intervention that has been *withheld* by the lower courts." *Hobby Lobby Stores, Inc. v. Sebelius*, 568 U.S. 1401, 1403 (2012) (Sotomayor, J., in chambers) (emphasis added) (quoting *Respect Maine PAC v. McKee,* 562 U.S. 445 (2010)). More often than not, we know better than to intervene with such extraordinary and drastic relief.

I turn to the district court's order and cannot say that the district court abused its discretion in denying AAER's motion, finding that AAER failed to meet its burden of establishing its entitlement to a preliminary injunction.[1] Like the district court, I will focus on the first two prerequisites: 1) substantial likelihood of success on the merits, and 2) substantial risk of irreparable injury. I address each in turn.

First, AAER does not establish a substantial likelihood of success on the merits.[2] Such a conclusion ignores this Circuit's

---

[1] I don't want to wade too deep into the district court's standing analysis, but I am skeptical that AAER has standing. To me, AAER stands on shaky precedent by relying on an unpublished case, *American College of Emergency Physicians v. BCBS of Georgia*, 833 F. App'x 235 (11th Cir. 2020) (per curiam). But we have binding precedent with which AAER failed to engage. *See Ga. Republican Party v. SEC*, 888 F.3d 1198, 1204 (11th Cir. 2018)

[2] The majority ignores *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247 (11th Cir. 2021), which should guide a First Amendment analysis

23-13138               WILSON, J, Dissenting                3

precedent for claims under 42 U.S.C. § 1981 and fails to consider the very purpose of § 1981.

Plaintiffs bringing a cause of action under § 1981 must show that: 1) they are a member of a racial minority; 2) the defendant intended to discriminate on the basis of race; and 3) the discrimination concerned one or more of the activities enumerated in the statute. *See Lopez v. Target Corp.*, 676 F.3d 1230, 1233 (11th Cir. 2012); *see also Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007); *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270 (11th Cir. 2004). AAER fails as an organization bringing a § 1981 claim on behalf of white members. The inclusion of Asian business owners, while a racial minority, does not cure the inclusion of white business owners. *See Jackson*, 372 F.3d at 1270 n.21 (recognizing where the white plaintiff was excluded from a § 1981 claim yet included in all remaining claims).

---

concerning monetary expressive conduct. In *Coral Ridge*, a group brought a religious discrimination claim under Title II of the Civil Rights Act regarding its exclusion as a possible charity recipient. *Id.* at 1253–54. We found that the First Amendment protected Amazon's right to engage in expressive conduct by selecting which charities were eligible to receive donations. *Id.* at 1256. Similarly, Fearless Fund's decision to provide grants to Black women is protected expressive conduct because Fearless Fund intended to convey the importance of Black women-owned business, which is clear to reasonable persons who view the message. *See Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018). Because the Contest is expressive conduct protected by the First Amendment, Fearless Fund cannot be compelled to change its speech by a third party for a cause it does not wish to support. *See Coral Ridge*, 6 F.4th at 1254. And yet that is exactly what AAER is impermissibly trying to do in direct contravention of the First Amendment.

4                    WILSON, J, Dissenting                    23-13138

Next, to best understand the Civil Rights Act of 1866, we must consider its place within the chronology of Reconstruction—after the ratification of the Thirteenth Amendment but before the Fourteenth. The Civil Rights Act of 1866 attempted to address harms Black Americans faced "under circumstances so extremely unfavorable" to their economic participation throughout the United States. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 411 (1982) (Marshall, J., dissenting) (quoting 39th Cong., 1st Sess. (1865), *reprinted in* The Reconstruction Amendments' Debates 88 (Virginia Comm'n on Constitutional Government (1967))).

The Civil Rights Act of 1866 granted Freedmen basic economic rights, including the right to make and enforce contracts, to sue and be sued, and to purchase and lease property. Congress enacted § 1981 as the remedial mechanism for bringing these protections to life. It is a perversion of Congressional intent to use § 1981 against a remedial program whose purpose is to "bridge the gap in venture capital funding for women of color founders"—a gap that is the result of centuries of intentional racial discrimination.

Here, AAER weaponizes *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968), which confirmed that the Civil Rights Act of 1866 intended to reach instances of discrimination within private conduct. In *Jones*, the Court wrote that "the freedom that Congress is empowered to secure under the Thirteenth Amendment includes the freedom to buy whatever a white man can buy, the right to live wherever a white man can live." *Id.* at 443. Irreparable harm that

23-13138               WILSON, J, Dissenting                    5

will result from the granting of this injunction will not be felt by AAER—Black women will suffer irreparable harm.

Second, AAER has not demonstrated a substantial risk of irreparable injury. It relies heavily on *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417 (11th Cir. 1984), where the "strong national policy against race discrimination in housing" led the Court to presume irreparable injury. *Id.* at 1423. Here, the strong national policy undergirding § 1981 was to vindicate the rights of Black Americans. AAER and the majority misunderstand the purpose of the statute, which informs what constitutes an injury.

When considering granting an injunction, the inquiry is twofold: whether an injury occurred, and whether the injury was *irreparable*. In the context of fair housing, because real property is unique, the inquiry is made one.[3] When certain specific fair housing violations occur, we have found that an irreparable injury occurs in tandem. AAER is asking us to extend the condensed inquiry considered in fair housing discrimination to alleged contract violations under § 1981. We do not have established precedent that invites or compels us to take this step, and we should decline to do so here.

Moreover, AAER delayed in seeking injunctive relief, given that the Fearless Strivers Grant Contest (the Contest) began in 2021

---

[3] *Rogers v. Windmill Pointe Vill. Club Ass'n, Inc.*, 967 F.2d 525, 528–29 (11th Cir. 1992) (finding housing displacement issues following from a Fair Housing Act violation make the injury also, inextricably, irreparable).

| 6 | WILSON, J, Dissenting | 23-13138 |

and the 2023 Contest was first advertised in February of this year. We have held that an inexplicable delay mitigates a finding of irreparable harm. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248–49 (11th Cir. 2016). Here, we have no justification as to why AAER waited until the August entry period when the Contest is offered four times a year since 2021.

Because I would have denied AAER's motion for an injunction pending appeal, I respectfully dissent.