No. 23-13138

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

AMERICAN ALLIANCE FOR EQUAL RIGHTS,
*Plaintiff-Appellant,*

v.

FEARLESS FUND MANAGEMENT, LLC, et al.,
*Defendants-Appellees.*

Appeal from the U.S. District Court for the
Northern District of Georgia, No. 1:23-cv-3424 (Thrash, J.)

## BRIEF OF APPELLANT

William Fawcett, Sr.
Chambliss & Fawcett, LLP
2900 Paces Ferry Road, Ste. B-101
Atlanta, GA 30339
(770) 434-0310
wfawcett@cf-firm.com

Thomas R. McCarthy
Cameron T. Norris
Gilbert C. Dickey
R. Gabriel Anderson
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
gilbert@consovoymccarthy.com
gabe@consovoymccarthy.com

*Counsel for the American Alliance for Equal Rights*

No. 23-13138, *Am. Alliance for Equal Rights v. Fearless Fund Mgmt., LLC*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, appellant certifies that the following have an interest in the outcome of this appeal:

1. American Alliance for Equal Rights, *Plaintiff-Appellant*

2. Anderson, R. Gabriel, *Attorney for Plaintiff-Appellant*

3. Bank of America Corp. (BAC), *Owns ≥10% of a Defendant-Appellee*

4. Barnett, Alexandra Garrison, *Attorney for Defendants-Appellees*

5. Black Economic Alliance Foundation, *Amicus Curiae*

6. Branch, Aria, *Attorney for Amicus Curiae Black Economic Alliance Foundation*

7. Cacabelos, Kevin, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et al.*

8. Costco Wholesale Corporation (COST), *Owns ≥10% of a Defendant-Appellee*

9. Cluse, Brooke, *Attorney for Defendants-Appellees*

10. Cohen, David, *Attorney for Amici Curiae National Venture Capital Association and the National Venture Capital Association*

11. Costa, Gregg, *Attorney for Defendants-Appellees*

12. Crain, Lee, *Attorney for Defendants-Appellees*

13. Crump, Benjamin L., *Attorney for Defendants-Appellees*

14. David, Alphonso, *Attorney for Defendants-Appellees*

15. Denerstein, Mylan, *Attorney for Defendants-Appellees*

16. Dickey, Gilbert, *Attorney for Plaintiff-Appellant*

17. Fawcett, J. William, *Attorney for Plaintiff-Appellant*

18.  Farrell, Naima, *Attorney for Defendants-Appellees*

19.  Fearless Foundation, Inc., *Defendant-Appellee*

20.  Fearless Fund II, GP, LLC, *Defendant-Appellee*

21.  Fearless Fund II, LP, *Defendant-Appellee*

22.  Fearless Fund Management, LLC, *Defendant-Appellee*

23.  General Mills, Inc. (GIS), *Owns ≥10% of a Defendant-Appellee*

24.  Gonsalves, Terance A., *Attorney for Defendants-Appellees*

25.  Gonzales, Amber, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et al.*

26.  Greenbaum, Jon, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et al.*

27.  Harrison, Keith, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et al.*

28.  Hawley, Jonathan, *Attorney for Amicus Curiae Black Economic Alliance Foundation*

29.  Hylton, Ellie, *Attorney for Amici Curiae National Venture Capital Association and the National Venture Capital Association*

30.  Thrash, Jr., Thomas W., *District Court Judge*

31.  Kastorf, Kurt, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et al.*

32.  Knox, Leila, *Attorney for Defendants-Appellees*

33.  LatinoJustice PRLDEF, *Amicus Curiae*

34.  Lawyers Committee for Civil Rights, *Amicus Curiae*

35.  Leadership Conference on Civil and Human Rights, *Amicus Curiae*

36.  Lewis, Joyce, *Attorney for Amicus Curiae Black Economic Alliance Foundation*

37.  Lifland, Charles, *Attorney for Amici Curiae National Venture Capital Association and the National Venture Capital Association*

38.  Malson, Laurel, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et al.*

No. 23-13138, *Am. Alliance for Equal Rights v. Fearless Fund Mgmt., LLC*

39. Marquart, Katherine, *Attorney for Defendants-Appellees*

40. Mastercard Inc. (MA), *Owns ≥10% of a Defendant-Appellee*

41. McCarthy, Thomas R., *Attorney for Plaintiff-Appellant*

42. Meeks, Katherine Moran, *Attorney for Defendants-Appellees*

43. Mixon, Meaghan, *Attorney for Amicus Curiae Black Economic Alliance Foundation*

44. Morales, Tristan, *Attorney for Amici Curiae National Venture Capital Association and the National Venture Capital Association*

45. National Action Network, *Amicus Curiae*

46. National Association for the Advancement of Colored People, *Amicus Curiae*

47. National Coalition on Black Civic Participation, *Amicus Curiae*

48. National Urban League, *Amicus Curiae*

49. National Venture Capital Association, *Amicus Curiae*

50. Norris, Cameron T., *Attorney for Plaintiffs-Appellant*

51. Pak, Byung, *Attorney for Defendants-Appellees*

52. Pauli, Amy, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et al.*

53. Pettig, Bruce, *Attorney for Amici Curiae National Venture Capital Association and the National Venture Capital Association*

54. Rhoades, Meshach, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et al.*

55. Rodriguez, Dariely, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et al.*

56. Salim-Williams, Zakiyyah, *Attorney for Defendants-Appellees*

57. Santos, Marlee, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et al.*

58. Schwartz, Jason, *Attorney for Defendants-Appellees*

59. Senger, Molly, *Attorney for Defendants-Appellees*

No. 23-13138, *Am. Alliance for Equal Rights v. Fearless Fund Mgmt., LLC*

60. Thurman, Ashley, *Attorney for Amici Curiae National Venture Capital Association and the National Venture Capital Association*

61. Waddell, T. Brandon, *Attorney for Amici Curiae National Venture Capital Association and the National Venture Capital Association*

62. Youker, Kathryn, *Attorney for Amici Curiae Lawyers Committee for Civil Rights et al.*

The American Alliance for Equal Rights has no parent corporation and no corporation owns 10% or more of its stock. No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Per Circuit Rule 26.1-2(c), Appellants certify that the CIP contained in this brief is complete.

Dated: November 6, 2023          /s/ Cameron T. Norris
                                 Counsel for the American Alliance
                                 for Equal Rights

# STATEMENT REGARDING ORAL ARGUMENT

This Court should hear oral argument. The district court held that a landmark civil-rights statute—first passed by the Reconstruction Congress in 1866—likely violates the First Amendment here. A motions panel already "disagree[d]" with that ruling. *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC* (*AAFER*), 2023 WL 6520763, at \*1 (11th Cir. Sept. 30). That panel also "conclude[d]" that the "defendants' racially exclusionary program—the 'Fearless Strivers Grant Contest'—is substantially likely to violate 42 U.S.C. §1981." *Id.* Because this Court will likely agree and reverse the district court, oral argument will help.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ..........................1

Statement Regarding Oral Argument ..................................................................................i

Table of Citations ............................................................................................................iii

Introduction ......................................................................................................................1

Jurisdictional Statement ...................................................................................................2

Statement of the Issue ......................................................................................................2

Statement of the Case ......................................................................................................3

    I.      Fearless runs a contest that is a contract and excludes all races but one. .......3

    II.    The district court denies a preliminary injunction. .............................................7

    III.   This Court grants an injunction pending appeal. ................................................9

Standard of Review ....................................................................................................... 11

Summary of Argument .................................................................................................. 11

Argument ...................................................................................................................... 13

    I.      Fearless' contest likely violates §1981. ........................................................... 13

          A.    Section 1981 does not violate the First Amendment. ........................ 13

          B.    Section 1981 prohibits all racial discrimination in contracting, no matter which race is helped or harmed.................................................. 22

          C.    The Alliance likely has standing. ......................................................... 25

    II.    The Alliance would likely suffer irreparable harm without a preliminary injunction. ........................................................................................................ 31

    III.   The Alliance won the balance of harms and public interest. .......................... 35

Conclusion .................................................................................................................... 36

Certificate of Compliance ............................................................................................ 37

Certificate of Service .................................................................................................... 37

# TABLE OF CITATIONS

*primary authority

## Cases

*303 Creative LLC v. Elenis,*
143 S.Ct. 2298 (2023) ..................................................................... 9, 10, 17, 18

*ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.,*
557 F.3d 1177 (11th Cir. 2009) .................................................................... 11

*Adarand Constructors v. Peña,*
515 U.S. 200 (1995) .................................................................................... 31

*\*Advocs. for Highway & Auto Safety v. FMCSA,*
41 F.4th 586 (D.C. Cir. 2022) ............................................... 27, 28, 29, 30

*Ala. v. U.S. Army Corps of Eng'rs,*
424 F.3d 1117 (11th Cir. 2005) ................................................................. 34

*\*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC,*
2023 WL 6520763 (11th Cir. Sept. 30) ...................... i, 2, 10, 22, 25, 26, 31

*Am. Coll. of Emergency Physicians v. BCBS of Ga.,*
833 F. App'x 235 (11th Cir. 2020) ............................................................ 29

*B.R. v. F.C.S.B.,*
17 F.4th 485 (4th Cir. 2021) ...................................................................... 29

*Bass v. Bd. of Cnty. Comm'rs,*
256 F.3d 1095 (11th Cir. 2001) ................................................................. 24

*Brown v. Davenport,*
142 S.Ct. 1510 (2022) ................................................................................ 28

*Burns v. Town of Palm Beach,*
999 F.3d 1317 (11th Cir. 2021) ................................................................. 19

*Chamber of Com. v. CFPB,*
2023 WL 5835951 (E.D. Tex. Sept. 8) ..................................................... 27

*Claybrooks v. Am. Broad. Cos., Inc.,*
898 F. Supp. 2d 986 (M.D. Tenn. 2012) ................................................... 17

*Coghlan v. S.C. R. Co.,*
142 U.S. 101 (1891) ................................................................................... 14

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.,*
6 F.4th 1247 (11th Cir. 2021) ............................................................ 17, 18, 19

*DHS v. Regents of the Univ. of Cal.*,
140 S.Ct. 1891 (2020) ............................................................... 29

*Doe v. Frank*,
951 F.2d 320 (11th Cir. 1992) ................................................... 30

*Doe v. Stincer*,
175 F.3d 879 (11th Cir. 1999) ................................................... 28

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ................................................................... 33

*First W. Cap. Mgmt. Co. v. Malamed*,
874 F.3d 1140 (10th Cir. 2017) ........................................... 32, 33

*Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*,
647 F.3d 1296 (11th Cir. 2011) ................................................ 25

*Free the Nipple-Fort Collins v. City of Fort Collins*,
916 F.3d 792 (10th Cir. 2019) .............................................. 33, 34

*Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale (Food Not Bombs I)*,
901 F.3d 1235 (11th Cir. 2018) ........................................... 19, 20

*Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale (Food Not Bombs II)*,
11 F.4th 1266 (11th Cir. 2021) ............................................ 20, 21

*Ga. Lottery Corp v. Vasaya*,
836 S.E.2d 107 (Ga. Ct. App. 2019) ........................................ 14

*Ga. Republican Party v. SEC*,
888 F.3d 1198 (11th Cir. 2018) ................................................ 27

*Garrison v. Hudson*,
468 U.S. 1301 (1984) ................................................................ 34

*GOS Op., LLC v. Sebellius*,
2012 WL 175056 (S.D. Ala. Jan. 20) ...................................... 35

*Gratz v. Bollinger*,
539 U.S. 244 (2003) .............................................................. 23, 25

*Gresham v. Windrush Partners*,
730 F.2d 1417 (11th Cir. 1984) .................... 8, 10, 31, 32, 33, 34

*Hampton v. Dillard Dep't Stores, Inc.*,
247 F.3d 1091 (10th Cir. 2001) ................................................ 14

*Hobby Lobby Stores, Inc. v. Sebelius*,
2012 WL 6930302 (10th Cir. Dec. 20) ..................................... 13

iv

*Humane Soc'y v. USDA*,
    2021 WL 1593243 (C.D. Cal. Mar. 26) ................................................. 28, 30

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) .......................................................................... 25

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*,
    515 U.S. 557 (1995) ................................................................... 17, 18

*In re BCBS Antitrust Litig. MDL 2406*,
    ___ F.4th ___, 2023 WL 7012247 (11th Cir. Oct. 25) .......................... 22

*Jackson v. BellSouth Telecomm.*,
    372 F.3d 1250 (11th Cir. 2004) ................................................... 10, 25

*Jam v. Int'l Fin. Corp.*,
    139 S.Ct. 759 (2019) ....................................................................... 24

*Jenkins v. Nell*,
    26 F.4th 1243 (11th Cir. 2022) ....................................................... 23

*Jones v. Alfred H. Mayer Co.*,
    392 U.S. 409 (1968) ..................................................................... 1, 24

*KH Outdoor, LLC v. City of Trussville*,
    458 F.3d 1261 (11th Cir. 2006) ....................................................... 11

*League of Women Voters v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ............................................................. 35

*Life Spine, Inc. v. Aegis Spine, Inc.*,
    8 F.4th 531 (7th Cir. 2022) ............................................................. 33

*Lopez v. Target Corp.*,
    676 F.3d 1230 (11th Cir. 2012) ....................................................... 23

*Marszalek v. Kelly*,
    2021 WL 2350913 (N.D. Ill. June 9) ............................................... 27

*McDonald v. Santa Fe Trail Transp. Co.*,
    427 U.S. 273 (1976) .................................................... 1, 10, 22, 24

*Moses v. Comcast Cable Commc'ns Mgmt., LLC*,
    2022 WL 2046345 (S.D. Ind. June 7) ............................................. 8, 32

*NAACP v. Ala. ex rel. Patterson*,
    357 U.S. 449 (1959) ....................................................................... 31

*NAACP v. Trump*,
    298 F. Supp. 3d 209 (D.D.C. 2018) ................................................. 29

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*,
508 U.S. 656 (1993) ............................................................................ 26

*New York v. U.S. Dep't of Com. (Census Case)*,
351 F. Supp. 3d 502 (S.D.N.Y. 2019) ...................................... 28, 29, 30, 31

*New York v. U.S. Dep't of Com.*,
139 S.Ct. 2551 (2019) ........................................................................ 29

*Ossmann v. Meredith Corp.*,
82 F.4th 1007 (11th Cir. 2023) .......................................................... 23

*Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*,
2023 WL 4848509 (S.D. Ohio July 28) ............................................ 31

*Parr v. Woodmen of the World Life Ins. Co.*,
791 F.2d 888 (11th Cir. 1986) ............................................................ 23

*Phelps-Roper v. Nixon*,
545 F.3d 685 (8th Cir. 2008) .............................................................. 36

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992) .............................................................. 14, 20, 28

*Rogers v. Windmill Pointe*,
967 F.2d 525 (11th Cir. 1992) ............................................................ 31

*Roper v. Edwards*,
815 F.2d 1474 (11th Cir. 1987) .......................................................... 23

*Rumsfeld v. FAIR*,
291 F. Supp. 2d 269 (D.N.J. 2003) .................................................... 29

*Rumsfeld v. FAIR*,
547 U.S. 47 (2006) .................................................... 16, 18, 21, 29

*Runyon v. McCrary*,
427 U.S. 160 (1976) .................................... 1, 9, 10, 13, 21, 22, 34

*S.C. NAACP v. Alexander*,
2022 WL 453533 (D.S.C. Feb. 14) .................................................... 30

*Saint Francis Coll. v. Al-Khazraji*,
481 U.S. 604 (1987) .............................................................. 23, 25

*Santos-Zacaria v. Garland*,
598 U.S. 411 (2023) ............................................................................ 30

*Scott v. Roberts*,
612 F.3d 1279 (11th Cir. 2010) .......................................................... 11

*SFFA v. Harvard,*
    2023 WL 3126414 (D. Mass. Apr. 27) ............................................................. 29

*SFFA v. Harvard,*
    308 F.R.D. 39 (D. Mass. 2015) ..................................................................... 26

*SFFA v. Harvard,*
    600 U.S. 181 (2023) ...................................................... 12, 24, 29, 33, 34, 35

*Speech First, Inc. v. Cartwright,*
    32 F.4th 1110 (11th Cir. 2022) ..............................................................11, 13, 29

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ....................................................................................26, 28

*United States v. Chandler,*
    376 F.3d 1303 (11th Cir. 2004), *on reh'g,* 388 F.3d 796 (11th Cir. 2004) ................. 14

*Villano v. City of Boynton Beach,*
    254 F.3d 1302 (11th Cir. 2001) .................................................................... 36

*Wisconsin v. Mitchell,*
    508 U.S. 476 (1993) ..................................................................................... 14

*Wright v. Southland Corp.,*
    187 F.3d 1287 (11th Cir. 1999) .................................................................... 23

## Statutes

28 U.S.C. §1292 ...............................................................................................2

28 U.S.C. §1331 ...............................................................................................2

42 U.S.C. §1981 .............................................................................................. 24

## Other Authorities

*Restatement (Second) of Contracts* §45 (1981) ............................................. 15

Volokh, *The First Amendment and Refusals to Deal,*
    54 U. Pac. L. Rev. 732 (2023) ..................................................................... 16

# INTRODUCTION

Imagine a company that mainly invests money in other businesses (loans, venture capital, and the like). Assume its owners have strong, profoundly racist views on immigration, civil rights, and what it means to be "American." So their business refuses to invest money in any business unless the owners are white. This decision, according to the company's website, is meant to "convey a particular message": that "'[white]-owned businesses are vital to our economy.'" R.115 at 15. And the company "carries out its commitment to that group by supporting" only white entrepreneurs. *Id.*

This hypothetical doesn't require much imagination. It's what was happening in 1866, and precisely why Congress passed §1981's ban on racial discrimination in contracting. *See generally Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 422-36 (1968). And it's what Fearless is doing today. Though Fearless swaps "white" for "black," its racial discrimination is no less illegal under §1981—a "broad" law that, as Justice Thurgood Marshall once explained for the Court, "proscribe[s] discrimination in the making or enforcement of contracts against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976). And Fearless' race-based contracting is not protected by the First Amendment any more than the hypothetical company above. Segregationists tried this challenge to §1981 already. They lost. *See Runyon v. McCrary*, 427 U.S. 160, 175-76 (1976).

This Court already understands all this, which is why it preliminarily enjoined Fearless from operating its discriminatory Strivers Grant Contest. *See AAFER*, 2023

WL 6520763, at *1. The Alliance is "substantially likely" to prove, according to that motions panel, that the district court erred when it denied a preliminary injunction below. *Id.* This Court should now reiterate that ruling, enforce §1981 as written, and order the district court to enter a preliminary injunction.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §1331 because the Alliance alleges a violation of §1981, a federal statute. This Court has jurisdiction under 28 U.S.C. §1292(a)(1) because the Alliance appeals from an order refusing an injunction. The district court entered that order on September 26, 2023, R.109, and the Alliance appealed the same day, R.110.

## STATEMENT OF THE ISSUE

Section 1981 bans private actors from refusing to contract with someone based on race. Fearless runs a contest that is a contract, but that excludes women who aren't black. When the Alliance sued on behalf of its white and Asian members, Fearless' contest had just opened and would soon close. The district court denied a preliminary injunction, but a panel of this Court granted an injunction pending appeal, explaining that the Alliance had proven a likely violation of §1981, irreparable injury, the balance of equities, and the public interest. Should this Court now reverse the denial of the Alliance's motion for a preliminary injunction?

# STATEMENT OF THE CASE

The Alliance is a 501(c)(3) membership association. R.91-4 at 2 ¶5. Founded in 2021, it has nearly 100 members (and counting). *Id.* at 2 ¶4, ¶6. Three of its members—Owners A, B, and C—are women who own small businesses. R.2-10 at 2-3 ¶2, ¶¶10-11; R.11-1 at 2-3 ¶2, ¶¶10-11; R.2-11 at 2-3 ¶2, ¶¶10-11. They discovered that Fearless runs a contest that, if they could win, would help their businesses grow by giving them $20,000, publicity, training, and mentorship. R.2-10 at 2 ¶4; R.11-1 at 2 ¶4; R.2-11 at 2 ¶4. They can and would apply to Fearless' contest, except Fearless requires contestants to be black. R.2-10 at 2 ¶3; R.11-1 at 2 ¶3; R.2-11 at 2 ¶3. The Alliance sued Fearless on their behalf under §1981, the federal law that bans all racial discrimination in contracting. The district court denied the Alliance's motion for a preliminary injunction, but this Court granted an injunction pending appeal.

## I.    Fearless runs a contest that is a contract and excludes all races but one.

Though race-based contracting violates federal law, race-based contracting is what Fearless is all about. Fearless is a "venture capital fund that invests in women of color-led businesses." R.59-2 at 6; R.2-5 at 3. It provides venture capital to businesses so long as the owner isn't white. R.91-2 at 3; R.2-5 at 3. Fearless describes its mission as "bridg[ing] the gap in venture capital funding for women of color founders building scalable, growth aggressive companies." R.2-5 at 3. Along with traditional venture capital, Fearless operates various contests where businesses compete for funding. These

3

contests are also limited by race; they award money and other benefits "only to" certain races. *E.g.*, R.2-3 at 3 (Fearless contest where applicants must be "black females"); Fearless, *Hispanic Heritage Month Grant* (archived Nov. 3, 2023), perma.cc/23D5-2AU3 (Fearless contest where "[a]pplicants must be individuals of Hispanic or Latino heritage").

This case is about the Fearless Strivers Grant Contest. Winners receive "$20,000 grants" and other intangible benefits like mentorship and training. R.2-2 at 2; R.2-3 at 12. Fearless stresses that this program is a "skill-based contest." R.2-3 at 2; R.2-4 at 2. Entrants must provide "business information" and answers to "business related questions." R.2-3 at 4. Fearless judges eligible entries based on "[v]iability and strength of business," "[h]ow the business intends to use the grant," and "[p]otential for business growth." *Id.* at 10. Three judges give a score in each of these categories, and the entry "with the highest score" is declared the winner. *Id.* If there's a tie, the tie will be broken based on "[p]otential for business growth." *Id.* If the tie persists, Fearless "will bring in a tie breaking judge to apply the same judging criteria." *Id.*

Fearless bars anyone from applying or winning unless they are a black woman. The first eligibility requirement in the official rules states that the contest "is open only to black females." *Id.* at 3. The application page confirms that it is limited to one race, stating that it is "[o]pen to black women" and that a "[b]usiness must be at least 51% black woman owned." R.2-4 at 2. The contest's website and Fearless' social-media advertisements reiterate that the contest is open only to black women. R.2-2 at 2-3; R.2-6

at 2; R.2-7 at 11. To submit an entry, a contestant must "certify" that she meets "all eligibility requirements," including the racial one. R.2-3 at 5. Fearless has never denied that the contest excludes all women who are white, Hispanic, Asian, Native American, Arab, or otherwise nonblack.

The contest is a contract between Fearless and the entrants. All entrants must "agree" to the official rules, "WHICH ARE A CONTRACT." R.2-3 at 3. Fearless agrees that it will give the winner $20,000 and other intangible benefits. *Id.* at 12-13. In exchange, an entrant not only prepares and submits an entry, but also gives Fearless other valuable rights. *Id.* at 13. She gives Fearless the right to "discuss or otherwise disclose the ideas" in the entry "or otherwise use the ideas without any additional compensation." *Id.* at 8. She agrees that Fearless can use her name, image, and likeness so that Fearless can gain goodwill through "public relations, advertising, promotional purposes," and other "media." *Id.* at 13. The entrant also must release and indemnify Fearless for various liabilities. *Id.* And she agrees to arbitrate any disputes in Atlanta, waiving her right to a judge, jury, or class action. *Id.* at 16-18.

In a blatant attempt to moot the case through voluntary cessation, Fearless briefly changed its rules after the Alliance sued; but the changes didn't make the contest no longer a contract. The new rules made cosmetic changes like omitting the statement that the official rules "are a contract," and omitted some of the benefits conferred on Fearless like arbitration. R.59-3 at 11-24. But the basic deal remained. Fearless still gave an entrant a chance at $20,000 and other benefits in exchange for her submission. *Id.* at

5

11-19, 21-23. And the entrant still had to give Fearless permission to use her submission and to waive various claims and liabilities against Fearless. *Id.* at 18, 22.

In any event, the changed rules were short lived. Fearless has since reverted to the original rules. Within hours of this Court issuing an injunction pending appeal, Fearless pulled down its new rules and replaced them with the old ones. *See Fearless Strivers Grant Contest Official Rules* (archived Oct. 1, 2023), perma.cc/UZ3T-TT9H. The only substantive difference between the rules that were in effect when the Alliance sued, and the rules that Fearless adopted after this Court's injunction, is that the contest no longer has an end date. *Compare id.* (current rules), *with* R.2-3 at 2-18 (original rules). The original rules—the ones that admit the contest is a contract and that require arbitration and more—are in effect today. *See Fearless Strivers Grant Contest Official Rules* (archived Nov. 6, 2023), perma.cc/WDD2-3K7Z.[1]

The contest opens four times and will pick four winners—one for each entry period. *Id.*; R.2-3 at 12. Each entry period lasts a month. R.2-3 at 4. After entries close, Fearless picks the winner and gives the award within days. *Id.* at 11. The fourth entry period opened on August 1 and was scheduled to close on August 31. *Id.* at 4. Prior winners include, for example, a clothier. R.2-8.

---

[1] The Alliance sued four related parties: Fearless Fund Management, LLC; Fearless Fund II GP, LLC; Fearless Fund II LP; and Fearless Foundation, Inc. R.1 at 2-3, ¶¶6-9. Fearless has asserted, when the changed rules were in place, that only the Fearless Foundation sponsors the challenged contest. But under the original rules, which are now back in place, the only listed "sponsor" is the "Fearless Fund." *Official Rules* (Nov. 6).

6

## II.    The district court denies a preliminary injunction.

The Alliance sued Fearless the day after applications opened for the contest's fourth entry period. R.1. It sought relief on behalf of three pseudonymous members—Owners A, B, and C. *Id.* at 6-10. Each member is ready and able to enter the contest. *Id.* at 7-9; R.2-10 at 2 ¶3; R.11-1 at 2 ¶3; R.2-11 at 2 ¶3. Each meets all the eligibility requirements, except they aren't the right race. R.2-10 at 2 ¶5; R.11-1 at 2 ¶5; R.2-11 at 2 ¶3. The Alliance sought relief for them under §1981.

The Alliance immediately moved for a preliminary injunction and TRO. R.2-1 at 1-2, 7-11. The Alliance explained that the contest violates §1981 because it's a contract that excludes all races but one. *Id.* at 7-8. The Alliance needed an order preventing Fearless from closing the application process, else the deadline would pass before the Alliance could be heard or its members could apply. *Id.* at 9. The Alliance withdrew its request for a TRO, however, after Fearless agreed to extend the deadline another month. R.25 at 1.

As for the preliminary injunction, Fearless opposed it, raising only four arguments on the merits. R.59 at 9-10. Fearless first argued that the Alliance lacked standing because, among other reasons, it referred to Owners A-C with pseudonyms. *Id.* at 9, 16-18. Fearless then argued that §1981 doesn't apply here because, based on the changes that Fearless unilaterally made (and has since unmade) to its official rules, the contest is not a contract. *Id.* at 25-26. Even if it remained a contract, Fearless argued that its contest is a valid affirmative-action program. *Id.* at 27-29. And it argued that the contest

was protected by the First Amendment. *Id.* at 21-25. In support of this last argument, Fearless' lawyers recast the contest as a "charitable donation"—even though the words charity, donation, and the like appear nowhere in Fearless' materials. *Id.* at 25-26.

Aside from the merits, Fearless also argued that the Alliance could not show irreparable harm. Though Fearless says its entire mission is to remedy the effects of racial discrimination, its lawyers argued that racial discrimination is not itself irreparable harm. *Id.* at 29-30. Fearless tried to limit this Court's decision in *Gresham* to racial discrimination in housing. *Id.* at 30 n.5 (discussing *Gresham v. Windrush Partners*, 730 F.2d 1417 (11th Cir. 1984)). It stressed an isolated district-court decision from Indiana, where the court asserted that racial discrimination is irreparable only when the statute banning it mandates injunctive relief. *Id.* at 30 (citing *Moses v. Comcast Cable Commc'ns Mgmt., LLC*, 2022 WL 2046345, at *3-4 (S.D. Ind. June 7)).

The district court denied a preliminary injunction. R.115 at 1. It rejected all of Fearless' merits arguments except the First Amendment one. *Id.* at 5-20. On standing, the district court noted that Fearless' cases require associations to show that a specific member had been injured, not to provide that member's first and last name. *Id.* at 5-8. The district court next found that the Alliance had "clearly shown the existence of a contractual regime," "even under the Contest's new rules." *Id.* at 12. The district court also disbelieved that Fearless' program was "an affirmative action program." *Id.* at 20.

The district court rested its denial of a preliminary injunction on the notion that "the First Amendment may bar" the Alliance's claim. *Id.* at 17. The district court

thought that Fearless' contest was expressive conduct. *Id.* at 15-16. It reasoned that Fearless intended to convey a message that "Black women-owned businesses are vital to our economy," and that the contest was how Fearless "carries out its commitment to that group." *Id.* at 15. The court acknowledged the Supreme Court's holding in *Runyon* that §1981 complies with the First Amendment because "[i]nvidious private discrimination ... has never been accorded affirmative constitutional protections." *Id.* at 16 (quoting 427 U.S. at 176). But the court pointed to the Supreme Court's more recent decision in *303 Creative*, which it said was "difficult to square" with *Runyon. Id.* at 16 (citing *303 Creative LLC v. Elenis*, 143 S.Ct. 2298, 2308 (2023)). Though *303 Creative* involved pure speech, the district court felt "compelled to apply" it here, "considering [its] recency." *Id.* at 17.

Though the district court didn't address the balance of harms or public interest, it did address irreparable harm. *Id.* at 20-22. The Alliance didn't prove it, according to the district court, for two reasons: The Alliance had no "likelihood of success on the merits," and §1981 does not expressly "authoriz[e] injunctive relief." *Id.* at 21-22. The Alliance immediately appealed and asked this Court to enter an injunction pending appeal.

## III.    This Court grants an injunction pending appeal.

Two days later, this Court granted an injunction pending appeal. Fearless' contest "is substantially likely to violate" §1981, the motions panel found. *AAFER*, 2023 WL

6520763, at *1. Unlike the recent Supreme Court cases that the district court relied on, Fearless "do[es] not provide 'expressive services' or otherwise engage in 'pure speech.'" *Id.* (quoting *303 Creative LLC*, 143 S.Ct. at 2318). The First Amendment gives Fearless the "right to promote beliefs about race," but "it does not give [Fearless] the right to exclude persons from a contractual regime based on their race." *Id.* (citing *Runyon*, 427 U.S. at 176). The Alliance's "likelihood of success on the merits" on its claim of racial discrimination meant that it had also "established an irreparable injury and that the balance of equities and public interest favor an injunction." *Id.* (citing *Gresham*, 730 F.2d at 1424).

Judge Wilson dissented. His dissent mentioned, in footnotes, Fearless' arguments about standing and the First Amendment. *See id.* at *2 nn.1-2. But he mainly argued that the Alliance couldn't sue under §1981 because two of its members are white and §1981 protects only "racial minorit[ies]." *Id.* at *2. Though one of the Alliance's members is Asian—clearly a racial minority—Judge Wilson thought her claim was defeated by her association with the white members. *Id.* (citing *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270 n.21 (11th Cir. 2004)). Fearless never made that argument in the district court or this Court. And the majority rejected it, citing the Supreme Court's holding that §1981 "'was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race.'" *Id.* at 3 (quoting *McDonald*, 427 U.S. at 295).

10

## STANDARD OF REVIEW

Generally speaking, this Court reviews denials of preliminary injunctions for abuse of discretion. *Scott v. Roberts*, 612 F.3d 1279, 1289 (11th Cir. 2010). But because legal errors *are* abuses of discretion, this Court reviews the district court's legal conclusions de novo. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1266 (11th Cir. 2006). It also reviews de novo the "core facts that determine a First Amendment free speech issue." *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1205 (11th Cir. 2009). And it reviews ordinary factual findings for clear error. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1118 n.2 (11th Cir. 2022).

## SUMMARY OF ARGUMENT

Fearless is currently under an injunction for a reason: In this country, you can't refuse to contract with someone because they aren't your preferred race. Fearless' contest could not be a more blatant violation of §1981. The district court found that the contest is a contract. Fearless concedes that it discriminates based on race. And *no* judge has bought Fearless' "affirmative action" defense. Its remaining arguments are no stronger. The district court held that this heartland application of §1981 violates the First Amendment, and Judge Wilson opined that the Alliance couldn't sue under §1981 either because some of its members are white or because it referred to them with pseudonyms. These arguments find no support in the caselaw, which is why this Court entered an injunction pending appeal.

11

This Court should continue enforcing §1981, no matter how much Fearless and its amici try to frame this discriminatory contest as benign. Fearless' lawyers will recast the contest as "charity." But it's not very charitable to make entrants sign a binding arbitration agreement and assign away their intellectual-property rights. Fearless will cite disparities in the levels of funding that businesses receive. But over 99% of that disparity is between men and women—not between women of different races—and Fearless *bans* most women from getting its prize. *See* R.59-2 at 18. Its contest also excludes women who are Hispanic or Middle Eastern, even though these groups receive *less* funding than black women. *Id.* Fearless also refuses to entertain obvious alternatives to its race-based contracting, like preferring businesses that have never received funding before.

Fearless insists on using race as a proxy for disadvantage, rather than using disadvantage itself. While that racial essentialism might be fashionable in some circles, Congress has taken a different view. Section 1981 makes race irrelevant in contracting because "racial discrimination is invidious in all contexts." *SFFA v. Harvard*, 600 U.S. 181, 214 (2023) (cleaned up). This Court should reverse the district court and instruct it to enter a preliminary injunction barring Fearless from proceeding with its racially discriminatory contest.

# ARGUMENT

The Alliance should have gotten a preliminary injunction if it satisfied four factors: likely success, irreparable harm, the balance of equities, and the public interest. *Speech First*, 32 F.4th at 1124. A panel of this Court already found those factors satisfied, since the "same" four factors govern injunctions pending appeal. *Hobby Lobby Stores, Inc. v. Sebelius*, 2012 WL 6930302, at *1 (10th Cir. Dec. 20). The panel was right.

## I.    Fearless' contest likely violates §1981.

Section 1981 bans racial discrimination in contracting. Because refusing to contract with someone is conduct, not speech, the Supreme Court has repeatedly held that §1981 doesn't implicate the First Amendment. Contra the district court, this case is not the exception. Contra the motions-panel dissent, §1981 protects people of all races. And contra Fearless, the Alliance did not need to divulge its members' legal names to have Article III standing.

### A.    Section 1981 does not violate the First Amendment.

Fearless' racial discrimination is not protected by the First Amendment. The Supreme Court has confirmed three times that §1981's prohibition of racial discrimination in contracting does not violate the First Amendment. *Runyon* rejected a First Amendment challenge to §1981 because "invidious private discrimination … has never been accorded affirmative constitutional protection." 427 U.S. at 176 (cleaned up). The Supreme Court again recognized that §1981 does not run afoul of the First Amendment

13

in *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389-90 (1992), and *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993).

Racial discrimination in contracting is not protected because it is "conduct," not speech. *R.A.V.*, 505 U.S. at 389-90. Section 1981 is "an example of a permissible content-neutral regulation of conduct." *Mitchell*, 508 U.S. at 487; *see R.A.V.*, 505 U.S. at 390 (§1981 "does not target conduct on the basis of its expressive content"). The discriminatory "acts" that violate §1981 "are not shielded from regulation merely because they express a discriminatory idea or philosophy." *R.A.V.*, 505 U.S. at 390; *cf. Coghlan v. S.C. R. Co.*, 142 U.S. 101, 111 (1891) (describing contracts as "'legal acts'").

The district court correctly recognized that Fearless' contest "clearly falls within the scope of §1981." R.115 at 12. The contest, which is "open only to black females," explicitly discriminates based on race. R.2-3 at 3. And the contest is a contract. R.115 at 11-12. Contests are classic contracts. *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1104 (10th Cir. 2001) ("[N]early all jurisdictions have adopted the rule 'that contract law governs the sponsor-contestant relationship.'"); *United States v. Chandler*, 376 F.3d 1303, 1308-12 (11th Cir. 2004) (observing the "well-settled rule" that a contest is "an offer for a unilateral contract that can be accepted by performing all the terms and conditions"), *on reh'g*, 388 F.3d 796 (11th Cir. 2004); *Ga. Lottery Corp v. Vasaya*, 836 S.E.2d 107, 111 (Ga. Ct. App. 2019) (holding that a contest offering a "chance to win a prize under the terms" is a contract). The contest sponsor offers a prize in exchange

for the contestants taking the steps to enter. *See Restatement (Second) of Contracts* §45 & cmt. A & illustr. 5 (1981).

Fearless admits that its contest is a contract. After this Court enjoined Fearless from closing the contest, Fearless reverted to the rules in place when the Alliance sued. Entrants must agree to those official rules, "WHICH ARE A CONTRACT." R.2-3 at 3; *Official Rules* (Nov. 6). To obtain a chance at the prize, entrants must give up important rights. They lose all rights in their submissions, and they allow Fearless to use their name, image, and likeness for its own benefit. R.2-3 at 9. Entrants also must release and indemnify Fearless from certain claims, waive their right to sue in court or pursue a class action, and agree to arbitrate any disputes in Atlanta. *Id.* at 13, 16. As with any contract, this bargained-for exchange is conduct that §1981 can validly prohibit.

The district court recognized that Fearless was contracting, R.115 at 11-12, but it still found that Fearless' discrimination is protected by the First Amendment, *id.* at 13-18. According to the district court, Fearless' "conduct" is "expressive." *Id.* at 16. Fearless "intend[ed] to convey a particular message" with its discriminatory contest: that "Black women-owned businesses are vital to our economy." *Id.* at 15. And though Fearless "carrie[d] out its commitment" through a racially discriminatory contest, the district court could see "nothing" suggesting that this message "would not be understood by those who viewed it." *Id.*

This reasoning confirms that Fearless' discrimination is not protected by the First Amendment. Conduct is not protected just because an actor hopes that people will infer

some message from it. "[A]s a general matter, a decision not to do business with someone, even when it is politically motivated (and even when it is part of a broader political movement), is not protected by the First Amendment.)." Volokh, *The First Amendment and Refusals to Deal*, 54 U. Pac. L. Rev. 732, 733 (2023). The First Amendment protects "only ... conduct that is inherently expressive." *Rumsfeld v. FAIR*, 547 U.S. 47, 66 (2006). Conduct fails to meet that standard when it is "expressive only because" it is "accompanied … with speech explaining it." *Id.* So contra the district court, the question is not whether Fearless "intend[ed] to convey a particular message" and "carrie[d] out its commitment to that" message through racial discrimination in contracting. R.115 at 15. The question is whether Fearless' conduct would inherently convey a message to an ordinary observer without further explanation.

"[T]he conduct regulated" by §1981—racial discrimination in contracting—is not "inherently expressive." *FAIR*, 547 U.S. at 65. An observer who saw Fearless give $20,000 to a business would not know that Fearless was sending a message about the importance of black women in the economy. The observer could just as easily assume that Fearless chose that business because it had the best potential for growth, or because the business was in one of Fearless' preferred industries, or because Fearless liked its submission the best. *See id.* Most likely, an observer would observe nothing at all. As Fearless' rules acknowledge, a contract is formed when an entrant submits an entry, R.2-3 at 3, but nothing about that contract is expressive. It isn't even *public*.

16

The decisions that the district court relied on are inapplicable here. The district court pointed to a series of decisions involving the application of nondiscrimination laws to actual speech. The website in *303 Creative* was "pure speech." 143 S.Ct. at 2319. The parade in *Hurley* was "a form of expression." *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 568 (1995). The program for charitable donations in *Coral Ridge* was "expressive conduct." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254 (11th Cir. 2021). The casting decisions in *Claybrooks* were "part and parcel of the Shows' creative content." *Claybrooks v. Am. Broad. Cos., Inc.*, 898 F. Supp. 2d 986, 999 (M.D. Tenn. 2012). In other words, these cases involve "peculiar" applications of nondiscrimination law where the discrimination was based on message, not a protected characteristic. *Hurley*, 515 U.S. at 572.

These cases stress that they are *not* recognizing a "right to refuse to serve members of a protected class." *303 Creative*, 600 U.S. at 597. The artist in *303 Creative*, for example, did not refuse services "because she object[ed] to the protected characteristics of certain customers." *Id.* at 594. She would "gladly create" websites for any customer, including "gay, lesbian, or bisexual clients." *Id.* But she would not "create expressions that defy any of her beliefs for any customer." *Id.* at 595. The same was true in *Hurley*. The parade organizers "disclaim[ed] any intent to exclude homosexuals as such, and no individual member of GLIB claim[ed] to have been excluded from parading." 515 U.S. at 572. But the parade organizers could not be required to admit the organization "as

17

its own parade unit carrying its own banner," since that would "alter the expressive content of [the] parade." *Id.*

The district court's position eviscerates this key "distinction between status and message." *303 Creative*, 600 U.S. at 595 n.3. It said Fearless had a right to refuse to contract with nonblacks because a viewer might infer some message about Fearless' support for blacks. But Fearless' program is a mine-run violation of §1981, no different from an employer hiring only white employees to send a message that whites are "vital to our economy." R.115 at 15. None of the decisions that the district court cited recognized a right to discriminate because the discrimination itself expressed some incidental message about race. Such a principle would effectively end antidiscrimination law, letting any discriminator "transform conduct into 'speech' simply by talking about it." *FAIR*, 547 U.S. at 66. Fearless, after all, *does* "objec[t] to the protected characteristics of certain [individuals]." *303 Creative*, 600 U.S. at 594.

The district court thought *Coral Ridge* supported its conclusion, but nothing in *Coral Ridge* hints that the First Amendment protects a contractual regime like Fearless'. *Coral Ridge* didn't involve discrimination in contracting. It instead involved a program where Amazon donated money to charities. *See* 6 F.4th at 1254. Since no contract was at issue, this Court never addressed whether discriminatory contracting is expressive, or even used the word "contract." *See id.* at 1253-56.

The district court's assertion that Amazon also entered contracts is a red herring. R.115 at 18. It's true that "[c]ontracts ... governed the commercial transactions between

18

Amazon and its customers." *Id.* But those contracts were not the conduct being challenged. *See Coral Ridge*, 6 F.4th at 1253-56. No one alleged that Amazon had discriminated in forming contracts with customers. The case involved no racial discrimination. And the only conduct at issue was Amazon "donating money" to outside charities. *Id.* at 1254. *Coral Ridge* cannot be transformed into a case about discrimination in contracting just because the defendant had entered *other* contracts that weren't the alleged source of discrimination.

Fearless' program is a far cry from *Coral Ridge*. *Coral Ridge* found that a program where Amazon donated a portion of purchases to selected charities was expressive conduct. The parties "d[id] not dispute that donating money qualifies as expressive conduct." *Id.* And the Court found that "[a] reasonable person would interpret" Amazon's decision of which charities to exclude "as Amazon conveying some sort of message about the organizations it wishes to support." *Id.* (cleaned up).

The district court thought that *Coral Ridge* governed because Fearless' lawyers relabeled its contest as charity, but those made-for-litigation labels don't control. Conduct is expressive only when the "particular conduct" regulated by the challenged law conveys a message to the ordinary observer. *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1347 (11th Cir. 2021). This inquiry turns both on the particular conduct and its "factual context and environment." *Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale* (*Food Not Bombs I*), 901 F.3d 1235, 1242 (11th Cir. 2018). For this reason, the same charitable act might be expressive in some contexts, *see Food Not Bombs I*, 901 F.3d at 1242, even

19

though "most [such] events will not be expressive," *Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale (Food Not Bombs II)*, 11 F.4th 1266, 1292 (11th Cir. 2021). And in fact, this Court has stressed that charitable acts like "the provision of clothing, shelter, and medical care … usually do not involve expressive conduct." *Id. Coral Ridge* does not conflict with these decisions. Instead, this Court assessed Amazon's program in the circumstances of that case. The same kind of assessment is required here.

Looking to the circumstances of Fearless' contest, the average viewer would not conclude that Fearless was engaged in charity at all, let alone draw "some sort of message" from its alleged charity. *Food Not Bombs I*, 901 F.3d at 1242. Fearless' program operates through the contractual regime ordinarily associated with a contest: entrants submit entries in exchange for a chance at a prize. In this context, an ordinary observer would be more likely to conclude that Fearless had merely selected the business that had won (what Fearless calls) a "skill-based contest." R.2-3 at 2. Absent Fearless' additional speech, the observer would not view this selection as sending any message about black women or their role in the economy.

Of course, even if Fearless' racial discrimination conveyed some message, it still wouldn't be protected by the First Amendment. "Where the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory idea or philosophy." *R.A.V.*, 505 U.S. at 390. Instead, even when an action is clearly expressive, "it has never been deemed an abridgment of freedom of speech ... to make a course of conduct illegal" because some

speech might be caught up in the ban. *FAIR*, 547 U.S. at 62 (cleaned up). So a ban on discrimination in hiring regulates conduct, not speech, even though it "will require an employer to take down a sign reading 'White Applicants Only.'" *Id.* The same is true here, where the only message that Fearless has identified is whatever message is sent by the discrimination itself.

But even if Fearless' racial discrimination were expressive and not merely incidental to a permitted ban on conduct, the district court's analysis was incomplete. Having concluded that Fearless' discrimination was expressive, the district court ruled that Fearless was likely to prevail under the First Amendment without further discussion. R.115 at 17-18. But expressive conduct is not categorically protected. Instead, a "content-neutral regulation of expressive conduc[t] is subject only to intermediate scrutiny." *Food Not Bombs II*, 11 F.4th at 1294. Section 1981 meets this standard if racial discrimination in contracting "itself may constitutionally be regulated" and the prohibition of discrimination "is narrowly drawn to further a substantial governmental interest … unrelated to the suppression of free speech." *Id.* (cleaned up).

Section 1981 comfortably meets this standard. To begin, "no one has suggested" that racial discrimination in contracting may not be lawfully regulated or denied that there's a substantial government interest in eliminating racial discrimination. *Id.* Nor could they. *See Runyon*, 427 U.S. at 176 (recognizing §1981 as valid remedial legislation under the Thirteenth Amendment). And §1981's prohibition of racial discrimination in contracting is perfectly tailored to the elimination of racial discrimination in contracting.

21

It directly prohibits "invidious private discrimination," which "has never been accorded affirmative constitutional protections." *Id.* It leaves Fearless free to speak about the importance of black women in the economy and even to limit its donations (but not its contracts) to black women.

## B.    Section 1981 prohibits all racial discrimination in contracting, no matter which race is helped or harmed.

Though Judge Wilson dissented from the motions panel, he devoted only a footnote to the First Amendment. *See AAFER*, 2023 WL 6520763, at *2 n.2. He instead mostly argued that §1981 does not bar racial discrimination against "white[s]." *Id.* at *2-3. The district court never addressed this argument because Fearless never made it. While Fearless made an atmospheric point about how §1981's original "purpose" was to help the newly freed blacks, R.59 at 8, it never argued that §1981 allows discrimination against whites. The point is thus forfeited. *In re BCBS Antitrust Litig. MDL 2406*, ___ F.4th ___, 2023 WL 7012247, at *9 (11th Cir. Oct. 25). It's also wrong precedentially, textually, and factually.

**Precedent**. Whether §1981 protects whites, as the panel majority recognized, was resolved by the Supreme Court 50 years ago in *McDonald*. *See AAFER*, 2023 WL 6520763, at *1. *McDonald* asked "whether §1981 prohibits racial discrimination against whites." 427 U.S. at 286. After examining the law's text and history, the Court held that it does. *See id.* at 286-96. Since *McDonald*, it's been "well settled that white persons have standing to sue under section 1981." *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d

888, 890 (11th Cir. 1986); *accord Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) ("*McDonald* … held that white persons could maintain a §1981 suit."); *Roper v. Edwards*, 815 F.2d 1474, 1476 (11th Cir. 1987) ("[T]hat the [plaintiffs] are white d[oes] not bar them from bringing a federal civil rights action [under §1981]."). In a famous example, Jennifer Gratz (a white woman) successfully sued the University of Michigan for violating §1981. *Gratz v. Bollinger*, 539 U.S. 244, 250-52, 275-76 & n.23 (2003).

While this Court sometimes says that one "element" of a §1981 claim is that "'the plaintiff is a member of a racial minority,'" *e.g.*, *Lopez v. Target Corp.*, 676 F.3d 1230, 1233 (11th Cir. 2012), that language does not somehow overrule *McDonald*. The plaintiffs in those cases happened to be racial minorities. In cases involving white plaintiffs, this Court states the elements differently. *E.g.*, *Jenkins v. Nell*, 26 F.4th 1243, 1249-52 (11th Cir. 2022) (Wilson, J.) (white plaintiff sufficiently proved racial discrimination under §1981).

The "ultimate question" under §1981, as this Court recently explained in a case with a white plaintiff, is simply "whether the defendant intentionally discriminated against the plaintiff based on race." *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1021 (11th Cir. 2023). So while "some" cases say "the plaintiff must establish 'that he belongs to a racial minority,'" those cases simply reflect "the type of discrimination alleged"; they do not alter the principle that "a Caucasian who is discriminated against on the basis of his race" has an equally valid claim under §1981. *Wright v. Southland Corp.*, 187 F.3d 1287, 1291 n.3 (11th Cir. 1999) (citing *McDonald*). "Discrimination is discrimination" in this

circuit, "no matter what the race … of the victim." *Bass v. Bd. of Cnty. Comm'rs*, 256 F.3d 1095, 1103 (11th Cir. 2001) (citing *McDonald*).

**Text**. Titled "Equal rights under the law," §1981 gives "All persons" the "same right" to contract "as is enjoyed by white citizens." 42 U.S.C. §1981(a). Though it references "white" citizens, its rule is colorblind. It "explicitly applies to 'All persons,' including white persons." *McDonald*, 427 U.S. at 287. Giving nonwhites *greater* rights than whites, after all, would not give "all" persons "the same right." 42 U.S.C. §1981(a). Section 1981 thus "guarantee[s] continuous equality between white and nonwhite citizens" in contracting. *Jam v. Int'l Fin. Corp.*, 139 S.Ct. 759, 768 (2019).

While "Congress's immediate concern was the plight of newly-emancipated blacks," Congress "did not circumscribe its broad language to that limited goal." *Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1293 n.5 (11th Cir. 2002); *McDonald*, 427 U.S. at 289. The *way* that Congress helped the newly-emancipated blacks was by banning *all* racial discrimination—making race irrelevant to a person's right to contract. *See Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 679-80 & n.18 (1983); *Jones*, 392 U.S. at 432. The Reconstruction Congress understood that the best way to prevent racial discrimination is to universally reject the principle that individuals should be "'judged by ancestry instead of by [their] own merit.'" *SFFA*, 600 U.S. at 220.

**Facts**. Even if whites couldn't sue under §1981, that principle wouldn't bar relief here. Fearless' program also discriminates against racial minorities, including Hispanics, Arabs, Native Americans, and Asians. And Owner A is Asian, not white. R.114 at 5.

24

Asians are a racial minority, and "[i]t is clear" that §1981 was designed to protect "immigrant groups such as the Chinese." *Saint Francis Coll.*, 481 U.S. at 613. The dissent thought that, if the Alliance couldn't sue on behalf of its white members, then it couldn't sue on behalf of Owner A either. *AAFER*, 2023 WL 6520763, at *2 (dissent). But that guilt-by-white-association argument finds "no support in [the] caselaw." *Id.* at *1 (majority). Instead, the caselaw holds that associations "have standing to litigate" even if "only one" of their members has a claim. *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 n.4 (11th Cir. 2011).[2]

## C.    The Alliance likely has standing.

The Alliance "'clearly' has standing." *AAFER*, 2023 WL 6520763, at *1. An association has standing if, among other things, one of its members would have standing. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977). Owners A-C would have it here. They are "able and ready" to apply to Fearless' contest. *Gratz*, 539 U.S. at 245; *see* R.2-10 at 2 ¶3; R.11-1 at 2 ¶3; R.2-11 at 2 ¶3. But the contest excludes whites, Asians, and all other races except one. It thus injures these owners by preventing them from competing on a racially equal footing. *Gratz*, 539 U.S. at 262; *accord SFFA v. Harvard*, 308 F.R.D. 39, 48 (D. Mass.) (same in case against private defendant), *aff'd*, 807

---

[2] Judge Wilson cited *Jackson v. BellSouth Telecommunications*, where a white plaintiff declined to join his fellow black plaintiffs in asserting a claim under §1981. *See* 372 F.3d at 1270 n.21. But *Jackson* involved no association. And the white plaintiff didn't join the §1981 claim for a simple reason: The plaintiffs were claiming racial discrimination *against blacks*, not whites. *See id.* at 1272.

F.3d 472 (1st Cir. 2015), *aff'd on standing*, 600 U.S. at 198-201. And a court could redress that injury by ordering Fearless to stop considering race. *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 n.5 (1993). Hence why the district court found the Alliance has "clearly shown that it likely has standing." R.115 at 11.

Though Judge Wilson didn't "wade too deep" into standing, he was "skeptical" of the district court on one point. *AAFER*, 2023 WL 6520763, at *2 n.1. Perhaps Fearless was right, the dissent surmised, when it said the Alliance must divulge the real names of Owners A-C. Fearless derived this supposed ban on pseudonyms from *Summers* and *Georgia Republican Party*—cases that didn't involve pseudonyms. *See* CA11-Doc.6 at 20-21. Fearless badly misreads those cases, as the district court rightly explained. *See* R.115 at 6-8.

Cases like *Summers* hold that, at later stages of the litigation, associations must identify a *specific* member and explain why that member *currently has* standing. In *Summers*, for example, the associations challenged a regulation that loosened the requirements for certain forest projects. *Summers v. Earth Island Inst.*, 555 U.S. 488, 490 (2009). The associations timely identified two specific members (Marderosian and Bensman), but neither currently had standing. *Id.* at 494-96. The associations couldn't prove standing by pointing to their membership generally, speculating that given the sheer size of their membership it was "a statistical probability" that at least one member would soon visit an affected area. *Id.* at 497-500. Likewise, in *Georgia Republican Party*, the association

challenged a disclosure rule for certain political contributions. *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1200 (11th Cir. 2018). Though the association identified a specific member (Pipkin), that member lacked standing. *Id.* at 1203. The association "identifie[d] no other members" who were "covered or affected by [the Rule]," so it lacked standing because it "failed to allege that a specific member will be injured." *Id.* at 1203-04.

The Alliance did not violate the principle from these cases. It did not refer to its membership generally. It did not speculate that there's a statistical probability one of its nonblack members is ready and able to apply. And it did not "fai[l] to allege that a specific member will be injured" by Fearless' contest. *Id.* at 1203. As the district court found, the Alliance "clearly avers that three members of its organization are injured by the Contest." R.115 at 7. The Alliance identified and named those members "Owners A-C." And though it didn't have to, *see Marszalek v. Kelly*, 2021 WL 2350913, at *4 (N.D. Ill. June 9), the Alliance even "submitted an affidavit from [each] member," *Ga. Republican Party*, 888 F.3d at 1204-05; *see* R.2-10; R.11-1; R.2-11. The Alliance satisfied *Summers* because its evidence proves it has "specific members" who have standing "right now." *Chamber of Com. v. CFPB*, 2023 WL 5835951, at *6 (E.D. Tex. Sept. 8) (distinguishing *Summers*); *accord Advocs. for Highway & Auto Safety v. FMCSA*, 41 F.4th 586, 594 (D.C. Cir. 2022).

No precedent holds that an association, after identifying specific members who currently have standing, violated Article III by referring to those members with pseudonyms. The associations didn't even use pseudonyms in *Summers, Georgia Republican*

27

*Party*, or any other appellate case that Fearless has cited. While *Summers* said associations must "identify" members with standing, 555 U.S. at 499, a member can be identified without divulging her legal name. *See Highway Safety*, 41 F.4th at 594; *New York v. U.S. Dep't of Com.* (*Census Case*), 351 F. Supp. 3d 502, 606 n.48 (S.D.N.Y. 2019); *Humane Soc'y v. USDA*, 2021 WL 1593243, at *5 (C.D. Cal. Mar. 26). And while *Summers* used the word "name" once (as a synonym for "identify"), 555 U.S. at 498, pseudonyms *are* names. *Summers* didn't say "*real* name" or "*legal* name"—again, the associations there didn't use pseudonyms, and none of *Summers*' analysis would have made sense if they had. Fearless wants this Court to pretend that the Supreme Court, by using the word "name," considered and decided an issue that wasn't implicated, briefed, or argued in *Summers*. That's exactly what the Supreme Court says *not* to do when reading its precedents. *See R.A.V.*, 505 U.S. at 385-86 n.5 (don't treat a point as "resolved by broad language in cases where the issue was not presented or even envisioned"); *Brown v. Davenport*, 142 S.Ct. 1510, 1528 (2022) (don't use "stray comments and stretch them beyond their context" to arguments that the decision "had no reason to pass on").

This Court has kept everything straight. In *Doe v. Stincer*, for example, an association based its standing on an unnamed "individual." 175 F.3d 879, 884 (11th Cir. 1999). While this Court faulted the association for not proving that the challenged law "caused" that individual's injuries, *id.* at 887, it rejected the broader argument that Fearless makes here. This Court rejected the notion that associations "must specifically name the individual on whose behalf the suit is brought." *Id.* at 884. Hence why a panel

28

of this Court has reiterated, even after *Summers* and *Georgia Republican Party*, that associations seeking injunctions "need not 'name names' to establish standing." *Am. Coll. of Emergency Physicians v. BCBS of Ga.*, 833 F. App'x 235, 241 n.8 (11th Cir. 2020) (cleaned up).

Instead of banning them, courts regularly hold that associations who use pseudonyms have standing. The association in *Speech First* referred to its students with pseudonyms. 32 F.4th at 1114, 1120. So did the association in *SFFA*. 2023 WL 3126414, at *6 (D. Mass. Apr. 27), *approving standing*, 600 U.S. at 198-201. So did the association representing the illegal immigrants in the census and DACA cases. *Census Case*, 351 F. Supp. 3d at 606 n.48, *approving standing*, 139 S.Ct. 2551 (2019); *NAACP v. Trump*, 298 F. Supp. 3d 209, 225 & n.10 (D.D.C. 2018), *aff'g without questioning standing*, *DHS v. Regents of the Univ. of Cal.*, 140 S.Ct. 1891, 1916 (2020). Same for the law schools in *FAIR*. 291 F. Supp. 2d at 274-75, *approving standing*, 547 U.S. 47 (2006). Fearless wants this Court to say that all those courts and litigants missed a fatal jurisdictional defect. It also wants this Court to create a circuit split with the D.C. Circuit. That court has squarely rejected the notion that associations lose standing if they keep their members anonymous. *See Highway Safety*, 41 F.4th at 594.

The reason all these courts found associational standing is that pseudonymity has nothing to do with Article III. "[T]he use, vel non, of pseudonyms in pleading is immaterial to the case or controversy inquiry." *B.R. v. F.C.S.B.*, 17 F.4th 485, 495 (4th Cir. 2021). Absent highly unusual circumstances, a member's legal name "'adds no essential

information'" relevant to "'standing.'" *Highway Safety*, 41 F.4th at 594; *accord Census Case*, 351 F. Supp. 3d at 606 n.48. Fearless has never explained what standing argument it didn't make, but could have made, if it only knew Owners A-C's first and last names. *See Humane Soc'y*, 2021 WL 1593243, at *6 ("[A]s demonstrated by their thorough memoranda, Defendants were able to fully and substantively contest the Plaintiffs' standing despite not knowing the individuals' names."). That these members are anonymous doesn't suggest they don't exist; it "merely suggest[s] the [association] has reservations about revealing those member names to Defendants" prior to "discovery" and a suitable protective order. *S.C. NAACP v. Alexander*, 2022 WL 453533, at *3 (D.S.C. Feb. 14) (three-judge district court). Whether the Alliance must disclose their real names is a debate for later as part of discovery or a motion to (un)seal, not a reason to dismiss the case now for lack of standing. *Id.*

Fearless (unwittingly) agrees. It concedes that "a plaintiff *is* permitted 'to proceed anonymously'" in certain cases, citing this Court's decision in *Doe v. Frank*. R.59 at 17-18 (emphasis added; quoting 951 F.2d 320, 323-24 (11th Cir. 1992)). But a rule that courts can waive is, by definition, not a matter of Article III jurisdiction. *Santos-Zacaria v. Garland*, 598 U.S. 411, 423 (2023). Indeed, *Doe v. Frank* doesn't say a word about Article III; it applies "Fed.R.Civ.P. 10(a)," the rule that requires complaints to "'include the names of all the parties.'" 951 F.2d at 322. No one thinks the Alliance violated Rule 10(a). Its complaint names all the parties—itself and Fearless. Standing members like Owners A-C are "not ... parties to the litigation" and thus not covered by Rule 10(a).

*NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1959); *see Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, 2023 WL 4848509, at *6 n.2 (S.D. Ohio July 28). Rule 10(a) could not force their disclosure without creating First Amendment problems and generating "tension with one of the fundamental purposes of the associational standing doctrine—namely, protecting individuals who might prefer to remain anonymous." *Census Case*, 351 F. Supp. 3d at 606 n.48 (citing *Patterson*, 357 U.S. at 458-60).

## II. The Alliance would likely suffer irreparable harm without a preliminary injunction.

The Alliance and its members are barred "from competing on an equal footing" because of a "discriminatory classification." *Adarand Constructors v. Peña*, 515 U.S. 200, 211 (1995) (cleaned up). That's a classic irreparable injury. This Court has already recognized that "racial discrimination ... is sufficient to permit a court to presume irreparable injury." *Gresham*, 730 F.2d at 1424; *accord Rogers v. Windmill Pointe*, 967 F.2d 525, 528 (11th Cir. 1992) ("[I]rreparable injury may be presumed from the fact of discrimination."). The motions panel agreed. *See AAFER*, 2023 WL 6520763 at *1 (citing *Gresham*).

The district court did not dispute that the Alliance and its members have been barred from competing through racial discrimination. But it still found that they had not shown irreparable harm. The court gave only two reasons: the Alliance is unlikely to succeed on the merits, and §1981 does not specifically provide for injunctive relief. R.115 at 20-22. Both of these purely legal rulings are incorrect.

31

Starting with the merits, Fearless' race-based contracting is not protected by the First Amendment, as explained above. The district court's only basis for concluding the Alliance was unlikely to succeed is, thus, wrong.

The district court was also wrong to limit irreparable harm to statutes that specifically authorize injunctive relief. This reasoning ignores *Gresham*'s holding that irreparable injury can be presumed from racial discrimination. 730 F.2d at 1424. Though *Gresham* also discusses statutes that authorize injunctions, that reasoning does nothing to undermine this independent holding. The district court did not explain its refusal to apply binding circuit precedent.

The district court's only other rationale for its statutory-authorization-only approach fares worse. It cited an Indiana court's announcement that irreparable harm should be presumed "only when a party is seeking an injunction under a statute that mandates injunctive relief as a remedy." *Moses*, 2022 WL 2046345, at *4. But even that court recognized its decision went against this Court's decision in *Gresham. Id.* at *3 n.3 (acknowledging that *Gresham* "held that irreparable injury may be presumed from the fact of discrimination" but trying to limit that holding to housing discrimination (cleaned up)).

Moreover, the Indiana court provided no support for its unreasoned announcement. It relied on language from a Tenth Circuit opinion stating that irreparable harm can be presumed "only when" a statute "*mandates* injunctive relief." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1140 (2017). But it ignored that this language addressed

the "precis[e] ... question" in that case: whether irreparable harm can be presumed "when a statute merely authorizes—rather than mandates—injunctive relief." *Id.* at 1140-41. While a statute that mandates injunctive relief might remove the need to prove irreparable harm, that doctrine has nothing to do with what kinds of injuries qualify as irreparable. The Tenth Circuit—like this Court and all others—has continued to recognize that some kinds of injury can be presumed irreparable because of their nature. *E.g.*, *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (10th Cir. 2019) ("Any deprivation of any constitutional right fits that bill."). The Indiana court erred by reading an out-of-context snippet as somehow rejecting this "well-settled law." *Id.* Its only other authorities—cases finding that certain intellectual-property violations would not cause irreparable harm—are irrelevant to whether racial discrimination is an irreparable harm. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393-94 (2006); *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2022).

Courts have noted the "subtle, pervasive, and essentially irremediable nature of racial discrimination" for good reasons. *Gresham*, 730 F.2d at 1424. "[I]t demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *SFFA*, 600 U.S. at 221. And courts usually cannot order the innocent beneficiaries to return the benefits they obtained, "making corrective relief nearly impossible." *Gresham*, 730 F.2d at 1424. Racial discrimination also inflicts the irreparable harm of depriving people of the benefits of an "integrated community." *Id.*

33

These harms, which all agree are irreparable in constitutional cases, do not somehow become reparable in §1981 cases. "What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary award," not the source of the claim. *Free the Nipple*, 916 F.3d at 806. The "essentially irremediable nature of racial discrimination," *Gresham*, 730 F.3d at 1424, does not disappear when a plaintiff brings a claim under a statute—especially not *this* statute, which was enacted to "translate" a constitutional right, *Runyon*, 427 U.S. at 170.

The Alliance's harms here illustrate the irreparable injury caused by racial discrimination. The Alliance's members have been excluded from Fearless' contest because of the color of their skin. *See SFFA*, 600 U.S. at 221 (racial classifications "cause continued hurt and injury"). The harm of that racial classification cannot be remedied by monetary damages. Nor could monetary damages make up for the loss of the other intangible benefits that Fearless gives winners, including training and mentorship opportunities. R.2-3 at 12; R.59 at 14; R.59-3 at 7.

Moreover, absent an injunction, Fearless would have closed its contest, picked a winner, and argued that this case is moot. If Fearless had prevailed on that argument, "the judicial process [would] be rendered futile by a defendant's action." *Ala. v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005). The risk that a plaintiff's right to judicial review will be denied by an imminent case-mooting event is itself irreparable harm. *Garrison v. Hudson*, 468 U.S. 1301, 1302 (1984) (Burger, C.J., in chambers). A preliminary injunction was thus needed to avoid the risk that the Alliance could be

left with "no do over and no redress." *League of Women Voters v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

## III.    The Alliance won the balance of harms and public interest.

The district court declined to address the balance of harms and public interest. R.115 at 22. But especially because the Alliance is likely to succeed on the merits, both factors strongly favored a preliminary injunction. Fearless has no valid interest in running a contest that's likely illegal, and no one has a valid interest in being the beneficiary of unlawful racial discrimination. *See League of Women Voters*, 838 F.3d at 12.

Starting with the balance of harms, the Alliance faces substantial and permanent harm from racial discrimination compared to whatever harm might befall Fearless from a temporary delay of its arbitrary deadline. If Fearless' contest had been allowed to close, then the Alliance's members would have forever lost their chance to compete in the normal course based on their race. *SFFA*, 600 U.S. at 221. In contrast, Fearless would face only a temporary delay in when it closes this round of the contest. That temporary delay is not a "substantia[l] injur[y]," *League of Women Voters*, 868 F.3d at 12, especially considering that the deadline was "arbitrarily set in the first place" and Fearless had already moved it once, *GOS Op., LLC v. Sebelius*, 2012 WL 175056, at *5 (S.D. Ala. Jan. 20).

The public interest also favors the Alliance. "[I]t is always in the public interest to protect [the] constitutional righ[t]" to equal protection. *Phelps-Roper v. Nixon*, 545 F.3d

35

685, 690 (8th Cir. 2008). The same is true for the right to racial equality in contracting guaranteed by §1981. *See Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001) ("[C]ivil rights actions vindicate [the] public interest."). Again, this Court already reached that conclusion when it granted an injunction pending appeal.

## CONCLUSION

This Court should reverse the district court and remand with instructions to enter a preliminary injunction barring Fearless from operating its racially discriminatory contest.

Dated: November 6, 2023

Respectfully submitted,

*/s/ Cameron T. Norris*

William Fawcett, Sr.
Chambliss & Fawcett, LLP
2900 Paces Ferry Road, Ste. B-101
Atlanta, GA 30339
wfawcett@cf-firm.com

Thomas R. McCarthy
Cameron T. Norris
Gilbert C. Dickey
R. Gabe Anderson
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
gilbert@consovoymccarthy.com
gabe@consovoymccarthy.com

*Counsel for the American Alliance for Equal Rights*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7) because it contains 9,421 words, excluding the parts that can be excluded. It also complies with Rule 32(a)(5)-(6) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font (with 16- and 15-point Helvetica Neue font for headers).

Dated: November 6, 2023                          */s/ Cameron T. Norris*

## CERTIFICATE OF SERVICE

I e-filed this brief, which will email everyone requiring notice.

Dated: November 6, 2023                          */s/ Cameron T. Norris*