No. 23-13138

# In the United States Court of Appeals for the Eleventh Circuit

———————————

AMERICAN ALLIANCE FOR EQUAL RIGHTS,

*Plaintiff- Appellant*,

v.

FEARLESS FUND MANAGEMENT, LLC, ET AL.,

*Defendants-Appellees.*

———————————

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:23-cv-3424-TWT

———————————

## BRIEF OF AMICUS CURIAE AMERICA FIRST LEGAL FOUNDATION IN SUPPORT OF THE PLAINTIFF-APPELLANT

———————————

GENE P. HAMILTON
Vice President & General Counsel
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Amicus Curiae*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Counsel of record certifies that the following persons and entities, in addition to those already listed in the parties' briefs, have an interest in the outcome of this case:

| Amicus Curiae | Counsel for Amicus Curiae |
|---|---|
| • America First Legal Foundation | Jonathan F. Mitchell<br>Gene P. Hamilton |

America First Legal Foundation is a not-for-profit corporation exempt from income tax under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). It does not have parent corporation, and no publicly held company has a 10 percent or greater ownership interest.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*

i

## TABLE OF CONTENTS

Certificate of interested persons and corporate disclosure statement ........................i

Table of contents ..............................................................................................ii

Table of authorities .........................................................................................iii

Interest of amici curiae ....................................................................................1

Statement of compliance with Rule 29 ...........................................................1

Summary of argument ......................................................................................2

     I.    The Supreme Court has never allowed the Speech or Religion Clauses to exempt litigants from laws prohibiting racial discrimination ...........................................................................4

     II.   Judge Wilson's interpretation of 42 U.S.C. § 1981 is textually unsupportable ...............................................................................11

Conclusion .....................................................................................................15

Certificate of compliance ..............................................................................16

Certificate of service .....................................................................................17

## Table of Authorities

### Cases

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) ................................................ 3, 7

*ACLU of Florida, Inc. v. Miami-Dade County School Board*,
557 F.3d 1177 (11th Cir. 2009) ................................................................. 2

*American Alliance for Equal Rights v. Fearless Fund Management, LLC*,
2023 WL 6520763 (11th Cir. Sept. 30) ................................................... 11

*American Foreign Service Ass'n v. Garfinkel*, 490 U.S. 153 (1989) ............................ 11

*Bob Jones University v. United States*, 461 U.S. 574 (1983) ................................ 5, 7, 8

*Bolling v. Sharpe*, 347 U.S. 497 (1954) ...................................................... 13

*Boy Scouts of America v. Dale*, 530 U.S. 640 (2000) ......................................... 8

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) ............................... passim

*Camreta v. Greene*, 563 U.S. 692 (2011) ...................................................... 8

*Claybrooks v. American Broadcasting Companies Inc.*,
898 F. Supp. 2d 986 (M.D. Tenn. 2012) ................................................. 8, 9

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
6 F.4th 1247 (11th Cir. 2021) ............................................................. 6, 7

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades
Council*, 485 U.S. 568 (1988) ............................................................. 13

*Ex Parte Young*, 209 U.S. 123 (1908) .......................................................... 2

*Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019) .................... 10

*Masterpiece Cakeshop v. Colorado Civil Rights Commission*,
138 S. Ct. 1719 (2017) .................................................................. 9, 10

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam) ..................................... 2

*McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273 (1976) ...................... 13

*Newman v. Piggie Park Enterprises Inc.*, 390 U.S. 400 (1968) ................................. 4

*Parker v. County of Los Angeles*, 338 U.S. 327 (1949) ...................................... 11

iii

*Roberts v. Progressive Preferred Insurance Co.*, 23-cv-01597-PAG (N.D. Ohio) .................................................................................................... 1

*Runyon v. McCrary*, 427 U.S. 160 (1976) ................................................... 4

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ................................................................. 6

**Statutes**

42 U.S.C. § 1981 .............................................................................. passim

## Interest Of Amici Curiae

America First Legal Foundation ("AFL") is a public-interest law firm dedicated to vindicating Americans' constitutional and common-law rights, protecting their civil liberties, and advancing the rule of law.

America First Legal has dedicated a substantial part of its activities over the last two years toward advancing equality under the law for all Americans, regardless of their race. America First Legal has even created a dedicated internal center to assist with case intake, processing, and litigation of such cases, the AFL Center for Legal Equality. Through the Center for Legal Equality, America First Legal has brought a number of challenges against public and private entities that discriminate against American citizens on the basis of race, including those in violation of 42 U.S.C. § 1981.

In one of those cases, America First Legal represents an individual and a putative class in a case involving similar facts to this one. *See Roberts v. Progressive Preferred Insurance Co.*, 23-cv-01597-PAG (N.D. Ohio). America First Legal submits this amicus brief to assist the court in addressing the merits of the case, as well as to address critical points that advance America First Legal's organizational mission to fight for equality under the law for all Americans, and to advance its clients' interests in current and future cases.

## Statement Of Compliance With Rule 29

All parties have consented to the filing of this brief. No counsel for a party authored any part of this brief. And no one other than the amicus curiae,

its members, or its counsel financed the preparation or submission of this brief.

## Summary Of Argument

The district court did not go so far as to hold that the Speech Clause allows the Fearless Fund to violate 42 U.S.C. § 1981 by categorically excluding whites from contractual opportunities that are offered exclusively to black women. The district court held only that the Fearless Fund's First Amendment arguments precluded the plaintiff from making a "clear" showing of likely success on its 42 U.S.C. § 1981 claim at this stage of the litigation, and it denied a preliminary injunction for that reason. R.115 at 17 ("[B]ecause the First Amendment may bar the Plaintiff's claim, the Court cannot conclude that it has carried its heavy burden of showing a clear likelihood of success on the merits at this stage."); *Mazurek v. Armstrong*, 520 U.S. 968, 971, 972 (1997) (per curiam) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." (emphasis in original) (citation and internal quotation marks omitted)).[1]

---

1. *See also ACLU of Florida, Inc. v. Miami-Dade County School Board*, 557 F.3d 1177 (11th Cir. 2009) ("A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." (citation and internal quotation marks omitted)); *Ex parte Young*, 209 U.S. 123, 166 (1908) ("[N]o injunction ought to be granted unless in a case reasonably free from doubt.").

But the district court was wrong to hold that the First Amendment "may" exempt the Fearless Fund and its Strivers Grant Contest from the requirements of 42 U.S.C. § 1981. The Supreme Court has repeatedly and emphatically held that the Speech and Religion Clauses do not allow litigants to seek exemptions from laws prohibiting racial discrimination—even when a litigant shows that compliance with such a law will burden his expressive conduct or his religious beliefs.[2] The Supreme Court has also made clear, in a long and unbroken line of cases, that governments at all levels have a "compelling interest" in eradicating racial discrimination—an interest of such overpowering importance that it forces claims under the Speech and Religion Clauses to give way.[3] The Supreme Court has never wavered from this stance, and it has never even suggested that the Speech or Religious Clauses might limit the scope or enforcement of laws prohibiting racial discrimination. And when the Supreme Court rules in favor of a claimant who seeks exemptions from neutral, generally applicable laws on account of its speech or religious beliefs, the Court goes out of its way to make clear that its holdings will not in any way limit the enforceability of race-discrimination laws. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733 (2014) (reaffirming the government's "compelling interest in providing an equal opportunity to participate in the workforce without regard to race"); *303 Creative LLC v. Elenis*, 600 U.S. 570, 582 (2023) (noting that the plaintiff in that case was "willing to

---

2.  *See infra* at 4–5.
3.  *See infra* at 5–6.

3

work with all people regardless of . . . race"). Racial discrimination is in a class by itself, and the Supreme Court's willingness to indulge First Amendment claims when litigants challenge other types of anti-discrimination laws lends no support to the idea that the Speech or Religion Clauses might curtail the scope of 42 U.S.C. § 1981.

## I. THE SUPREME COURT HAS NEVER ALLOWED THE SPEECH OR RELIGION CLAUSES TO EXEMPT LITIGANTS FROM LAWS PROHIBITING RACIAL DISCRIMINATION

This is hardly the first time that a litigant has invoked the First Amendment in an attempt to escape the commands of laws prohibiting racial discrimination. The Supreme Court first confronted a First Amendment claim of this sort in *Newman v. Piggie Park Enterprises Inc.*, 390 U.S. 400 (1968), in which restaurant owners claimed that Title II of the Civil Rights Act of 1964—which outlaws racial discrimination in places of public accommodation—violated their constitutional rights under the free exercise clause. It did not go well for the First Amendment claimants, as the justices relegated their discussion of the free-exercise claim to a footnote and denounced it as "patently frivolous." *Id.* at 403 n.5.

Subsequent efforts to establish First Amendment carveouts to laws prohibiting racial discrimination have not gotten any traction either. *Runyon v. McCrary*, 427 U.S. 160 (1976), made short work of the idea that the First Amendment right of association could limit the scope of 42 U.S.C. § 1981, declaring in brusque fashion that "'the Constitution . . . places no value on

4

discrimination.'" *Runyon*, 427 U.S. at 176 (quoting *Norwood v. Harrison*, 413 U.S. 455 (1973)). *Bob Jones University v. United States*, 461 U.S. 574 (1983), was similarly dismissive of religious schools' efforts to invoke the Free Exercise Clause to justify a ban on interracial dating and a near-categorical exclusion of non-white students from admission, announcing that "the governmental interest at stake here is compelling," and that "the Government has a fundamental, overriding interest in eradicating racial discrimination in education." *Id.* at 604.

Later decisions of the Supreme Court have followed *Bob Jones* in recognizing a "compelling" governmental interest in combating race discrimination that trumps claims that might otherwise be asserted under the Speech or Religion Clauses of the First Amendment. In *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), the Court made clear that the Religious Freedom Restoration Act could not provide exemptions from Title VII's prohibition on racial discrimination in employment on account of the "compelling" governmental interests involved:

> The principal dissent raises the possibility that discrimination in hiring, for example on the basis of race, might be cloaked as religious practice to escape legal sanction. See *post*, at 32–33. Our decision today provides no such shield. The Government has a compelling interest in providing an equal opportunity to participate in the workforce without regard to race, and prohibitions on racial discrimination are precisely tailored to achieve that critical goal.

*Id.* at 733. And the majority opinion in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023), would not even consider the dissenting opinion's argument that the First Amendment gives universities a constitutional exemption from Title VI's prohibition against racial discrimination in student admissions. *See id.* at 332–33 (Sotomayor, J., dissenting) (arguing that the First Amendment allows universities to pursue student-body diversity despite Title VI's statutory restrictions on the practice).

The Supreme Court's pronouncements from *Piggie Park* to *Students for Fair Admissions* have been clear and consistent: The First Amendment does not provide a license for anyone to violate laws against racial discrimination—even when they are attempting to communicate a message and even when the laws might violate someone's religious beliefs. The government's interest in suppressing racial discrimination is "compelling" and trumps any constitutional claims that might otherwise be asserted under the Speech or Religion Clauses.

The district court tried to buttress the Fearless Fund's First Amendment defense by citing court rulings that uphold First Amendment carveouts to anti-discrimination laws *outside* the context of race. R.115 at 13–18 (citing *303 Creative*, 600 U.S. 570, and *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247 (11th Cir. 2021)). But none of those rulings hold or even suggest that the First Amendment might protect acts of *racial* discrimination. *303 Creative* holds only that anti-discrimination laws cannot be used to force

a website designer who opposes homosexuality to create websites that celebrate same-sex marriage. *See 303 Creative*, 600 U.S. at 589–90. *303 Creative* did not hold that the First Amendment allows website designers who dislike blacks and other racial minorities to communicate that message by offering their services exclusively to white customers—and there is zero chance that the Supreme Court would accept a First Amendment argument along those lines. *Coral Ridge*, a decision from this Court, holds only that the First Amendment allows Amazon to withhold charitable donations from organizations that the Southern Poverty Law Center designates as "hate groups"—even if that practice violates Title II by discriminating on the basis of religion in a place of public accommodation. *See Coral Ridge*, 6 F.4th at 1254–56. There is no indication or suggestion in *Coral Ridge* that Amazon would have prevailed if it categorically excluded blacks (or whites or other racial groups) from receiving charitable contributions under its AmazonSmile program, even if Amazon wanted to express a message by limiting donations from AmazonSmile to its preferred racial groups. And it is hard to imagine a court recognizing a First Amendment prerogative of that sort given the Supreme Court's repeated recognition of a compelling governmental interest in suppressing racial discrimination. *See Hobby Lobby*, 573 U.S. at 773; *Bob Jones*, 461 U.S. at 604.

The district court claimed that "the holdings of *303 Creative* and *Runyon* are difficult to square." R.115 at 16. But there is no difficulty at all in reconciling those cases. *Runyon* involved *racial* discrimination, and the Supreme

Court has repeatedly (and without exception) rejected First Amendment challenges to laws that outlaw discrimination on account of race. The Court has also recognized a "compelling" governmental interest in combatting racial discrimination that trumps any speech or religious-freedom rights that might be asserted by the would-be discriminator. *See Hobby Lobby*, 573 U.S. at 773; *Bob Jones*, 461 U.S. at 604. *303 Creative*, on the other hand, did not involve racial discrimination but discrimination against homosexuals. The Supreme Court has never recognized a "compelling" interest in eradicating discrimination on account of sexual orientation or gender identity, and if there were such a "compelling" interest then *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), would come out the other way. *See id.* (refusing to find that the state's interest in preventing discrimination against homosexuals was sufficiently "compelling" to override associational freedoms under the First Amendment).

The only case involving *racial* discrimination that the district court relied upon is *Claybrooks v. American Broadcasting Companies Inc.*, 898 F. Supp. 2d 986 (M.D. Tenn. 2012), which held that the First Amendment allowed ABC to engage in racial discrimination when selecting contestants for reality-television shows such as *The Bachelor* and *The Bachelorette*. *See id.* at 996–1000. But a district-court opinion has no precedential value unless this Court, in its independent judgment, finds its reasoning persuasive. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district,

the same judicial district, or even upon the same judge in a different case."
(quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d], at 134–
26 (3d ed. 2011))). The holding and rationale of *Claybrooks* are dubious and
should not be endorsed or followed by this Court.

*Claybrooks* holds that a producer's "casting decisions" are categorically
shielded from lawsuits under the First Amendment because they are "a nec-
essary component of any entertainment show's creative content." *Id.* at 999;
*see also id.* at 999 (casting decisions "are part and parcel of the Shows' crea-
tive content."). But it is hard to imagine that the Supreme Court would allow
a television network to announce that it will consider only white contestants
for reality-TV shows such as *The Bachelor* and *The Bachelorette. See Master-
piece Cakeshop v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2017) (re-
jecting the idea that the First Amendment might allow merchants or vendors
to "put up signs saying 'no goods or services will be sold if they will be used
for gay marriages,'" because that practice "would impose a serious stigma on
gay persons."). ABC did not categorically exclude blacks or other minorities
from these shows; the plaintiffs' grievance was only that "the vast majority
of 'suitors' for the Bachelor and Bachelorette have been white, and the few
non-white contestants tend to be eliminated early on in each show." *Id.* at
989. Yet the district court's holding in *Claybrooks* appears to give producers
carte blanche to engage in racially discriminatory "casting decisions," even
when an actor's race has little or no relevance to the casting decision and

even when the producer is categorically excluding rather than merely disfavoring members of certain races for certain parts.

This Court should not adopt the holding of *Claybrooks*, which was broader than necessary to resolve that case and likely wrong given that the ruling was made at the motion-to-dismiss stage, where all of the plaintiffs' factual allegations must be assumed true. *See Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true."). Difficult situations will arise when a producer is casting an actor for a part that can *only* be played by members of a certain race, such as historical characters or characters from previously written works whose race is obvious and widely known. *See Claybrooks*, 898 F. Supp. 2d at 998 ("Would applying antidiscrimination laws require a playwright to consider white actors to play Othello [or] black actors to play Macbeth . . . ?"). But a better way to deal with those situations is to say that a producer complies with 42 U.S.C. § 1981—and confers the "same right" to make and enforce contracts "as is enjoyed by white citizens"—if he allows members of all races the same opportunity to compete for parts when race has no relevance to the casting decision. And if a producer determines that a certain part requires (or favors) an actor of a particular race, then the producer complies with 42 U.S.C. § 1981 if he makes the decision in good faith and without the desire or motivation to harm any racial group. This may not be the most literal reading of the phrase "same right," but it is the most sensible interpretation for situa-

tions of this sort, and it avoids the need to trundle out the First Amendment and decide whether and to what extent the Constitution mandates exceptions to laws against racial discrimination when applied to the production of movies, television shows, and plays. *See American Foreign Service Ass'n v. Garfinkel*, 490 U.S. 153, 161 (1989) (per curiam) ("[C]ourts should be extremely careful not to issue unnecessary constitutional rulings"); *Parker v. County of Los Angeles*, 338 U.S. 327, 333 (1949) ("The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity.").

## II. Judge Wilson's Interpretation Of 42 U.S.C. § 1981 Is Textually Unsupportable

Judge Wilson dissented from the motions panel's decision to award an injunction pending appeal. *See American Alliance for Equal Rights v. Fearless Fund Management, LLC*, 2023 WL 6520763, at *1–*3 (11th Cir. Sept. 30) (Wilson, J., dissenting). He did so because he concluded that 42 U.S.C. § 1981 protects only members of racial minorities and not white people. *See id.* at *2–*3 (Wilson, J., dissenting). This argument is incompatible with the text of the statute, and even if this interpretation of 42 U.S.C. § 1981 were textually permissible it should be rejected under the canon of constitutional avoidance.

42 U.S.C. § 1981 provides, in relevant part:

### (a) Statement of Equal Rights

> All persons within the jurisdiction of the United States shall have *the same right* in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . .

> **(b) "Make and enforce contracts" defined**
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

> **(c) Protection against impairment**
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981 (emphasis added). Some have suggested that the text of 42 U.S.C. § 1981(a) could be read to allow racial minorities to have greater contractual rights than those accorded to "white citizens,"[4] but statutory language will not bear that construction. It requires that "all persons" within the jurisdiction of the United States have "the same right" to make and enforce contracts as is enjoyed by white citizens. Not "the same or greater right." Not "at least the same right." The "same right." "Same" means identical. If white citizens are categorically excluded from an opportunity to "make" or "enforce" a contract, then no other person may be given that opportunity without violating the statutory command of 42 U.S.C. § 1981. And the Supreme Court so held in *McDonald v. Santa Fe Trail Transportation Co.*,

---

4.    *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 286 (1976) ("[R]espondents . . . argue that by operation of the phrase 'as is enjoyed by white citizens,' § 1981 unambiguously limits itself to the protection of nonwhite persons against racial discrimination".

427 U.S. 273 (1976). *See id.* at 295 ("[T]he Act was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts *against, or in favor of, any race.*").

Even if it were possible to interpret the text of 42 U.S.C. § 1981 in the manner that Judge Wilson suggests, the canon of constitutional avoidance would require this Court to reject his proposed construction of the statute because it would raise serious equal-protection concerns. *See Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 514 (1990) ("[W]here fairly possible, courts should construe a statute to avoid a danger of unconstitutionality." (citation and internal quotation marks omitted)); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."). An anti-discrimination statute that protects only minorities and not whites from racial discrimination would deny the equal protection of the laws—or at the very least would raise a serious constitutional question under the Fifth and Fourteenth Amendments. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) (interpreting the Fifth Amendment's Due Process Clause to encompass the equal-protection guarantee that binds the states under the Fourteenth Amendment). That is yet another reason to reject Judge Wilson's interpretation of 42 U.S.C. § 1981, if the statutory text and the holding of *McDonald* weren't enough to reject it already.

Finally, the non-black minorities who belong to the American Alliance for Equal Rights are not suffering a violation of their rights under 42 U.S.C. § 1981 if they are being treated the same as the "white citizens" who are also being excluded from the Strivers Grant Contest. *See* Appellants' Br. at 24 (complaining that "Fearless' program also discriminates against racial minorities, including Hispanics, Arabs, Native Americans, and Asians."). 42 U.S.C. § 1981 is implicated only when a "person" is given different contractual rights than those available to "white citizens"; it does not establish an categorical ban on racial discrimination in contracting.

Of course, once Fearless Fund opens its Strivers Grant Contest to white citizens, whether on its own initiative or in response to a court order, then the non-black minority members of the American Alliance for Equal Rights will be automatically entitled to enjoy the "same rights" to contract that white citizens receive. But 42 U.S.C. § 1981 does not outlaw discrimination among racial-minority groups; it is violated only when a "person" is being treated differently from a "white citizen." Hispanics, Arabs, Native Americans, and Asians are in the same boat as the "white citizens" whom the Fearless Fund is excluding from its Strivers Grant Contest, and they will not have a claim under 42 U.S.C. § 1981 until they are treated differently from the "white citizens" who establish the relevant statutory baseline.

## Conclusion

The order denying the plaintiff's motion for preliminary injunction should be reversed, and the case remanded with instructions to enter the preliminary injunction sought by the American Alliance for Equal Rights.

Respectfully submitted.

 /s/ Jonathan F. Mitchell

| | |
|---|---|
| Gene P. Hamilton | Jonathan F. Mitchell |
| Vice-President and General Counsel | Mitchell Law PLLC |
| America First Legal Foundation | 111 Congress Avenue, Suite 400 |
| 611 Pennsylvania Avenue SE #231 | Austin, Texas 78701 |
| Washington, DC 20003 | (512) 686-3940 (phone) |
| (202) 964-3721 (phone) | (512) 686-3941 (fax) |
| gene.hamilton@aflegal.org | jonathan@mitchell.law |
| | |
| Dated: November 13, 2023 | *Counsel for Amicus Curiae* |

## Certificate Of Compliance

with type-volume limitation, typeface requirements,
and type-style requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 3,604 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.


                                        /s/ Jonathan F. Mitchell
                                        Jonathan F. Mitchell
Dated: November 13, 2023                *Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that on November 13, 2023, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Eleventh Circuit and served through CM/ECF upon all counsel of record in this case.


/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*