# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

AMERICAN ALLIANCE FOR EQUAL RIGHTS,
*Plaintiff-Appellant,*

v.

FEARLESS FUND MANAGEMENT, LLC, et al.,
*Defendants-Appellees.*

Appeal from the U.S. District Court for the
Northern District of Georgia, No. 1:23-cv-3424 (Thrash, J.)

# REPLY BRIEF OF APPELLANT

William Fawcett, Sr.
Chambliss & Fawcett, LLP
2900 Paces Ferry Road, Ste. B-101
Atlanta, GA 30339
(770) 434-0310
wfawcett@cf-firm.com

Thomas R. McCarthy
Cameron T. Norris
Gilbert C. Dickey
R. Gabriel Anderson
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
gilbert@consovoymccarthy.com
gabe@consovoymccarthy.com

*Counsel for the American Alliance for Equal Rights*

# CERTIFICATE OF INTERESTED PERSONS

Per Rule 26.1 and Circuit Rule 26.1, Appellant certifies that the prior certificates

of interested persons filed by the parties and amici are accurate.

Dated: January 3, 2023     */s/ Cameron T. Norris*
            Counsel for the American Alliance
            for Equal Rights

# TABLE OF CONTENTS

Certificate of Interested Persons..............................................................................1

Table of Citations ................................................................................................ii

Introduction & Summary of Argument...............................................................1

Argument ...............................................................................................................2

    I.     Fearless' contest likely violates §1981...................................................3

        A.     The Alliance has standing. .........................................................3

        B.     Fearless' contest is not valid affirmative action......................8

        C.     Fearless' contest is a contract. ............................................... 13

        D.     Section 1981 does not violate the First Amendment. ......................... 16

    II.    The remaining factors favor the Alliance......................................... 21

Conclusion........................................................................................................... 25

Certificate of Compliance ................................................................................. 26

Certificate of Service ......................................................................................... 26

# TABLE OF CITATIONS

*primary authority

## Cases

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023) ...................................................................... 17, 18

*ACEP v. BCBS of Ga.,*
   833 F.App'x 235 (11th Cir. 2020) .................................................. 4

*Adarand Constructors, Inc. v. Peña,*
   515 U.S. 200 (1995) ........................................................................ 12

*Advocates for Highway & Auto Safety v. FMCSA,*
   41 F.4th 586 (D.C. Cir. 2022) ........................................................ 3

*AFP v. Bonta,*
   141 S.Ct. 2373 (2021) ..................................................................... 18

*Bass v. Bd. of Cnty. Comm'rs,*
   256 F.3d 1095 (11th Cir. 2001) ..................................................... 9

*Benning v. Georgia,*
   391 F.3d 1299 (11th Cir. 2004) ..................................................... 21

*Bob Jones Univ. v. United States,*
   461 U.S. 574 (1983) ........................................................................ 1

*Brown v. Am. Honda Motor Co.,*
   939 F.2d 946 (11th Cir. 1991) ....................................................... 11

*Buckley v. Valeo,*
   424 U.S. 1 (1976) ............................................................................ 18

*Burns v. Palm Beach,*
   999 F.3d 1317 (11th Cir. 2021) ..................................................... 19

*Carney v. Adams,*
   592 U.S. 53 (2020) .......................................................................... 7

*Carson v. Am. Brands,*
   450 U.S. 79 (1981) .......................................................................... 24

*Clark v. Martinez,*
   543 U.S. 371 (2005) ........................................................................ 12

*Claybrooks v. ABC,*
   898 F. Supp. 2d 986 (M.D. Tenn. 2012) ....................................... 18

*Cobell v. Norton,*
    391 F.3d 251 (D.C. Cir. 2004) ...................................................................6

*Collins v. Seaboard Coastline R. Co.,*
    681 F.2d 1333 (11th Cir. 1982) ............................................................ 24

*Compact Van Equip. Co. v. Leggett & Platt, Inc.,*
    566 F.2d 952 (5th Cir. 1978) ................................................................ 23

*Conkle v. Potter,*
    352 F.3d 1333 (10th Cir. 2003) ............................................................ 24

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.,*
    6 F.4th 1247 (11th Cir. 2021) .............................................................. 18

*Cornelius v. NAACP LDF,*
    473 U.S. 788 (1985) ............................................................................. 18

*Crawford v. Uber Techs.,*
    2021 WL 3810259 (N.D. Cal. Aug. 26) ...................................................7

*Cunico v. Pueblo School Dist. No. 60,*
    917 F.2d 431 (10th Cir. 1990) .............................................................. 14

*Doe v. Kamehameha Schools,*
    470 F.3d 827 (9th Cir. 2006) (en banc) ................................................ 10

*Doe v. Stincer,*
    175 F.3d 879 (11th Cir. 1999) ................................................................4

*Domino's Pizza v. McDonald,*
    546 U.S. 470 (2006) ............................................................................. 14

*Eng'g Contractors Ass'n v. Metro. Dade,*
    122 F.3d 895 (11th Cir. 1997) ................................................................8

*Faraca v. Clements,*
    506 F.2d 956 (5th Cir. 1975) ................................................................ 14

*Ferrill v. Parker Grp.,*
    168 F.3d 468 (11th Cir. 1999) ......................................................... 9, 11

*Ft. Lauderdale Food Not Bombs v. Ft. Lauderdale (Food Not Bombs I),*
    901 F.3d 1235 (11th Cir. 2018) ....................................................... 17, 20

*Ft. Lauderdale Food Not Bombs v. Ft. Lauderdale (Food Not Bombs II),*
    11 F.4th 1266 (11th Cir. 2021) ................................................... 19, 20, 21

*FW/PBS v. Dallas,*
    493 U.S. 215 (1990) ..............................................................................4

*Gates v. Collier*,
501 F.2d 1291 (5th Cir. 1974) ....................................................................... 15

*Golden v. Columbus*,
404 F.3d 950 (6th Cir. 2005) ........................................................................ 16

*Gratz v. Bollinger*,
539 U.S. 244 (2003) ..................................................................................... 12

*Green v. Miss USA, LLC*,
52 F.4th 773 (9th Cir. 2022) ......................................................................... 18

*Gresham v. Windrush Partners*,
730 F.2d 1417 (11th Cir. 1984) ..................................................................... 23

*Hammon v. Barry*,
826 F.2d 73 (D.C. Cir. 1987) .................................................................... 10, 11

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995) ..................................................................................... 18

*In re Birmingham*,
20 F.3d 1525 (11th Cir. 1994) ................................................................... 10, 11

*Int'l Bhd. of Teamsters v. United States*,
431 U.S. 324 (1977) ........................................................................................ 7

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ..................................................................................... 13

*Johnson v. Ry. Express Agency, Inc.*,
421 U.S. 454 (1975) ..................................................................................... 22

*Johnson v. Transportation Agency*,
480 U.S. 616 (1987) ................................................................................... 9, 10

*Katzenbach v. McClung*,
379 U.S. 294 (1964) ..................................................................................... 13

*Larsen v. Citibank FSB*,
871 F.3d 1295 (11th Cir. 2017) ..................................................................... 15

*Larsen v. U.S. Navy*,
486 F. Supp. 2d 11 (D.D.C. 2007) .................................................................... 6

*Lilly v. City of Beckley*,
797 F.2d 191 (4th Cir. 1986) ........................................................................... 9

*MacGinnitie v. Hobbs Grp.*,
420 F.3d 1234 (11th Cir. 2005) ..................................................................... 24

*Marszalek v. Kelly*,
  2021 WL 2350913 (N.D. Ill. June 9) ............................................. 6

*McCabe v. Sharett*,
  12 F.3d 1558 (11th Cir. 1994) ..................................................... 20

*McDonald v. Santa Fe Trail Transp. Co.*,
  427 U.S. 273 (1976) ............................................................. 12, 21

*McGehee v. Neb. Dep't of Corr. Servs.*,
  2019 WL 1227928 (D. Neb. Mar. 15) ........................................... 6

*Ne. Fla. Chapter of AGC of Am. v. Jacksonville*,
  508 U.S. 656 (1993) ................................................................ 7, 22

*Ne. Fla. Chapter of AGC of Am. v. Jacksonville*,
  896 F.2d 1283 (11th Cir. 1990) .................................................. 22

*Ne. Fla. Chapter of AGC of Am. v. Jacksonville*,
  951 F.2d 1217 (11th Cir. 1992) .................................................. 22

*R.A.V. v. St. Paul*,
  505 U.S. 377 (1992) .................................................................. 16

*Rich v. Sec'y, Fla. DOC*,
  716 F.3d 525 (11th Cir. 2013) .................................................... 16

*Rivers v. Roadway Exp.*,
  511 U.S. 298 (1994) .................................................................. 13

*Rumsfeld v. FAIR*,
  547 U.S. 47 (2006) ................................................. 16, 17, 18, 19

*Runyon v. McCrary*,
  427 U.S. 160 (1976) ........................................................ 14, 17, 20

*Schaumburg v. Citizens for a Better Environment*,
  444 U.S. 620 (1980) .................................................................. 18

*SFFA v. Harvard*,
  600 U.S. 181 (2023) ......................................... 8, 12, 13, 21

*SFFA v. USNA*,
  2023 WL 8806668 (D. Md. Dec. 20) ...................................... 3, 4

*Shea v. Kerry*,
  796 F.3d 42 (D.C. Cir. 2015) ..................................................... 11

*Siegel v. LePore*,
  234 F.3d 1163 (11th Cir. 2020) (en banc) ................................. 22

*Speech First v. Cartwright,*
  32 F.4th 1110 (11th Cir. 2022) ...............................................................4

*Sporhase v. Neb. ex rel. Douglas,*
  458 U.S. 941 (1982) ...............................................................................6

*Springer v. IRS,*
  1997 WL 732526 (E.D. Cal. Sept. 12) ....................................................6

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) ...............................................................................4

*Thomas v. DOE,*
  719 F.2d 342 (10th Cir. 1983) ................................................................5

*Tingley v. Ferguson,*
  57 F.4th 1072 (9th Cir. 2023) ............................................................... 16

*Trinity Lutheran v. Comer,*
  582 U.S. 449 (2017) ............................................................................. 15

*UAW v. Brock,*
  477 U.S. 274 (1986) ........................................................................ 8, 23

*Ultima Servs. Corp. v. USDA,*
  2023 WL 4633481 (E.D. Tenn. July 19) ................................................ 25

*United States v. Askins & Miller Orthopaedics,*
  924 F.3d 1348 (11th Cir. 2019) ...................................................... 16, 23

*United States v. Brennan,*
  650 F.3d 65 (2d Cir. 2011) ................................................................ 8, 9

*United States v. Kaley,*
  579 F.3d 1246 (11th Cir. 2009) ..............................................................4

*United States v. Vasquez,*
  899 F.3d 363 (5th Cir. 2018) ............................................................... 21

*United Steelworkers v. Weber,*
  443 U.S. 193 (1979) ......................................................................... 9, 10

*Wisconsin v. Mitchell,*
  508 U.S. 476 (1993) .................................................................16, 17, 20

*Workman v. UPS,*
  234 F.3d 998 (7th Cir. 2000) ..................................................................5

*Wreal, LLC v. Amazon.com, Inc.,*
  840 F.3d 1244 (11th Cir. 2016) ............................................................ 24

## Statutes

15 U.S.C. §631 ....................................................................................... 25

28 U.S.C. §1746 ........................................................................................5

42 U.S.C. §1981 ..................................................................................... 13

## Other Authorities

29 C.F.R. §1608 ........................................................................................9

*Restatement of the Law, Consumer Contracts* (2017) ................................................ 15

# INTRODUCTION & SUMMARY OF ARGUMENT

Fearless manages to both understate and overstate what this case is about. Fearless is eerily quiet about what its position means for §1981. But it drastically overstates the consequences of continuing the injunction against its blatantly illegal program.

The Alliance opened its brief by hypothesizing a business that is like Fearless in every way, except it contracts only with whites. Blue-Br.1. Fearless ignores this hypothetical entirely, so it must agree that its position would give white supremacists a First Amendment right to discriminate. A racist company's "choice to exclude [blacks]" would be no less "inherently 'expressive'" than Fearless'. Red-Br.26. And though Fearless stresses the unique "importance of race to [its] message," Red-Br.28, segregationists would give it a run for its money on that score. So much for vindicating "§1981's original purpose." Red-Br.67.

While this case is important for §1981, it has no implications for true "charity." Red-Br.22-23. Fearless prefers that rhetorical framing (*purely* rhetorical, since Fearless' venture-capital fund engages in noncharitable, race-based contracting every day, Blue-Br.3-6). Section 1981, however, does not stop anyone from giving away their money for free. That statute applies because Fearless is running a "SKILL-BASED CONTEST" with rules that "ARE A CONTRACT," forcing entrants to create submissions and assign away rights. Fearless doesn't point to other nonprofits doing anything similar. Any 501(c)(3) that refused to contract with certain races would have problems with the IRS. *See Bob Jones Univ. v. United States*, 461 U.S. 574, 594-95 (1983).

1

Nor does this case threaten efforts to address "economic disadvantages faced by *Black women*." Red-Br.28. Fearless likes that rhetorical framing too (again, purely rhetorical, since Fearless also runs race-based programs that *exclude* blacks, Blue-Br.4). But Fearless remains free to "rais[e] awareness" about race and say whatever it wants. Red-Br.28. And there's no law against running contests for economically disadvantaged businesses, or even businesses who couldn't get funding due to racial discrimination. What Fearless cannot do is refuse to contract with whites, Arabs, Asians, Hispanics, and Native Americans based on their skin color—no matter how much public-relations credit this sort of racial essentialism might earn Mastercard in some circles.

This Court should reverse.

# ARGUMENT

Fearless does not defend the motions-panel dissent. Though it asks this Court to affirm for three "additional reasons," none are the argument that §1981 allows discrimination against whites. Red-Br.33-34. Fearless wisely concedes that "§1981 protects persons of all races," Red-Br.51, thus waiving the point, *see Bilyeu v. Morgan Stanley LTDP*, 683 F.3d 1083, 1090 (9th Cir. 2012).

As for the arguments it does make, Fearless mostly fights the district court. Per Fearless, it should have rejected the Alliance's standing. It should have ruled that, under Fearless' amended-then-repealed-then-resurrected rules, the contest is not a contract. It should have upheld its refusal to contract with any other race as "affirmative action."

And it was right about the First Amendment. All four arguments fail. Because Fearless was about to engage in illegal racial discrimination before this Court stepped in to protect the status quo, the other preliminary-injunction factors favor the Alliance too.

## I.    Fearless' contest likely violates §1981.

### A.    The Alliance has standing.

Associations do not lose standing simply because their members are anonymous. Fearless concedes that the D.C. Circuit rejected this argument in *Highway Safety*. Red-Br.38. Far from an outlier, the D.C. Circuit followed recent cases from the Fourth and Ninth Circuits. *See Advocates for Highway & Auto Safety v. FMCSA*, 41 F.4th 586, 594 & n.2 (D.C. Cir. 2022). And Fearless' misreading of *Summers* has been rejected by a string of recent district-court cases, Blue-Br.29-31, including another one two weeks ago, *see SFFA v. USNA*, 2023 WL 8806668, at *9 (D. Md. Dec. 20).

Fearless doesn't cite a single case where an association even used pseudonyms. As explained, the associations in its cases lacked standing because they identified no specific member who currently had standing. Blue-Br.26-27. Fearless doesn't argue that the Alliance made that error. And Fearless admits that its argument plucks the word "naming" from *Summers* and pretends that it resolves an issue that wasn't before the Court. Red-Br.36-38. Fearless never explains how this reading of *Summers* follows the Supreme Court's instructions for reading precedent. Blue-Br.28. And Fearless never explains how this reading could overrule *Doe v. Stincer*, a binding precedent where this

Court held that associations need not "specifically name" their members. 175 F.3d 879, 884 (11th Cir. 1999); *see United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (to overrule panel precedent, Supreme Court decision "'must be clearly on point'").

It is Fearless' position, not the Alliance's, that trades "'substance'" for "'shadows.'" Red-Br.40. The Alliance challenged Fearless to explain "what standing argument it didn't make, but could have made, if it only knew Owners A-C's first and last names." Blue-Br.30. Fearless' silence is telling. And its key cases turn, not on the lack of first and last names, but on the lack of facts needed to prove the members' standing. None of *Summers*' reasoning would have made sense if those associations had identified a pseudonymous member who would imminently visit a forest that would soon be harmed by a project he couldn't comment on. *See* 555 U.S. 488, 494, 497-500 (2009). Same for *FW/PBS v. Dallas*, had the city submitted a timely affidavit stating that *the plaintiffs* were "the individuals whose licenses were revoked." 493 U.S. 215, 235 (1990).

Even if there were something that the owners' real names would help Fearless "assess," Red-Br.40, Fearless is free to request that information later in "discovery," *USNA*, 2023 WL 8806668, at *9 n.10; *accord ACEP v. BCBS of Ga.*, 833 F.App'x 235, 241 n.8 (11th Cir. 2020) (names never needed before "'discovery'"). Fearless never sought discovery below. And the district court didn't need Owner A-C's legal names to assess whether, at the preliminary-injunction stage, the Alliance likely has standing. *USNA*, 2023 WL 8806668, at *9; *e.g.*, *Speech First v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022) (assessing and finding standing on a similar record).

Sensing its weakness on pseudonymity, Fearless raises a brand-new challenge to standing: that the Alliance's members are not "able and ready" to apply. Red-Br.13, 41-48. Fearless did not raise this argument below, *see* R.59 at 8-13, and cannot raise it now. Though standing can't be forfeited, the facts underlying standing can be. *Workman v. UPS*, 234 F.3d 998, 999-1000 (7th Cir. 2000). The Alliance submitted proof that its members were able and ready, including declarations from its members and president. Fearless never challenged that fact. It never objected to the Alliance's proof. And the district court accepted it, finding it "clearly avers that three members … are injured by the Contest." R.115 at 7. Fearless never explains how the district court, by not considering objections that Fearless never raised, clearly erred or abused its discretion.

Fearless quibbles that the Blum declaration says "at least two" members are ready and able, not "three." Red-Br.47. Blum's declaration plainly identifies three members; *see* R.2-9 ¶¶6-8; the complaint explains that all three are "ready and able," *see* R.1 ¶¶32, 44, 56; and all three swore to that fact in their declarations, *see* R.2-10 ¶3; R.2-11 ¶3; R.11-1 ¶3. The district court was not confused, *see* R.115 at 7, and Fearless' feigned confusion on appeal is silly.

Fearless says the member declarations violate 28 U.S.C. §1746 because they're anonymous. Red-Br.43-44. But that argument is forfeited because Fearless never briefed it below (hence why the district court never ruled on it). *Thomas v. DOE*, 719 F.2d 342, 345 n.3 (10th Cir. 1983). Forfeiture is especially fatal at the preliminary-in-

junction stage, where anonymity could go only to the declarations' weight. *Cobell v. Norton*, 391 F.3d 251, 260-61 (D.C. Cir. 2004). Fearless' argument is also irrelevant because the same evidence appears in Blum's declaration, which is signed, sworn, and based on his personal knowledge. *Marszalek v. Kelly*, 2021 WL 2350913, at *4 (N.D. Ill. June 9); R.2-9 ¶¶6-8. And Fearless is wrong anyway. Anonymous declarations do not violate §1746 when the declarant can be identified; and here, Owners A-C could be identified by Blum and the Alliance's lawyers (in camera). *Springer v. IRS*, 1997 WL 732526, at *5 (E.D. Cal. Sept. 12); *McGehee v. Neb. Dep't of Corr. Servs.*, 2019 WL 1227928, at *2 (D. Neb. Mar. 15), *vacated for subsequent mootness*, 987 F.3d 785 (8th Cir. 2021).

Even if Fearless had challenged ability-and-readiness below, the Alliance's evidence was more than sufficient. Each member stated they were "ready and able," *e.g.*, R.11-1 ¶3—not bare legal conclusions, but "'direct testimonial evidence' of their intent." *Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 21 & n.3 (D.D.C. 2007). The members also identified the precise opportunity they were able and ready for: the contest's "fourth promotion period." *E.g.*, R.2-10 ¶3. And they explained why they satisfy each of the contest's objective minimum requirements, aside from the racial one. *E.g.*, R.2-11 ¶¶5-12. They even specified how they would spend the money. *E.g.*, R.2-10 ¶4.

Fearless' belated challenges are unpersuasive. Fearless complains that Owners A-C never applied for the contest. Red-Br.41-42. That's irrelevant, since Fearless has always flatly excluded them for being the wrong race. *See Sporhase v. Neb. ex rel. Douglas*, 458 U.S. 941, 945 n.2 (1982); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365

(1977). Fearless also speculates that Owners A-C might not have won, Red-Br.45-46—either because the judges wouldn't score them highly, or because Fearless, in its "discretion," would disqualify them for messages that are "political" or not "positive," R.2-3 at 5-7. Fearless submitted no evidence about how these criteria are applied. And it concedes that Owners A-C "meet the baseline eligibility requirements" for its contest. Red-Br.45. Because their standing turns not on losing the prize, but on being unable to compete on a racially equal basis, it's irrelevant whether Fearless would have rejected them for some subjective reason. *Ne. Fla. Chapter of AGC of Am. v. Jacksonville*, 508 U.S. 656, 665-66 (1993).

This case is nothing like *Carney v. Adams*, a decision that Fearless never mentioned below. *Carney* was decided at summary judgment. 592 U.S. 53, 66 (2020). Based on the evidence unearthed in discovery, the Court rejected the plaintiff's testimony that he was "able and ready" to apply as disingenuous. *Id.* at 61-66; *see Crawford v. Uber Techs.*, 2021 WL 3810259, at *3 (N.D. Cal. Aug. 26) (explaining *Carney*). That plaintiff could've applied for 14 prior judgeships but didn't; he sued because he got the idea from a law-review article; he abruptly changed his lifelong party registration; and he wasn't aware of any upcoming vacancies. 592 U.S. at 61-64. Here, however, Fearless didn't even challenge ability and readiness, let alone disprove it with discovery. Owners A-C explained why they wanted to win this valuable prize; they sued over a specific period that had just opened; their race made them ineligible to apply before; and no "contrary evidence" undermined their testimony. *Id.* at 64.

That Owners A-C "'support'" this lawsuit does not undermine their testimony. Red-Br.48. That support is a hallmark of associational standing. *See SFFA v. Harvard*, 600 U.S. 181, 201 (2023) (crediting similar statements). "[T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *UAW v. Brock*, 477 U.S. 274, 290 (1986). If opposing racial discrimination is "ideological," Red-Br.48, the Alliance is guilty as charged; but that mission makes it an *ideal* entity to represent the individual victims of Fearless' discrimination. *UAW*, 477 U.S. at 289-90. The district court found that the Alliance represents Owners A-C "'in good faith.'" R.115 at 8. Fearless suggests no clear error.

## B.    Fearless' contest is not valid affirmative action.

Fearless isn't doing affirmative action. To determine whether a program is "eligible" for this defense, courts must first ask whether the program "constitutes an affirmative action plan at all." *United States v. Brennan*, 650 F.3d 65, 97 (2d Cir. 2011). The district court found that Fearless' contest "does not appear to be an affirmative action program," R.115 at 19-20, and Fearless never explains how that finding was "clear error," *Eng'g Contractors Ass'n v. Metro. Dade*, 122 F.3d 895, 903-04 (11th Cir. 1997). The district court didn't rule that the affirmative-action defense is limited, as a matter of law, to employment. Red-Br.55-56. It simply noted that Fearless has "no authority" applying this defense to anything remotely like its contest. R.115 at 20.

The district court was right. An affirmative-action plan must be formal and deliberate; it can't be "'hypothesized or invented *post hoc* in response to litigation.'" *Brennan*, 650 F.3d at 106; *e.g.*, *Ferrill v. Parker Grp.*, 168 F.3d 468, 474 (11th Cir. 1999). Yet Fearless has no preexisting, formal plan. And its contest has none of the "elements" of affirmative action. 29 C.F.R. §1608.4. Fearless did no "self analysis" to determine whether its existing practices disadvantage blacks, §1608.4(a)-(b); its contest is open *only* to blacks. Nor does Fearless have "goals," "timetables," or other metrics for determining when the relevant "problems" will be solved and the affirmative action can end. §1608.4(c); *see Lilly v. City of Beckley*, 797 F.2d 191, 195 (4th Cir. 1986). Even if the relevant problem were a nationwide lack of venture capital for black businesses, Red-Br.53, a policy that awards one black business $20,000 doesn't pretend to be a "tailored" solution. §1608.4(c)(2); *see Brennan*, 650 F.3d at 105.

Fearless' contest wouldn't be "valid" affirmative action anyway. *Bass v. Bd. of Cnty. Comm'rs*, 256 F.3d 1095, 1111 n.7 (11th Cir. 2001). Fearless asks this Court to apply the *Weber/Johnson* test from Title VII, which requires affirmative-action plans to correct a "manifest racial imbalance" and not "unnecessarily trammel" or "absolute[ly] bar" anyone. *Johnson v. Transportation Agency*, 480 U.S. 616, 631-38 (1987) (applying *United Steelworkers v. Weber*, 443 U.S. 193 (1979)). Fearless badly fails its own test.

Most obviously, Fearless absolutely bars nonblacks. Nonblacks are banned from the contest (and whites are banned from *all* of Fearless' programs, Blue-Br.4-5). Contra Fearless, the question is whether nonblacks can participate in *this* program, not "other"

9

ones. Red-Br.54; *e.g.*, *Weber*, 443 U.S. at 208 (asking whether whites could participate "in the program" being challenged); *Johnson*, 480 U.S. at 638 (asking whether men could be promoted under "the Plan" being challenged). A company couldn't hire only Hispanics, for example, and call it affirmative action because non-Hispanics can work at other companies.

Fearless' contest also unnecessarily trammels nonblacks. Its 100% black quota is "arbitrary" because it's not tied to anything and excludes racial minorities who get even less funding. *In re Birmingham*, 20 F.3d 1525, 1542-43 (11th Cir. 1994). And its "rigid" racial exclusion gives nonblacks zero opportunity to compete. *Id.* at 1541-42. This "hard-core, cold-on-the-docks quota" is what *Weber* and *Johnson* distinguished as illegal. *Hammon v. Barry*, 826 F.2d 73, 79 (D.C. Cir. 1987); *see Johnson*, 480 U.S. at 638 (stressing that "[n]o persons are automatically excluded"); *Weber*, 443 U.S. at 208 (stressing that "half" the recipients would be "white"). Even the school in *Doe v. Kamehameha Schools* technically "allow[ed] all students to apply for admission." 470 F.3d 827, 844 (9th Cir. 2006) (en banc).[1]

---

[1] The policy in *Doe* was badly illegal yet upheld as "affirmative action," which is why Fearless likes *Doe* so much. This Court should not follow that 8-7 decision. *Doe*'s analysis is education-specific and bad law after *Harvard*. *See* 470 F.3d at 839-42. The dissent's application of *Weber/Johnson* is more persuasive. *See id.* at 860-68 (Bybee, J., dissenting). And *Doe* was never reviewed because the parties settled on the eve of potential certiorari. *See* Grant, Doe v. Kamehameha Schools*: The Undiscovered Opinion*, 30 U. Haw. L. Rev. 355, 355 (2007-08).

Nor did Fearless base its plan on robust evidence, as the Alliance argued below, *see* R.91 at 19-21. Fearless must prove a manifest imbalance *caused by* racial "discrimination." *Shea v. Kerry*, 796 F.3d 42, 59 (D.C. Cir. 2015). Yet Fearless did not "describe with particularity the findings that led it to conclude that an entire industry had engaged in discrimination before" adopting its racial remedy. *Birmingham*, 20 F.3d at 1539. Fearless' post-hoc expert could offer only heavily caveated speculation. *See* R.59-4 at 20 ¶ 31 ("appeared"), 198 ("might"). And Fearless simply repeats its statistic that black-women-founded companies received 0.13% of the venture capital in 2022. Red-Br.53; R.59-4 at 711. But "[s]tatistics such as these" are "virtually meaningless." *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir. 1991); *accord Hammon*, 826 F.2d at 77. Fearless doesn't say how many black-women-founded companies "applied and failed." *Brown*, 939 F.2d at 952. And it concedes that white-women-founded companies received only 0.53%. R.59-4 at 711. A racial disparity of four-tenths of one percentage point hardly suggests intentional antiblack discrimination throughout the venture-capital industry— the same industry that's here *supporting* Fearless. *See* NCVA-Amicus-Br.

*Weber/Johnson* isn't the right test anyway; Fearless must satisfy strict scrutiny. In *Ferrill*, this Court said "remedy[ing] the effects of past discrimination" is a "defense" under §1981. 168 F.3d at 474. But this Court has never articulated that defense's elements, let alone wholesale imported them from Title VII. *Weber* and *Johnson* do not "control" because they interpret Title VII, not §1981—two statutes that, as Fearless notes, must be kept "'distinct.'" Red-Br.56-57. *Gratz*, by contrast, interprets §1981. Four

years after *Ferrill*, *Gratz* held that the same standard governs the Equal Protection Clause, Title VI, and §1981: strict scrutiny. 539 U.S. 244, 270, 276 n.23 (2003). While *Gratz* involved a state university, any doubt that its equation of these laws governs private defendants was removed by *Harvard*, 600 U.S. at 198 n.2. And the opposite rule would make the same words in §1981 mean one thing for public discriminators and another for private discriminators—a cardinal sin of statutory interpretation, *Clark v. Martinez*, 543 U.S. 371, 382 (2005), as Fearless elsewhere recognizes, Red-Br.55.[2]

Broadening its assault on §1981, Fearless suggests that, if private defendants must satisfy strict scrutiny, then §1981 exceeds Congress's authority under the Thirteenth Amendment. Red-Br.59-60. But it was certainly "rationa[ll]," Red-Br.59, for Congress to conclude that the way to end race-based contracting is to end all race-based contracting, *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295-96 (1976), and that strict scrutiny is the only "way of determining what classifications are … 'remedial' and what classifications are in fact motivated by … simple racial politics," *Adarand Constructors v. Peña*, 515 U.S. 200, 226 (1995). Fearless' faux originalism, Red-Br.31-32, 56, sheds no light because this case involves contracts, not "aid," and there's no evidence its cited

---

[2] Fearless cites *Edmonson v. U.S. Steel*, where the Fifth Circuit issued no opinion but "affirmed on the basis" of the district-court opinion that it attached. 659 F.2d 582, 583 (5th Cir. 1981). Even if that attached opinion were itself circuit precedent, and even if that precedent survived *Gratz*, not even the attached opinion adopts *Weber/Johnson* for §1981. Though it upheld a program for "female employees" under *Weber/Johnson*, the court must have been talking about Title VII, not §1981, because only the former bans discrimination based on sex. *Id.* at 584. The court notably did not apply *Weber/Johnson* when upholding the program for "black employees." *Id.*

examples excluded anyone based on race, as opposed to disadvantage or prior discrimination. *Harvard*, 600 U.S. at 247-51 (Thomas, J., concurring). And nowadays Congress doesn't need the Thirteenth Amendment to regulate Fearless' interstate commerce. *See Katzenbach v. McClung*, 379 U.S. 294 (1964).

Fearless' contest fails strict scrutiny. The district court so ruled, R.115 at 20, and Fearless must agree because it makes no attempt to defend its contest under that standard. Nor could it. Its 100% quota for blacks isn't narrowly tailored, uses race as a "negative," relies on "stereotypes," ignores workable race-neutral alternatives, and more. *Harvard*, 600 U.S. at 206-25; Blue-Br.12. Fearless' inability to satisfy strict scrutiny doesn't mean it needs to "exacerbate existing racial disparities before [it] can start to remedy them." Red-Br.59. It means Fearless needs to use remedies that treat owners as individuals, not as members of racial groups.

## C.    Fearless' contest is a contract.

Contra Fearless, Red-Br.50, "§1981 … covers *all* contracts." *Rivers v. Roadway Exp.*, 511 U.S. 298, 304 (1994). Its text excludes no category of "contracts." 42 U.S.C. §1981. So even if Fearless' constitutional arguments weren't foreclosed by precedent, avoidance could not justify carving out atextual exceptions from this unambiguous text. *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018).

The district court found that Fearless' contest is a contract, R.115 at 11-12, and Fearless challenges that finding on one narrow ground. It agrees that it's running a

"skill-based contest." Red-Br.7. It doesn't deny that contests are contracts. *See* Blue-Br.14-15. It concedes that its rules require contestants to give up important rights. Red-Br.23-24. Fearless instead claims that, despite taking so much from entrants, its rules don't require *Fearless* to do anything. This argument is neither relevant nor right.

Fearless would violate §1981 even if its contest conferred "no enforceable rights on contest entrants." Red-Br.49. Section 1981 "protects the would-be contractor along with those who have already made contracts." *Domino's Pizza v. McDonald*, 546 U.S. 470, 475 (2006); *accord Runyon v. McCrary*, 427 U.S. 160, 166 (1976). Fearless has never denied that it has a contract with contest *winners*. Its supposed discretion to "disqualify entries" is irrelevant once it picks a winner. Red-Br.49. If Fearless later discovered that a winner had violated its rules, for example, it would have a breach-of-contract claim to get its money back. So Fearless is willing to contract with some black people, but no nonblack people. Fearless can no more avoid liability than an employer who announced, "I reserve the right to hire anyone, or no one, and fire them at will, so long as they aren't black." *See Cunico v. Pueblo School Dist. No. 60*, 917 F.2d 431, 442 (10th Cir. 1990); *Faraca v. Clements*, 506 F.2d 956, 958 (5th Cir. 1975).

Even for entrants, Fearless' power to disqualify does not make its contest no longer a contract. Fearless has no unilateral power to disqualify entries under the original rules, "WHICH ARE A CONTRACT." R.2-3 at 3. The grounds for disqualification are spelled out and limited. *See* R.2-3 at 5-7, 13-14. The rules' stray use of the word "gratuitous" does not alter those terms; that unrelated paragraph merely clarifies that

Fearless won't pay nonwinners for their entries. *See* R.2-3 at 8-9. Fearless also concedes that its original rules, at a minimum, contractually require it to arbitrate. Red-Br.42; R.2-3 at 16-17. Even under the new rules, whatever discretion Fearless has couldn't defeat a contract because Fearless has an implied, unwaivable duty to exercise that discretion in good faith. *See Restatement of the Law, Consumer Contracts* §4 DD (2017); *Larsen v. Citibank FSB*, 871 F.3d 1295, 1320-21 (11th Cir. 2017). The Alliance made all these points below, R.91 at 12-13, yet Fearless still offers no developed response.[3]

Fearless should not get credit for its new rules anyway. A transparent attempt to avoid §1981, Fearless adopted those rules only after the Alliance sued, attaching them to its preliminary-injunction opposition. Such changes "do not remove the necessity for injunctive relief, for practices may be reinstated as swiftly as they were suspended." *Gates v. Collier*, 501 F.2d 1291, 1321 (5th Cir. 1974). To prove mootness through voluntary cessation, Fearless must carry the "heavy burden" of proving it's "absolutely clear" that its prior behavior won't recur. *Trinity Lutheran v. Comer*, 582 U.S. 449, 457 n.1 (2017). Fearless cannot carry that burden because—both here and below—it makes no arguments, submits no evidence, and ignores even the concept of voluntary cessation. *Golden*

---

[3] Fearless' overheated rhetoric about the Alliance's "blatant distortion of the record" is thus confusing. Red-Br.22. As the Alliance argues and the district court found, Fearless' contest is a contract because of its nature and rules, regardless whether it's run by the Fearless *Fund* or Fearless *Foundation*. To be clear, though, the rules said the contest was run by the "Fund" when the Alliance sued and when it filed its opening appellate brief; and the "Fund" is still listed on the contest's banner and landing page. *See* perma.cc/8JLY-QT98 (archived Jan. 2, 2024).

*v. Columbus*, 404 F.3d 950, 963 n.10 (6th Cir. 2005). It has no arguments to make because it changed its rules as a litigation strategy, continues to defend race-based contracting, and submits no sworn testimony saying it will never revert to the original rules. *Rich v. Sec'y, Fla. DOC*, 716 F.3d 525, 532 (11th Cir. 2013); *United States v. Askins & Miller Orthopaedics*, 924 F.3d 1348, 1356-57 (11th Cir. 2019). It *did* revert once already, proving how easily Fearless can resume this conduct and why the Alliance needs an injunction.

### D.    Section 1981 does not violate the First Amendment.

The Supreme Court has twice held that §1981 is "a permissible content-neutral regulation of conduct." *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993); *accord R.A.V. v. St. Paul*, 505 U.S. 377, 390 (1992). Contracting is conduct: Though contracts "involve words," they are "legally efficacious acts." *Tingley v. Ferguson*, 57 F.4th 1072, 1081 (9th Cir. 2023) (O'Scannlain, J., dissental). Discrimination is conduct too, even when it's meant to "express a discriminatory idea or philosophy." *R.A.V.*, 505 U.S. at 390. Refusing to contract with someone expresses no message unless the discriminator *adds* speech explaining his actions, and the First Amendment doesn't protect the incidental speech needed to carry out this illegal conduct. *Rumsfeld v. FAIR*, 547 U.S. 47, 61-70 (2006). Fearless' position cannot be reconciled with *Mitchell* or *R.A.V.* Fearless doesn't try, citing neither case.

Fearless' contest is a mine-run violation of §1981, not some superspecial example of expressive conduct. Sometimes Fearless says the racial discrimination itself is expressive. *E.g.*, Red-Br.26 (asserting that the "choice to exclude non-Black women ... is inherently 'expressive'"). But discrimination is "conduct" that "has never been accorded affirmative constitutional protections." *Mitchell*, 508 U.S. at 487; *Runyon*, 427 U.S. at 176. Other times Fearless points to the speech surrounding its contest. *E.g.*, Red-Br.20. But the First Amendment applies when the "conduct itself" conveys a message, not when "the speech that accompanies it" does. *FAIR*, 547 U.S. at 66. As this Court confirmed in *Food Not Bombs I*, "[e]xplanatory speech … cannot create expressive conduct." *Ft. Lauderdale Food Not Bombs v. Ft. Lauderdale*, 901 F.3d 1235, 1244 (11th Cir. 2018).

Fearless does no better when it stresses "the importance of race to [its desired] message." Red-Br.28. Race was no less important to the old-school segregationists, who wanted to "promote the belief that racial segregation is desirable." *Runyon*, 427 U.S. at 176. Like the school in *Runyon*, Fearless can communicate "any ideas" it wants about race. *Id.* But it cannot refuse to contract with certain races. *Id.* Enforcing §1981 wouldn't require Fearless to *say* any message about colorblindness; it would require Fearless to *treat* people equally when it contracts.

Fearless cannot take advantage of the unusual cases that make as-applied exceptions to antidiscrimination laws that would force someone to alter actual speech. In most of those cases, the end-product was pure speech. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 599 (2023) (website was "pure speech"); *Green v. Miss USA, LLC*, 52 F.4th

773, 780 (9th Cir. 2022) ("TV show was "purely expressive""); *Claybrooks v. ABC*, 898 F. Supp. 2d 986, 999 (M.D. Tenn. 2012) (same). A few involved expressive conduct. *E.g.*, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 568 (1995) (parade was "a form of expression"). These cases firmly reject the notion that Fearless has a standalone "right to refuse members of a protected class." *303 Creative*, 600 U.S. at 597. All recognize instead a right not to include "speech" that would change the message. *FAIR*, 547 U.S. at 63. But Fearless does not design websites, produce shows, cast plays, march parades, or anything similar. And the Alliance's members would not be altering any message from Fearless by submitting entries through a private online portal. The only speech that Fearless needs to alter is the "incidental" speech that it uses to carry out its discrimination. *Id.* at 62.

*Coral Ridge* is a good example. This Court did not hold that contracting is expressive. (The opinion's background section references a "Participation Agreement," 6 F.4th 1247, 1250 (2021), but that agreement was not at issue and was never mentioned again.) The "expressive conduct" that would have been altered by the ban on religious discrimination was Amazon's donations to its preferred charities. *Id.* at 1254-56. As Fearless notes, courts have generally treated donations to cause-oriented organizations and campaigns as expressive. *E.g.*, *AFP v. Bonta*, 141 S.Ct. 2373, 2380 (2021); *Cornelius v. NAACP LDF*, 473 U.S. 788, 793 (1985); *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 635 (1980); *Buckley v. Valeo*, 424 U.S. 1, 21 (1976).

Unlike Amazon, Fearless is not donating money to any public campaign. It's not "donating" anything—a word that appears nowhere in the record, only in its lawyers' briefs. Red-Br.20. Fearless runs a skill-based contest that makes entrants vie against each other to win a prize. And far from free, entries come at a cost: creating a submission; assigning your creation and likeness to Fearless for its own fundraising and public relations; waiving your right to a judge and jury; indemnifying and waiving certain rights against Fearless; and more. Blue-Br.3-6, 12. Fearless' money, moreover, goes to "for-profit" businesses like clothing stores and restaurants, not causes or campaigns. *E.g.,* R.2-8. And these winners are chosen based on the strength of their business, not because of any speech, message, or cause. R.2-3 at 10.

Ordinary observers would not see Fearless' contest as a "donation," let alone discern a message about black women (apart from the discrimination itself). They might see a contest that picks winners based on skill. *See FAIR*, 547 U.S. at 66 (conduct not expressive when observer "has no way of knowing" intended message). Or they'd see nothing at all, since most of Fearless' contracting isn't public. *See Burns v. Palm Beach*, 999 F.3d 1317, 1338 (11th Cir. 2021) (conduct expressive only if it "could be viewed"). But the message conveyed when a "donor … aligns with a cause" would not be present. Red-Br.18. Even truly charitable gifts to individuals and businesses "usually do not involve expressive conduct." *Ft. Lauderdale Food Not Bombs v. Ft. Lauderdale* (*Food Not Bombs II*), 11 F.4th 1266, 1292 (11th Cir. 2021). Though the program in *Food Not Bombs* was an exception, that particular food-sharing event fell "on the expressive side of the

ledger" based on five features, including that it was a public event near government buildings and involved conduct with symbolic meaning that "dates back millennia." *Food Not Bombs I*, 901 F.3d at 1242-43. Nothing like here.

As a last-ditch effort, Fearless suggests that its discrimination "implicates" associational rights because it "mentor[s]" winners. Red-Br.17-18. Fearless never advanced an associational argument below, hence why the district court *distinguished Runyon* as a case about "associative conduct." R.115 at 17. Nor would an injunction barring Fearless from discriminatory contracting bar it from mentoring anyone it wants to for free. In any event, *Runyon* already rejected an associational challenge to §1981. 427 U.S. at 176. And Fearless' association with winners isn't protected. The only "formal mentorship" is provided by nonparty "Mastercard," not Fearless. R.36-2.11. And though never mentioned in the rules, a contest winner in 2023 would apparently gain access to an "online community" where she could seek "live and recorded training and mentoring sessions." R.36-2.12. This website does not come close to meeting the standard for constitutionally protected association. *See McCabe v. Sharett*, 12 F.3d 1558, 1563 (11th Cir. 1994) (association must "share the qualities distinctive of family relationships" or have "the purpose of engaging in activities protected by the First Amendment").

Even if Fearless' contest implicated the First Amendment, §1981 would survive intermediate scrutiny. That standard applies because §1981 is "content neutral." *Food Not Bombs II*, 11 F.4th at 1291; *Mitchell*, 508 U.S. at 487. Contra Fearless, Red-Br.30-31, the question is whether §1981's "justification" is "unrelated to the suppression of free

expression." *Food Not Bombs II*, 11 F.4th at 1292. Section 1981's ban on discriminatory contracting "against, or in favor of, any race," *McDonald*, 427 U.S. at 295, perfectly matches a substantial government interest because "racial discrimination is invidious in all contexts," *Harvard*, 600 U.S. at 214. Fearless suggests that allowing discrimination against whites, Arabs, Asians, Hispanics, and Native Americans would somehow further §1981's purposes, Red-Br.31, but it knows that argument is foreclosed by text, history, and precedent, *see* Blue-Br.22-25.

Unable to show that §1981 fails intermediate scrutiny, Fearless argues that the Alliance forfeited this issue below. Red-Br.30. But the correct legal standard cannot be forfeited. *United States v. Vasquez*, 899 F.3d 363, 380 (5th Cir. 2018). Even if it could, *no* party addressed the level of scrutiny below. *See* R.59 at 21-25. And it was Fearless who had "the burden to show that [§1981] is unconstitutional." *Benning v. Georgia*, 391 F.3d 1299, 1303 (11th Cir. 2004). Regardless, no court should hold that §1981—a bedrock civil-rights law—likely violates the Constitution without conducting the entire analysis.

## II.    The remaining factors favor the Alliance.

Before the motions panel enjoined Fearless, its discriminatory contest and rapidly approaching deadline threatened several forms of irreparable harm: illegal racial discrimination, a lost opportunity to compete, and a denial of judicial review. The district court didn't reject these harms by exercising "discretion." Red-Br.60. It legally erred by assuming the Alliance was unlikely to succeed on the merits. R.115 at 20. And

it noted that §1981 does not "authorize injunctive relief." R.115 at 22. But of course §1981—as authoritatively construed by the Supreme Court—*allows* injunctive relief. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975). It doesn't *mandate* injunctive relief without a showing of irreparable harm, but Fearless no longer defends that distinction or the Indiana case that it stressed so much below. *See* Blue-Br.32-33.

Fearless now presses this Court's decision in *Jacksonville*, a case it never briefed below. But *Jacksonville* does not hold that a lost opportunity to contract due to racial discrimination is not irreparable (and has never been cited for that proposition, *see Siegel v. LePore*, 234 F.3d 1163, 1177-78 (11th Cir. 2020) (en banc)). *Jacksonville* states, at least 8 times, that it turns on the oddly barren "record" and "evidence" there. *Ne. Fla. Chapter of AGC of Am. v. Jacksonville*, 896 F.2d 1283, 1285-86 (11th Cir. 1990). Specifically, that association "failed to bring forth [members] who could assert injury," *id.* at 1286— members the Alliance did bring forth here. *Jacksonville* also assumed that the association's "ultimate injury is that contracts will be awarded to someone else." *Id.* at 1286. This Court later dismissed on that same assumption, 951 F.2d 1217 (11th Cir. 1992), but the Supreme Court reversed. It clarified that the injury in these cases is the members' lost "'*opportunity to compete* … based solely upon their race.'" 508 U.S. 656, 666 (1993). This Court's earlier decision does not consider that injury, let alone deem it reparable. Nor does it consider a complete racial exclusion like Fearless'—immediate and certain discrimination against the Alliance's members, unlike the 10% set-aside in *Jacksonville* that let nonminorities apply for 90% of the contracts. 896 F.2d at 1284.

As Fearless admits, Red-Br.63, courts can "presume" irreparable injury from Fearless' "racial discrimination" under *Gresham*, another statutory case against a private defendant. 730 F.2d 1417, 1424 (11th Cir. 1984). That presumption "*logically* flows" from "the fact of discrimination" and the very "*existence*" of the discriminatory policy, given discrimination's "subtle, pervasive, and essentially irremediable *nature.*" *Id.* at 1423-24 (emphases added). So the Alliance didn't need specific testimony about discrimination's "dignitary" harms. Red-Br.65. Fearless needed specific "evidence in the record tending to rebut this presumption." *Gresham*, 730 F.2d at 1424. It has none.

With or without a presumption, the Alliance's injuries are uniquely irreparable. Unlike the ongoing program in *Jacksonville*, Fearless' contest rapidly opens and closes in a 30-day span. R.2-3 at 4. Fearless doesn't deny that, if those 30 days had passed with no preliminary injunction, it would argue that the Alliance's right to injunctive relief is moot. Red-Br.66. Associations can't get compensatory damages, *UAW*, 477 U.S. at 287; so unless Fearless is now *conceding* that the Alliance can seek nominal damages, its deadline threatened to irreparably deny the Alliance judicial review. Far from a "bootstrap," Red-Br.66, the need to protect the status quo is a classic basis to grant preliminary injunctions. *E.g., Compact Van Equip. Co. v. Leggett & Platt, Inc.*, 566 F.2d 952, 955 (5th Cir. 1978). Nominal damages of $1, moreover, obviously would not be an "adequate" remedy for the lost opportunity to participate in Fearless' contest. *Askins*, 924 F.3d at 1358. Such "lost opportunities" are irreparable because they are "difficult, if not impossible,

to quantify." *MacGinnitie v. Hobbs Grp.*, 420 F.3d 1234, 1242 (11th Cir. 2005). For example, courts could not quantify the effect of missing out on the contest's "training," *Carson v. Am. Brands*, 450 U.S. 79, 89 n.16 (1981)—an intangible benefit that Fearless admits cannot be quantified, *see* R.2-3 at 12 (valuing it at $0).

Nor can Fearless rely on an alleged "delay" to argue that the Alliance has no irreparable harm. Red-Br.65-66. Fearless made this argument below; the district court did not accept it; and the motions panel rejected it. Fearless thus cannot meet the high standard for affirming on an alternative, discretionary ground. *Conkle v. Potter*, 352 F.3d 1333, 1337 (10th Cir. 2003); *Collins v. Seaboard Coastline R. Co.*, 681 F.2d 1333, 1335 (11th Cir. 1982).

The Alliance did not delay. It filed this challenge one day after the challenged contest opened, seeking a preliminary injunction at the same time. R.1; R.2. That contest was the first to open since the Alliance learned of Fearless' program. R.91 at 23. The Alliance's haste looks nothing like the knowing and unjustified delays that have weighed against a preliminary injunction. *See Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1249 (11th Cir. 2016) (five-month delay after complaint). In any event, delay is merely evidence that helps determine whether a harm is irreparable. *Id.* Any delay here does not make racial discrimination less harmful, the deadline less likely to close, or lost opportunities less hard to calculate.

Finally, Fearless gives no reason why the balance of equities or public interest would favor it, assuming its contest is likely illegal racial discrimination. Its arguments

all assume that *it* is right on the merits. Red-Br.66-67. Fearless also cites a statute where Congress discusses the "national interest" in helping "socially and economically disadvantaged groups." 15 U.S.C. §631(f)(1)(C)-(D). But Congress also passed §1981, and Fearless' contest classifies based on race, not disadvantage. Notably, Fearless' statute is part of a program that was itself declared illegal for classifying citizens based on race. *See Ultima Servs. Corp. v. USDA,* 2023 WL 4633481 (E.D. Tenn. July 19).

## CONCLUSION

This Court should reverse and remand with instructions to enter a preliminary injunction.

Dated: January 3, 2024                         Respectfully submitted,

                                               */s/ Cameron T. Norris*
William Fawcett, Sr.                           Thomas R. McCarthy
Chambliss & Fawcett, LLP                       Cameron T. Norris
2900 Paces Ferry Road, Ste. B-101             Gilbert C. Dickey
Atlanta, GA 30339                              R. Gabriel Anderson
wfawcett@cf-firm.com                           CONSOVOY MCCARTHY PLLC
                                               1600 Wilson Boulevard, Suite 700
                                               Arlington, VA 22209
                                               (703) 243-9423
                                               cam@consovoymccarthy.com

*Counsel for the American Alliance for Equal Rights*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7) because it contains 6,490 words, excluding the parts that can be excluded. It also complies with Rule 32(a)(5)-(6) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font (with 16- and 15-point Helvetica Neue font for headers).

Dated: January 3, 2024                    */s/ Cameron T. Norris*

## CERTIFICATE OF SERVICE

I e-filed this brief, which will email everyone requiring notice.

Dated: January 3, 2024                    */s/ Cameron T. Norris*