

1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

David J. Smith, Clerk of Court
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

**RE:** *American Alliance for Equal Rights v. Fearless Fund Management, LLC*, No. 23-13138 – Rule 28(j) Supplemental Authority

Dear Mr. Smith:

Attached is the Tenth Circuit's opinion in *Speech First, Inc. v. Shrum*, CA10 Doc. #010110997830, No. 23-6054 (Feb. 9, 2024), rejecting the same anonymity argument (based on the same cases) that Fearless raises here.

Dated: February 9, 2024                    Respectfully submitted,

/s/ *Cameron T. Norris*
Thomas R. McCarthy
Cameron T. Norris
Gilbert C. Dickey
R. Gabriel Anderson
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

## CERTIFICATE OF COMPLIANCE

This letter complies with Rule 28(j) because its body contains 37 words.

Dated: February 9, 2024                    /s/ *Cameron T. Norris*

## CERTIFICATE OF SERVICE

I e-filed this letter with the Court, which will email everyone requiring notice.

Dated: February 9, 2024                    /s/ *Cameron T. Norris*

FILED
United States Court of Appeals
Tenth Circuit

February 9, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

SPEECH FIRST, INC.,

    Plaintiff - Appellant,

v.

KAYSE SHRUM, in her official capacity as President of Oklahoma State University,

    Defendant - Appellee.

-----------------------

AMERICAN BANKERS ASSOCIATION; AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION OF OKLAHOMA; CATHOLICVOTE.ORG EDUCATION FUND; CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; INDEPENDENT WOMEN'S LAW CENTER; MANHATTAN INSTITUTE; YOUNG AMERICA'S FOUNDATION,

    Amici Curiae.

No. 23-6054

_____

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:23-CV-00029-J)
_____

J. Michael Connolly, Cameron T. Norris, James F. Hasson, and Thomas S. Vaseliou, Consovoy McCarthy PLLC, Arlington, Virginia (joined by Ryan Haynie, Oklahoma Council of Public Affairs, Oklahoma City, Oklahoma), for Appellants.

Stephen R. Stephens, Brandee Hancock, Clinton W. Pratt, Gaylan Towle II, Kinsey Wyatt, Lyman G. Lenker IV, Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, Stillwater, Oklahoma, for Appellees.

Megan Lambert, American Civil Liberties Union Foundation of Oklahoma, Oklahoma City, Oklahoma; Vera Eidelman, American Civil Liberties Union Foundation, New York, New York; filed a brief on behalf of Appellants, for Amici Curiae American Civil Liberties Union and American Civil Liberties Union of Oklahoma.

Scott W. Gaylord, Elon University School of Law, Greensboro, North Carolina; filed a brief on behalf of Appellants, for Amici Curiae Catholicvote.org Education Fund.

Kathryn E. Tarbert and Gene C. Schaerr, Schaerr Jaffe LLP, Washington, D.C.; filed a brief on behalf of Appellants, for Amici Curiae Independent Women's Law Center.

John J. Bursch, Tyson C. Langhofer, Mathew W. Hoffmann, Alliance Defending Freedom, Lansdowne, Virginia (joined by Ilya Shapiro, Manhattan Institute, New York, New York on the briefs); filed a brief on behalf of Appellants, for Amici Curiae Young America's Foundation and Manhattan Institute.

Jennifer B. Dickey, Jordan L. Von Bokern, U.S. Chamber Litigation Center, Washington, D.C. (joined by Robert E. Dunn, Eimer Stahl LLP, San Jose, California on the briefs); filed a brief on behalf of Appellants, for Amici Curiae U.S. Chamber of Commerce and the American Bankers Association.

_____

Before **HARTZ**, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Speech First, Inc. is a nationwide organization that describes its mission to include the protection of free speech on college and university campuses. When Oklahoma State University (OSU) implemented three schoolwide policies that allegedly chilled protected speech, Speech First filed suit in federal court on behalf of its OSU student members against OSU President Kayse Shrum. Three members each submitted a pseudonymous declaration (using the names Student A, Student B, and

Student C) describing how the policies allegedly inhibited his or her constitutionally protected expression.

The sole issue before us on appeal is whether the use of pseudonyms by the declarants precluded Speech First from establishing Article III standing to bring this action. On a motion by President Shrum, the United States District Court for the Western District of Oklahoma dismissed the suit for lack of standing, ruling that the United States Supreme Court in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), held that for an organization to have standing it must identify by name at least one member who would have standing to personally bring the claim. *See Speech First, Inc. v. Shrum*, No. CIV-23-29-J, 2023 WL 2905577, at *3 (W.D. Okla. Apr. 10, 2023) ("Because Plaintiff has failed to name the members on behalf of whom it brings suit, it lacks standing to press the claims asserted here.").

We disagree with the district court. Longstanding and well-established doctrine in the federal courts establishes that anonymous persons may have standing to bring claims. Anonymity was not even an issue before the Supreme Court in *Summers*. Although one might read language in that opinion to require that only persons identified by their legal names can have standing, that was clearly not the intent of the Court. The opinion provided no hint, much less an emphatic statement, that it was abrogating decades of precedent. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings.

I.  DISCUSSION

We review de novo a dismissal for lack of standing, applying the same standard that governs the district court. *See Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012). Under our Constitution, federal courts may exercise jurisdiction only over "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Part of this "bedrock requirement" is that a litigant must "have standing to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (internal quotation marks omitted). The familiar tripartite test for standing requires a plaintiff to show (1) it has "suffered an injury in fact"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The standing requirement is an "irreducible constitutional minimum" that "serv[es] to identify those disputes which are appropriately resolved through the judicial process." *Id.* at 560 (internal quotation marks omitted).

An organization like Speech First has standing to bring suit on behalf of its members if (1) at least one of its members would have standing to sue in the member's own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit. *See Friends of the Earth v. Laidlaw*, 528 U.S. 167, 181 (2000). Shrum does not dispute that the second and third elements are satisfied here.

The single issue presented on appeal is whether the first element can be satisfied when the organization's members on whom Speech First relies for standing are not identified by name. For the reasons we proceed to discuss, the answer to that question is yes.

To begin with, there is a long tradition in the federal courts of plaintiffs bringing suit under an alias. Although *Roe v. Wade*, 410 U.S. 113 (1973), has been overruled in other respects, it still has precedential value on the issue before us. Discussing the question of standing, the Court wrote:

> Despite the use of the pseudonym, no suggestion is made that Roe is a fictitious person. For purposes of her case, we accept as true, and as established, her existence; her pregnant state, as of the inception of her suit in March 1970 and as late as May 21 of that year when she filed an alias affidavit with the District Court; and her inability to obtain a legal abortion in Texas.

*Id.* at 124; *see also Doe v. Bolton*, 410 U.S. 179, 187 (1973) ("[D]espite her pseudonym, we may accept as true, for this case, [Doe's] existence [etc.] . . . Doe presents a justiciable controversy and has standing to maintain the action."). So too here. Shrum has suggested no reason to disbelieve any statement in the declarations relevant to the requirements of standing. We are not foreclosing the possibility of such a challenge. But at this stage of the case, the courts should rely on the pleadings.[1]

---

[1] Since "the dismissal for lack of standing came at the pleading stage, not on a motion for summary judgment or later in the litigation," Speech First's "burden in establishing standing is lightened considerably." *Petrella*, 697 F.3d at 1292; *see also Lujan*, 504 U.S. at 561 ("[E]ach element [of standing] must be supported in the same

This is not to say that there can be no concerns about suits brought under the cloak of anonymity. There may be questions about the existence or bona fides of the person, which can be explored in court. *See FAIR v. Rumsfeld*, 291 F. Supp. 2d 269, 286 n.6 (D.N.J. 2003); *aff'd on standing issue sub nom. Rumsfeld v. FAIR*, 547 U.S. 47, 52 n.2 (2006) ("To assist the Court in evaluating FAIR's standing, Plaintiffs submitted the FAIR membership list for in camera review."). And there may be questions about whether anonymity is being improperly exploited, in which case the court may require the plaintiff to proceed under his or her legal name. *See, e.g.*, *Luo v. Wang*, 71 F.4th 1289, 1305 (10th Cir. 2023). But those questions have not arisen, and may never arise, in this case.

Shrum has suggested no reason why the use of a pseudonym by the injured member of the organization filing suit should defeat standing when the injured member alone would have standing to bring the claim as an individual plaintiff under a pseudonym. Indeed, there is longstanding Supreme Court authority supporting standing for organizations whose injured members are not named. *See, e.g.*, *NAACP*

---

way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."). At this stage it is enough to *allege* the facts establishing standing. *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1184 (10th Cir. 2015). OSU insists that it "cannot dispute the representations [in the declarations] because it cannot determine if the Students are enrolled at OSU without knowing their names." Aplee. Br. at 34 (emphasis omitted). But the district court could later verify the existence and status of the pseudonymous members through in camera review—a process that protects anonymity. *See* Aplt. Br. at 13–14 ("Speech First might have to submit [identifying] information later *in camera* or under seal, and the public will have a presumptive right to access it.").

*v. Alabama ex rel. Patterson*, 357 U.S. 449, 458–59 (1958) (anonymous status of association's members posed no standing hurdle); *Rumsfeld*, 547 U.S. at 52 n.2 ("The District Court concluded that each plaintiff had standing to bring this suit. . . . [W]e also agree that FAIR has standing.").[2]

This court has aligned with the Supreme Court on this matter. We have previously held that organizational standing is proper even when the qualifying member of the plaintiff organization is anonymous. *See Am. Humanist Ass'n, Inc. v. Douglas Cnty. Sch. Dist. RE-1*, 859 F.3d 1243, 1254 n.4 (10th Cir. 2017) (reversing a district court's holding that an organization "lacks associational standing because none of its individual members have standing," where "we have concluded that [Jane] Zoe [a pseudonymous member] possesses standing"); *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1230 (10th Cir. 2001) ("John Roe #2 has standing. Because John Roe #2 is a member of the Potter Chapter, the fact that he has standing is sufficient to satisfy the first requirement [of organizational standing]."); *see also, e.g.*, *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586, 594 (D.C. Cir. 2022) (union members whose statements in survey responses supported claim of requisite injury were unnamed, "but anonymity is no barrier to [organizational] standing on this record").

The circuit cases cited by Shrum in support of the district court's ruling are easily distinguishable because in none of them is there any mention of someone being

---

[2] The membership list of FAIR was secret. *See Rumsfeld*, 291 F. Supp. 2d at 286.

anonymous or using a pseudonym, none of the opinions addressed whether the use of a pseudonym barred standing, and the plaintiffs were denied standing because none of them made the requisite showing of injury by a member, pseudonymous or not. *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022); *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1011 (7th Cir. 2021) (reserving for another day whether to reaffirm prior statement of court "that the requirement for an individual member to have standing still allows for the member on whose behalf the suit is filed to remain unnamed by the organization" (internal quotation marks omitted)); *Georgia Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1204 (11th Cir. 2018); *Tennessee Republican Party v. Sec. & Exch. Comm'n*, 863 F.3d 507, 521 (6th Cir. 2017); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.); *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California Dep't of Transp.*, 713 F.3d 1187, 1195 (9th Cir. 2013); *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (organization's complaint "only alleges that it, the homeowners' association, is being harmed—not that *any* . . . of its individual members are").

With this background in mind, we turn to the Supreme Court decision on which Shrum principally relies: *Summers*. In *Summers* several environmental organizations sought to enjoin the United States Forest Service from enforcing regulations that exempted certain categories of forest projects from approval processes. *See* 555 U.S. at 490. In support of their challenge, the organizations

submitted affidavits from two named members who claimed that their recreational interests would be harmed by the regulations. *See id.* at 494–95. But the Court concluded that the members' asserted interests were inadequate. *See id.* at 494–96. The affidavit of one member had been adequate to support his challenge to the application of the regulations to one particular project, but the parties had then settled their differences regarding the project and the affidavit did not concern upcoming projects for which an injunction was sought. *See id.* at 494. Another affiant stated that "he had suffered injury in the past from development on Forest Service land"—but the asserted injury did not suffice "because it was not tied to application of the challenged regulations, because it does not identify any particular site, and because it relates to past injury rather than imminent future injury that is sought to be enjoined." *Id.* at 495.

The Court then considered "a hitherto unheard-of test for organizational standing" proposed by the dissent: "[W]hether, accepting the organization's self-description of the activities of its members, there is a statistical probability that some of those members are threatened with concrete injury." *Id.* at 497. This "novel approach to the law of organizational standing would make a mockery of our prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one *identified* member had suffered or would suffer harm**.**" *Id.* at 498 (emphasis added). "This requirement of *naming* the affected members has never been dispensed with in light of statistical probabilities, but only where *all* the

members of the organization are affected by the challenged activity." *Id.* at 498–99 (first emphasis added).

Shrum contends that the use of the terms *identified* and *naming* establishes a prohibition against the use of pseudonymous affidavits to establish standing. We acknowledge that those two terms could be used to distinguish between pseudonyms and legal names. But to identify or to name a person does not require the use of the legal name. An assailant can be *identified* as "Number 6" in the lineup; someone can be *named* "Country Music Star of 2023." The preeminent legal dictionary says that to *name* is simply to "identify[] or designat[e] a person or thing" and to "distinguish[] that person or thing from others." Black's Law Dictionary (11th ed. 2019).

It is context that tells us whether *Summers* was using the words *name* and *identify* to indicate that standing cannot be based on injury to a person using a pseudonym. And that context undermines Shrum's interpretation. The Court was explaining that there needs to be a particular person who is injured, not just a statistical probability that some member would suffer an injury. That need can be satisfied by identifying the injured member as "Member 1" just as well as by the name "Samuel Clemens" (whom we usually name and identify by calling him Mark Twain). *Summers* itself in no way involved the use of pseudonyms, so there was no reason for the Court to distinguish between legal names and pseudonyms.

And there is an even stronger reason to believe that the Court was not promulgating the rule proffered by Shrum. As previously noted, the Court had for decades permitted standing based on pseudonyms or outright anonymity. And it

emphatically rejected the dissent's approach by pejoratively calling it "novel" and "hitherto unheard-of." *Summers*, 555 U.S. at 497–98. What are the chances that this very opinion would at the same time reject generations of precedent and adopt the "novel" and "hitherto unheard-of" proposition that pseudonymous affidavits cannot be considered in support of standing? Not only adopt such a proposition but do so without any announcement that it was rejecting its precedent? We think the odds are rather low, and decline to adopt that proposition without further guidance from the Supreme Court.

We leave to the district court to address in the first instance Shrum's additional arguments against standing and her claim of mootness.

## II.     CONCLUSION

We **REVERSE** and **REMAND** the case to the district court.